UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., <br><br> Defendants. | C.A. No. 1:25-cv-00626-MSM-AEM <br><br> DECLARATION OF RACHEL STUCKER |

## DECLARATION OF RACHEL STUCKER

I, Rachel Stucker, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Executive Director at Housing Alliance Delaware, Inc., a statewide nonprofit in Delaware.

2. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with Housing Alliance Delaware (HAD) and CoC Grantee staff, or from my review of relevant documents and information.

3. Housing Alliance Delaware, Inc. is the Collaborative Applicant for the Delaware Continuum of Care (CoC).

4. Through a memorandum of understanding with the Delaware Continuum of Care, Housing Alliance Delaware, serves as the Collaborative Applicant and is responsible for coordinating and completing the submission of the HUD CoC funding application on behalf of the Delaware CoC and the nonprofits in Delaware that receive CoC funding to operate homeless assistance programs.

5. The Delaware CoC is a statewide group that has a governance charter that outlines the responsibilities of its members.

    a. The Delaware CoC has a volunteer Board made up of 20 members. Board members include representatives from state government, county government, public housing authorities, nonprofit homeless services providers, educational institutions, community development organizations, legal aid, domestic violence serving organizations, the local VA medical center, and housing developers and managers. In addition, the CoC has a total of 238 general

members, 32 voting members, 4 subcommittees, a funding committee that recommends local CoC funding decisions to the CoC Board.

6. Currently there are 5 members of the CoC funding committee. They volunteer many hours of time to review project applications and make funding recommendations, meeting multiple times. Currently there are 17 CoC Board members who are "non-conflicted" and who participate in several meetings to finalize the Delaware CoC's CoC funding request from HUD and consolidated application. Currently there are 11 nonprofit organizations (including Housing Alliance DE) that receive CoC funding from HUD to operate a total of 27 Joint Transitional Rapid Re-housing, Rapid Re-housing, Permanent Supportive Housing, HMIS, Coordinated Entry and planning programs in DE.

7. In order to apply for CoC funding each of these applicants: tracks program outcomes in a data system throughout the year and reports them to the CoC, conducts data clean-up activities in HMIS, completes project applications for their programs and submits them to the CoC, completes ESNAPS project applications and submits them to HUD, attends technical assistance meetings with HAD staff, complies with HUD regulations regarding eligible costs and activities, grant draws, and grant agreements throughout the year, and are evaluated on their program outcomes by the funding committee and the CoC Board. This process usually begins each year in/around May, and concludes in/around October.

8. As the Collaborative Applicant, HAD's role includes: Reviewing project outcomes data, developing and providing renewal project applicants with applications, developing and providing the public with new project applications through the release of an RFP, hosting a public funding meeting for interested providers, providing all project application materials and details to the CoC funding committee and Board, hosting and facilitating meetings of the CoC funding

committee and Board, contracting with a consultant to support the technical, compliance, and strategic components of the process, drafting all responses to the consolidated application, managing all project submissions in HUD's online portal "ESNAPS," which includes reviewing all project applications, ranking them, providing agencies with technical assistance, and submitting them according to HUD's requirements.

9. Throughout the year, HAD also hosts and facilitates no less than 15 CoC Board, member and committee meetings, manages the membership and ensures compliance with the Delaware CoC Charter, conducts the annual Point in Time Count of Homelessness in DE, hosts various trainings for homeless service provider staff, and manages Delaware's HMIS (Homeless Management Information System) which is used by all HUD CoC funded projects for data collection and performance monitoring.

10. Housing Alliance Delaware, formerly known as the Homeless Planning Council of Delaware, has played this role for the statewide Delaware CoC for more than 15 years. HAD's current Executive Director has been directly involved in the CoC funding process since 2016, and HAD's Associate Director has been directly involved in the CoC funding process since 2020.

11. HAD's role as Collaborative Applicant is one of the many things the organization does. HAD staff, CoC funding committee and Board members, and CoC grantees (other nonprofits that apply for and receive the HUD CoC funds) plan their agency's activities assuming a fairly consistent and timely funding process. The ability for CoC grantees to provide services to the people and families they help relies on a fairly consistent process. For example, in Delaware there is a grantee whose current grants ends in January 2026. Normally, they can reasonably expect another grant award, and can therefor float the costs of operation until their next grant agreement with HUD, and then reimburse themselves for expenses. Without the reasonable expectation of

another grant award, this grantee has already reduced the number of people with disabilities that they are providing housing and services to.

12. I understand that the HUD Continuum of Care Notice of Funding Opportunity released on November 13, 2025, represents a significant departure from recent past practices and will cause serious harm here in Delaware.

