UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., <br><br> Defendants. | C.A. No. 1:25-cv-00626-MSM-AEM <br><br> DECLARATION OF JANEL WINTER |

## DECLARATION OF JANEL WINTER

I, Janel Winter, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Assistant Commissioner and the Director of the Division of Housing & Community Resources at the New Jersey Department of Community Affairs ("NJDCA"). In those capacities, I have oversight of NJDCA's implementation of the Continuum of Care ("CoC") grant program.

2. I have been the Director of the Division of Housing and Community Resources for over ten years and have extensive experience in the areas of homelessness prevention, homeless services, housing and the implementation of federal grants.

3. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with NJDCA staff, or from my review of relevant documents and information.

4. NJDCA participates in the Continuum of Care program both as a direct grant recipient and as a collaborative applicant for CoC NJ-500 Atlantic City and County.

5. As a direct recipient of Federal CoC grant funding, NJDCA is the recipient and administrator of ten active grants that fund housing projects in seven of New Jersey's counties.

6. These active grants total $2,802,877 in federal funding, of which $2,677,020 is spent directly on rental assistance to provide a total of 193 units of housing in the form of tenant-based and project-based rental assistance. This housing serves chronically homeless individuals as well as vulnerable individuals suffering from substance abuse, mental illness, long-term disability, HIV/AIDS, and other issues.

7. Beyond NJDCA's direct receipt of CoC grants, since 2025, NJDCA has acted as a collaborative applicant for CoC NJ-500 covering Atlantic City and Atlantic County.

8. The Atlantic City and County CoC encompasses 16 non-profit, local, county, and state government entities throughout Atlantic County that collaboratively provide a mix of emergency, safe haven and transitional housing as well as permanent housing for vulnerable individuals.

9. As the collaborative applicant for CoC NJ-500, NJDCA coordinates the combined application materials of all service providers in Atlantic County, engages in a ranking process to convey the relative priority of different programs requesting federal funding, and submits a coordinated grant application on behalf of all providers within CoC NJ-500.

10. State-wide New Jersey's sixteen Continuums of Care are comprised of numerous state and local government entities as well as a provider network of over 250 nonprofit organizations. Many of these providers rely on federal CoC grant funding as the financial foundation that allows them to provide both emergency, safe haven and transitional housing as well as permanent housing.

11. State-wide, acting through the Division of Housing and Community Resources and its Office of Homelessness Prevention ("OHP"), NJDCA provides advisory, supervisory, and technical assistance functions to CoC bodies, CoC grant recipients, and homelessness and housing services providers operating within the State. Pursuant to its statutory charge to coordinate State-level homelessness prevention activities and to strengthen intergovernmental responses to housing instability, NJDCA issues guidance, disseminates policy interpretations, and facilitates compliance with applicable federal and State laws, regulations, and funding requirements. NJDCA further supports CoCs by providing statewide data analytics, system performance evaluations, best-

practice standards, and programmatic oversight necessary to ensure that local jurisdictions maintain services that are lawful, equitable, and responsive to the needs of individuals and families who are experiencing, or are at risk of experiencing, homelessness. Through these activities, NJDCA fulfills its obligation to assist in the development, administration, and continuous improvement of a coordinated, effective, and compliant homelessness response system across all twenty-one counties of New Jersey.

12. Because NJDCA and other CoC grant recipients must administer CoC services from year-to-year, NJDCA and other grant applicants rely on reasonable predictable and consistent terms in the notices of funding opportunity that HUD releases every year. Any major change in program terms, particularly if done without adequate warning, threatens to destabilize the provision of desperately needed housing services to address homelessness and would sow discord in the complicated network of services and service providers that make up each Continuum of Care.

13. I understand that the HUD Continuum of Care Notice of Funding Opportunity released on November 13, 2025 represents a significant departure from past practices and, if implemented, will seriously disrupt the provision of CoC services in New Jersey.

14. One provision of this NOFO states that CoC grant applicants, including collaborative applicants like NJDCA, can designate no more than "30 percent of the CoC's Annual Renewal Demand" as "Tier 1" which constitutes the highest priority group of projects that are not subject to competitive scoring requirements.

15. This represents a major departure from past practice, as in the corresponding 2024 CoC NOFO, 90% of annual funding was designated at Tier 1 priority.

16. This dramatic reduction in Tier 1 priority for existing CoC projects introduces substantial additional uncertainty for housing providers, who will now be subject, at far higher rates, to an unpredictable competitive process where even small differences in HUDs scoring metrics could lead to major losses in funding.

17. That change threatens providers' ability to operate in a consistent and predictable fashion or provide the kind of long-term and integrated network of services that the Continuum of Care program is supposed to provide.

18. Another provision of this NOFO states, "In order to promote balance and increase competition, no more than 30 percent of a CoC's Annual Renewal Demand (ARD) under this NOFO will fund Permanent Housing projects, including PH-PSH, PH-RRH and Joint TH and PH-RRH projects."

