# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF WASHINGTON, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00626-MSM-AEM |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | DECLARATION OF MARK STAFF |
| Defendants. | |

## **DECLARATION OF MARK STAFF**

I, Mark Staff, declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Deputy Administrator for the Division of Energy, Housing and Community Resources (DEHCR) at the Department of Administration (DOA) for the State of Wisconsin. My role in DEHCR is to provide administrative oversight of a wide range of federal and state funded grant programs. I have worked with DEHCR for thirteen years, and in that capacity, I have thirteen years of experience working with federal and state grant programs. I have served as Deputy Administrator at DEHCR for over one year.

2. As DEHCR's Deputy Administrator, I oversee program teams that administer the United States Department of Housing and Urban Development programs to address homelessness. These programs include the State Shelter Subsidy Grant (SSSG) program, the Tenant Based Rental Assistance (TBRA) program, and the American Rescue Plan (HOME-ARP). Other programs include the Emergency Solutions Grant (ESG) program, Homelessness Prevention Program (HPP), and Housing Assistance Program (HAP) (together, EHH[1]) as well as Housing Opportunities for Persons with Aids (HOPWA). These programs work in conjunction with four Continuum of Care (CoC) agencies to address and prevent homelessness in the State of Wisconsin.

3. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with DEHCR staff, or from my review of relevant documents and information.

---

[1] See DEHCR's EHH application web page, *available at*: DEHCR EHH Application.

**CoCs in Wisconsin**

4. DEHCR works closely with four CoCs to help address housing needs and align funding priorities in Wisconsin. A CoC agency is a regional or local planning body that coordinates housing and services funding for families and individuals experiencing homelessness. The CoC Program is designed to promote a community-wide commitment to the goal of ending homelessness, and to provide funding for efforts led by nonprofit providers, states, Indian Tribes, or tribally designated housing entities.

5. There are four HUD-appointed CoC agencies that serve different regions in Wisconsin: the Dane Continuum of Care region; the Racine Continuum of Care region, the Milwaukee Continuum of Care region, and the Balance of the State Continuum of Care region. The CoCs span the full geography of the state, addressing the housing and services needs of thousands of Wisconsin's most vulnerable residents. CoCs can include nonprofits, city and county governments, and other partners.

6. The Wisconsin DOA is not a direct recipient of CoC funding; rather, DOA works collaboratively with the CoCs and their member agencies to provide critically needed services to people experiencing homelessness and those at risk of homelessness in the state of Wisconsin. As noted above, DEHCR programs addressing homelessness and homeless prevention include the SSSG, TBRA, HOME-ARP, EHH, and HOPWA.

7. The State of Wisconsin's key roles with the Continua of Care include coordinating regional efforts, monitoring Coordinated Entry,[2] and assisting in leveraging state resources to

---

[2] Coordinated entry is a standardized, community-wide process for individuals and families experiencing or at risk of homelessness to access housing and services. It involves a centralized system for intake, assessment, and referral that prioritizes people with the greatest needs for housing assistance, such as rapid re-housing or permanent supportive housing. The system aims to ensure fair and equal access to resources, streamline the process, and efficiently connect people to housing based on their strengths and needs. See HUD Exchange web page for Coordinated Entry, *available at*: https://www.hudexchange.info/homelessness-assistance/coordinated-entry/#coordinated-entry-notice.

compliment federal and state programs. The State also participates in the Consolidated Plan[3] with the CoCs to promote community wide dialogue to assess housing needs and align funding priorities with the local CoCs.

8. DEHCR plays a lead role in planning, data collection, policy making, and strategic planning to address homelessness across the state, most importantly focusing on non-metropolitan areas. DEHCR also ensures comprehensive coverage for homeless assistance programs throughout Wisconsin. The State, in collaboration with the CoCs, participates in data collection efforts to provide a more complete understanding of homelessness within the state. DEHCR assists with setting performance metrics and supporting the overall CoC system performance.

## 2025 CoC NOFO

9. I understand that the HUD Continuum of Care Notice of Funding Opportunity released on November 13, 2025 ("2025 NOFO") represents a major departure from HUD's past practices and will cause serious harm to the State of Wisconsin. I expect the State of Wisconsin to be harmed in at least two ways:

   a. The 2025 NOFO will likely return many Wisconsinites to homelessness, which will cause greater demand for, and place greater burdens on, State-funded homelessness response services, temporary and permanent housing services, and other State-funded services; and

---

[3] The HUD Consolidated Plan is a five-year strategic planning document required for states and local governments that receive certain funds from the U.S. Department of Housing and Urban Development (HUD). It outlines a community's affordable housing and community development needs, market conditions, and goals, and serves as a comprehensive strategy for using HUD grant money to address those priorities. The plan is developed through a process involving data collection, analysis, and community-wide dialogue with stakeholders. *See* HUD Exchange web page for the Consolidated Plan, *available at*: https://www.hudexchange.info/programs/consolidated-plan/.

      b. The 2025 NOFO will likely diminish the value of investments the State has made in RRH—investments that were made in reliance on the continued availability of CoC funding.