13. This NOFO is for FY 2025 and "rescinds and supersedes any mention of awards of FY 2025 CoC funds in the FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants published on July 31, 2024."

14. "Tier 1 is set at 30 percent of the CoC's Annual Renewal Demand (ARD)." Pg. 15.

    a. This means that 70% of the DE CoC's anticipated funding amount is at risk of being lost – a total of approximately $8million in funding that is currently paying for direct client assistance, including rental assistance for more than 400 households, and case management staff who provide direct services to clients.

    b. In the past, only 5 – 15% of a CoC's anticipated award was at risk of being lost.

    c. This change will mean that many organizations will have to stop providing services to people and families within the next 4-8 weeks to prepare for a loss of funds. More specifically, organizations that enter into 12-month leases with landlords on behalf of clients are considering having to not renew leases. These clients will lose their current housing. Other organizations that provide rental subsidies to people and families will have to stop providing that help, causing people and families to be immediately at risk of eviction, displacement, and returning to homelessness.

15. "Investment in Transitional Housing and Supportive Service Only Projects. In order to promote balance and increase competition, no more than 30 percent of a CoC's Annual Renewal Demand (ARD) under this NOFO will fund Permanent Housing projects, including PH-PSH, PH-RRH and Joint TH and PH-RRH projects." Pg. 15.

    a. Currently the Delaware CoC's HUD funding award includes approx. $11million in permanent housing projects, as defined above. This new rule means that approx. $8million that support the operations of current projects will be lost.

    b. In the past, when HUD made changes in policy priorities or funding priorities, they provided advanced notice to communities, and in some cases technical assistance, to allow communities to strategically and intentionally make changes to meet new priorities. This current NOFO automatically de-funds the majority of the CoC programs that are currently operating in Delaware.

    c. Nonprofit applicants will lose hundreds of thousands, and sometimes, millions of dollars very suddenly. This will cause direct harm to the clients that they serve. People and families with histories of homelessness and disabilities will lose their housing. CoC-funded organizations will have to lay off staff. There will be no time to ensure that clients have a smooth transition to alternative housing opportunities or services due to the loss of funding to retain critical direct service staff. Many people are very likely to end up back on the streets or in homeless shelters. Additionally, private landlords who relied on these dollars to support their tenants are likely to be forced to file evictions and face a loss in income as a result.

16. HUD's new gender ideology provisions are highly problematic for a number of reasons. From a compliance perspective, it is not possible for projects to comply with new requirements if those requirements include a look back. In other words, if a project applicant complied with prior HUD expectations and rules regarding gender identity, they would be punished in this NOFO even if they agreed to the new terms. Importantly, this NOFO asks projects to operate in a manner that clearly violates HUD's current and existing Equal Access rule. Furthermore, housing projects that operate in Delaware must comply with Delaware's fair housing laws, which directly contradicts with what is outlined in this NOFO, as Delaware's fair housing law includes protections against discrimination based on gender identity.

   a. "HUD reserves the right to verify past performance and evaluate the eligibility of a project application submitted during the CoC Program Competition for the following reasons: (a) evidence that the project has previously or currently … conduct[s] activities that rely on or otherwise use a definition of sex other than as binary in humans." Pg. 55

   b. "HUD reserves the right to reduce or reject a project application submitted during the CoC Program Competition for the following reasons … (h) evidence that the project has previously or currently conducts activities that subsidize or facilitate racial preferences or other forms of illegal discrimination or conduct activities that rely on or otherwise use a definition of sex other than as binary in humans." Pg. 65.

   c. "Awards made under this NOFO will not be used to … conduct activities that rely on or otherwise use a definition of sex as other than binary in humans." Pg. 108

      d.    "You must comply with these applicable provisions … Implementing Presidential Executive Actions" like EO "14168 (Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government") Pg. 108

17. This NOFO includes additional terms related to policing that put Delaware's projects, nonprofits, and the clients being served at risk. For example, HUD is making funding decisions based on the extent to which Delaware has specific statewide drug use and vagrancy laws, as well as enforcement mechanisms, that are out of the control of the CoC, HAD and the providers.

18. Even if these conditions were not themselves problematic, immediate compliance with dramatically different conditions will require a complete overhaul of our processes, those of our applicants, and coordination with other entities in Delaware that will require time, money, and effort to comply. This is not feasible to do by Jan. 14.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 22nd day of November 2025 in Wilmington, Delaware.

                                   /s/ *Rachel Stucker*
                                   Rachel Stucker
                                   Executive Director
                                   Housing Alliance Delaware, Inc.