19. This also represents a major departure from past practice. In FY 2024, New Jersey was awarded $66,044,205 in CoC grant funds, of which $53,589,803—representing approximately 81% of the total—was directed towards permanent supportive housing and rapid rehousing.

20. The abrupt and dramatic reduction in funding for permanent supportive housing and rapid rehousing from 81% of the FY2024 total down to 30% of the FY2025 total abruptly upends the Continuum of Care system that currently exists in New Jersey.

21. As a result, NJDCA projects a year-over-year loss of over $33million in funds for programs that provide permanent housing and rapid rehousing and approximately 3,300 New Jerseyans—including medically fragile individuals, people with disabilities, survivors of domestic violence, children, seniors, and veterans—will be displaced into homelessness within one year as a result of program conversion or termination.

22. Moreover, NJDCA anticipates that nonprofit housing service providers will be unable to absorb such a sudden and severe loss of grant funding, leading to layoffs, program terminations, and the breach of existing service contracts.

23. This sudden loss of services would erase years of capital investment in New Jersey's Continuums of Care including years of investments of state funds.

24. Because non-profits are statutory partners in New Jersey's homelessness response system, their sudden inability to continue operations creates direct harm to the State, including increased reliance on emergency departments, increased policing and crisis response costs, heightened winter mortality and public health emergencies, increased shelter overflow requiring emergency state funding, and increased civil rights risk shared between providers and the State.

25. This NOFO additionally contains various provisions referring to "activities that rely on or otherwise use a definition of sex other than as binary in humans" including the following provisions:

   a. "HUD reserves the right to verify past performance and evaluate the eligibility of a project application submitted during the CoC Program Competition for the following reasons: (a) evidence that the project has previously or currently … conduct[s] activities that rely on or otherwise use a definition of sex other than as binary in humans."

   b. "HUD reserves the right to reduce or reject a project application submitted during the CoC Program Competition for the following reasons … (h) evidence that the project has previously or currently conducts activities that subsidize or facilitate racial preferences or other forms of illegal

discrimination or conduct activities that rely on or otherwise use a definition of sex other than as binary in humans."

c. "Awards made under this NOFO will not be used to … conduct activities that rely on or otherwise use a definition of sex as other than binary in humans."

26. This too represents a major departure from past practice. The prior FY2024 Continuum of Care NOFO from HUD expressly directed CoCs to "address the needs of LGBTQ+, transgender, gender non-conforming, and non-binary individuals and families in their planning processes" and to "ensure that all projects provide privacy, respect, safety, and access regardless of gender identity."[1]

27. NJDCA further notes that New Jersey law prohibits NJDCA and other CoC service providers from discriminating on the basis of "sex [or] gender identity or expression." N.J. Stat. Ann. 10:5-4.

28. Finally, this NOFO additionally contains various provisions providing a point-based advantage to project applicants who serve geographic areas that have state and local laws that the federal government favors. These provisions include provisions that give applicants a competitive advantage if they can point to a state or local law that:

a. "[p]rohibits public illicit drug use";

b. "[p]rohibits public camping or loitering";

c. "utiliz[e] . . . involuntary commitment," and

---

[1] HUD, FY2024 and FY 2025 Continuum of Care (CoC) Program Notice of Funding Opportunity (NOFO) Overview, available at: https://ceo.oc.gov/sites/ceo/files/2024-08/FY2024-25%20CoC%20NOFO%20Overview%20-%20Final.pdf

7

      d. "is compliant with the registration and notification obligations of the Sex Offender Registry and Notification Act."

29. NJDCA's understanding is that state and local law in New Jersey may prevent New Jersey-based CoC applicants, including NJDCA from qualifying for some or all of these preferential advantages.

30. When combined with the NOFO provision that enlarges the percentage of projects that are subject to a points-based competitive assessment, the inability of New Jersey CoC's to qualify for points under this provision disproportionately imperils the ability of New Jersey CoC's to receive grant awards.

31. Regardless of the content of this NOFO, compliance with dramatically different grant conditions will require a substantial overhaul of NJDCA's CoC processes and those of our applicants. Such an overhaul would require substantial time, money, and effort to comply, and is not practicable to accomplish by January 14, 2026, the current NOFO deadline.

32. Because CoC programs administered by NJDCA and other entities throughout the State serve some of the most vulnerable individuals in New Jersey, any loss of existing housing resources compounds other vulnerabilities that place these individuals at risk of severe harm to their health, safety, and wellbeing.

33. Any resultant loss of housing for vulnerable individuals in New Jersey will increase burdens on other state health, safety, and support services.

34. As such, this NOFO threatens to substantially disrupt the provision of Continuum of Care services to homeless individuals in New Jersey and may substantially harm the interests of NJDCA and the State of New Jersey.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of November 2025.

*[Signature]*

Janel Winter
Assistant Commissioner and Director, Division of Housing and Community Resources
New Jersey Department of Community Affairs