**Increased Demand for State-Funded Services**

10. The 2025 NOFO will eliminate funding for numerous permanent housing projects, which will increase homelessness and lead to a greater demand for State-funded homelessness response, shelter, housing, and other services. The 2025 NOFO states that "Tier 1 is set at 30 percent of the CoC's Annual Renewal Demand (ARD)." (2025 NOFO at 15.) "Annual Renewal Demand" (ARD) is "the total amount of all the CoC's projects that will be eligible for renewal in the CoC Program Competition, before any required adjustments to funding for leasing, rental assistance, and operating Budget Line Items (BLIs) based on [Fair Market Rent] FMR changes." (2025 NOFO at 124.) When a CoC prepares an application for a CoC NOFO, it must either approve and rank, or reject, each project submitted to it. Higher scoring applications are in Tier 1, while lower scoring applications are in Tier 2. Tier 1 applications are essentially guaranteed to be approved by HUD as long as they satisfy eligibility and quality standards. Historically, CoCs have been able to put 90 percent or more of their ARD in Tier 1, which effectively ensured that funding for those projects would be renewed. The remaining percentage in Tier 2 was subject to a competitive process among all CoCs based on available funding, the strength of the CoC's overall application, and the performance of the individual projects. Limiting the amount of ARD that can be put in Tier 1 to 30 percent means that 70 percent of each CoC's ARD is now at risk, subject to a competitive national process among all CoCs.

11. The 2025 NOFO provides that "no more than 30 percent of a CoC's Annual Renewal Demand (ARD) under this NOFO will fund Permanent Supportive Housing (PSH) projects, including PH-PSH, PH-RRH and Joint TH and PH-RRH projects." (2025 NOFO at 15.) The 30 percent cap on the amount of ARD that can be allocated to PSH projects will have devastating consequences for vulnerable Wisconsinites. PSH programs serve the most vulnerable people – those who have been homeless the longest and have physical and/or mental health disabilities. The cap on funding PSH will limit the number of programs remaining in the CoC territories. The loss of these programs will put hundreds, if not thousands, of people at risk of returning to the streets and without the support they need to exit homelessness.

12. People who lose permanent housing as a result of HUD's decision to defund these programs will necessarily become reliant on State and locally funded homeless and housing services, including State-funded outreach, emergency shelter, rehousing, and PSH programs. Shelters are at capacity across the state. The HUD policy shift would take place immediately, before new programs can be developed. People who lose their housing will likely become unsheltered, which will happen quickly and add to visible homelessness across the state. State and locally funded resources, including the programs that DEHCR administers, will experience significant strain and burden, due to the lack of capacity to serve all of those in need.

13. In most of the State, there are no locally funded PSH resources, so households losing access to CoC-funded PSH will look to the State's PSH program. If households are unable to find PSH, they will likely return to homelessness and will need support from outreach workers and emergency shelters. The CoCs are the most significant funders of these services across the State. People experiencing homelessness who are not able to access CoC-funded rapid rehousing programs will remain in need of State-funded shelter services and will have to rely on State-funded

rapid rehousing programs to escape homelessness. In many communities across the State, aside from CoC-funded programs, the State is the principal funder of rehousing services.

14. To help quantify the implications of this, the Wisconsin Balance of State Continuum of Care,[4] which serves all counties except for Dane, Milwaukee, and Racine, currently has 37 projects, with approximately $21.6 million worth of rapid rehousing, permanent supportive housing, and joint transitional/rapid rehousing projects. Only $7.6 million are eligible under this NOFO to remain. The remaining $14 million will have to transition into transitional housing or end all together. The clients that are currently in rapid or permanent supportive housing are not eligible to go into a transitional housing program. They will be required to exit the program. According to the NOFO, if agencies spend less of a grant or have less clients as a result, an agency's ability to get a new grant will be negatively impacted as well.

15. The practical ramifications of this are dire: at least 606 households residing in the Balance of State will have to transition out of their current housing program between 2026 and 2027. These are all households that were chronically homeless, staying in places not meant for human habitation like a car or storage unit, an emergency shelter, or fleeing domestic violence prior to entering the program. The majority of households that would be impacted are households with children. Further, 229 households currently in domestic violence specific rapid re-housing will be out of the program when it would have renewed on September 30, 2026. There is no option to transition the DV grant into transitional housing. In other words, these 229 households that fled domestic violence and are now safe and housed will be out of the program in less than ten months. This just reflects the harm done outside of Wisconsin's most populated counties and urban areas.

---

[4] The Wisconsin Balance of State Continuum of Care is a 501(c)3 non-profit organization supporting all the counties in Wisconsin, except Dane, Milwaukee, and Racine. *See* the Wisconsin Balance of State Continuum of Care web page, *available at*: https://www.wiboscoc.org/

**Diminishing Value of State Investments**

16. The 2025 NOFO will harm the State by diminishing the value of investments it has made in RRH, namely, the state funds RRH through HAP, ESG and some HOME-ARP. Many times, those funds are used to match CoC RRH and expand the programs. Loss of CoC funded RRH will severely impact the number of households served and put state funded RRH programs at risk of closing due to loss of capacity. Wisconsin is prepared to supplement its description of the diminishing value of its investments in RRH with additional information, if necessary.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed this 24th day of November 2025.

*Mark Staff*

_____
Mark Staff, Deputy Division Administrator
Wisconsin Department of Administration
Division of Energy, Housing and Community Resources