IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


```
* * * * * * * * * * * * *     *25-CV-636-MSM
                              *
NATIONAL ALLIANCE TO END      *
HOMELESSNESS, et al           *
             Plaintiffs,      *
                              *
        VS.                   *
                              *
UNITED STATE DEPARTMENT OF     *
HOUSING AND URBAN             *
DEVELOPMENT, et al            *DECEMBER 8, 2025
             Defendants.      *
                              *
* * * * * * * * * * * * *     *
                              *
STATE OF WASHINGTON, et al,   *
             Plaintiffs,      *
                              *
        VS.                   *25-CV-626-MSM
                              *
UNITED STATES DEPARTMENT OF    *
HOUSING AND URBAN             *
DEVELOPMENT, et al            *
             Defendants.      *VIA VIDEO CONFERENCE
*************************** *PROVIDENCE, RI
```


BEFORE THE HONORABLE MARY S. McELROY

DISTRICT JUDGE

(MOTIONS FOR TEMPORARY RESTRAINING ORDER)

**APPEARANCES:**

FOR THE PLAINTIFFS:

|                          |                                   |
|--------------------------|-----------------------------------|
| State of Washington      | Zane Muller                       |
|                          | Washington State Attorney         |
|                          | General's Office                  |
|                          | 1125 Washington Street SE         |
|                          | PO Box 40100                      |
|                          | Olympia, WA   98504-0100          |
|                          |                                   |
| National Alliance to     | Kristin Bateman, Esq.             |
| End Homelessness         | Democracy Forward Foundation      |
|                          | PO Box 34553                      |
|                          | Washington, DC 20043              |

FOR THE DEFENDANTS:

|                          |                                   |
|--------------------------|-----------------------------------|
| U.S. Department of Housing| PARDIS GHEIBI, DOJ-Civ           |
| and Urban Development     | Civil Division, Federal          |
|                          | Programs Branch                   |
|                          | 1100 L Street NW Room 11526       |
|                          | Washington, DC 20005              |

|                          |                                   |
|--------------------------|-----------------------------------|
| Court Reporter:          | Denise P. Veitch, RPR             |
|                          | One Exchange Terrace              |
|                          | Providence, RI   02903            |

VIA VIDEO CONFERENCE

8 December 2025 -- 3:30 p.m.

(Discussion off the record)

THE COURT:  Are we ready to go?

(No audible response)

THE COURT:  I'm going to assume yes.  So there are two cases here for a motion for temporary restraining order, motions for temporary restraining order; and as you all recall from the conference on Friday, we put them on for this and then they're still maintained as motions for preliminary injunction. We're on the record.  Is Denise present?  Yes.  Okay.

THE CLERK:  Yes, Judge.

THE COURT:  Thank you.  So a reminder, we're on the record in Civil Action 25-626, which we've titled the State of Washington et al v. The Department of Housing and Urban Development, and 25-636, which we have titled the National Alliance to End Homelessness v. The United States Department of Housing and Urban Development.  We've combined these two for a single hearing on TROs because they both involve the same or similar actions which the Administration or by the Department.

A couple of reminders.  The record is only as good as you make it, so speak slowly.  I understand the

temptation when you're on Zoom to read and it tends to make people go more quickly, so just be aware of that.

My understanding is that for the State of Washington we have Mr. Muller, and you'll be arguing the Plaintiffs' case in that case, --

MR. MULLER:  That's correct.

THE COURT:  -- which is 626.

And then Ms. Gheibi -- did I pronounce that correctly?

MS. GHEIBI:  Yes, your Honor.

THE COURT:  Okay.  -- will be arguing for the government in those cases.

And then in the 636 we have Ms. Bateman and Ms. Gitomer.

MS. GITOMER:  That's correct, your Honor.

THE COURT:  All right.  So I don't know how you want to structure this.  My thought is to start with the attorney for the states, their argument on the TRO. And then, Ms. Gheibi, it's up to you; do you want to respond once or do you want to respond to each party separately?  I think it might make sense to hear from all three Plaintiffs and then allow you to respond, but your call.

MS. GHEIBI:  That works for us, your Honor.

THE COURT:  Perfect.

All right.  Whenever you're ready, Mr. Muller. And I would like people to introduce themselves for the record so the stenographer knows who is talking.

MR. MULLER:  Thank you, your Honor.  Zane Muller on behalf of the State of Washington, and I'm actually going to shortly turn it over to my colleagues for the organization to address issues raised by the actions this morning by the Government, as I'm sure you saw, to rescind the 2025 NOFO, which we received notice of about an hour and a half ago.

THE COURT:  I have not seen that.  Can somebody tell me what happened and how it impacts this.

MR. MULLER:  So, yes, your Honor.  We received notice through first our providers and then through ECF, not through opposing counsel, that the 2025 NOFO has been temporarily withdrawn such that HUD has reserved the right to issue a new 2025 NOFO at a later date; which you know, your Honor, when we spoke on Friday the two harms that we outlined were the sort of chaos that the late arriving and unlawful NOFO were so (indecipherable) in the CoC for the states or providers, and the risk also that the funding which begins to dry up in January would be unduly delayed as a result of HUD's unlawful process.  And HUD earlier stated the one thing that actually I think compounded

those harms, and so that's what I think we need to address before we actually get to the substance.

THE COURT:  Is it possible that, and I don't know if this is -- and not having had the opportunity to look at what was done an hour or so ago, but do we have -- if they're withdrawing the 2025 NOFO, then it would be my understanding that the original '24 NOFO that includes Continuum of Care and all of the things that they've withdrawn in 2025 is still in existence. Is that --

MR. MULLER:  That's what we believe should be the case, your Honor, and I'll let the government answer as far as what they purport to do with this sort of notification this morning.  But I just want to frame for your Honor sort of the unexpected and chaotic situation that we're in, you know, as of an hour and a half ago.

THE COURT:  Okay.  And you want somebody else to talk about that before we get to the substance of --

MR. MULLER:  Yes, to my co-Plaintiff.

THE COURT:  Is it possible that the government's action has mooted out these actions?  So it's a 2025, it was filed at 2:32 in the court, so an hour ago, an hour before hearing.  I don't know who filed it.

Ms. Gheibi, was it you?

MS. GHEIBI:  Yes, your Honor, we filed it.  We filed it as soon as the notice of withdrawal was published.

Our position is that Plaintiffs' claim or at the very least that the TRO is now moot because we've withdrawn the 2025 NOFO.  So to the extent that Plaintiffs were entitled to any relief on this emergency posture which would have been stay of the 2025 NOFO, they effectively already have that.

THE COURT:  Who made that decision and when was it made?

MS. GHEIBI:  The decision was made by HUD and it was made --

THE COURT:  Well, HUD is not a person.  So who made the decision?

MS. GHEIBI:  I can't really speak to exactly who -- are you asking about who was the final person? I -- if that's something the Court is interested in we can file a notice later as to exactly who made that decision.

THE COURT:  And when was it made?

MS. GHEIBI:  It was made shortly before I filed -- I mean the decision was publicized shortly before I filed the notice.  We didn't have the chance to sort of confer with Plaintiffs' counsel, but it was

made this afternoon or -- yes, the rescission happened this afternoon.

THE COURT:  So this sort of haphazard approach to administrative law is the problem.  It's been a problem.  And I'm speaking to you, Ms. Gheibi, but I recognize that you don't make these decisions; you're the lawyer.  But your clients -- you know, we've started hearing, courts in general started hearing these cases back in February or March.  There's a process and a procedure that's laid out in the Administrative Procedures Act for agency action and agency rulemaking, and there's a process for amending legislation if the legislation that the Administration disagrees with the language and the legislation whether it relates to the funding formula or whether it relates to the priorities of the legislation, there's a process for amending that, but it's not by Tweets and it's not by last-minute orders or last-minute withdrawals.  These cases tend to be incredibly labor-intensive and incredibly wasteful financially for the government, for the courts, for the agencies and states and, you know, the last-minute sort of oh, never mind, we're going to withdraw this.  Are we going to see another 2025 NOFO without the proper procedure in place tomorrow?

MS. GHEIBI:  Your Honor, first of all, I

completely understand.  But in terms of whether or not there's going to be a 2025 NOFO, HUD has said in the notice, and I recognize that it was filed shortly before the hearing and the Court hasn't had the chance to take a look at it, so completely understand.  But HUD has said, has communicated that it is its intention to issue a new NOFO.  To the extent that Plaintiffs have or anticipate having a problem with that, we would maintain that they'd have to wait to see what HUD actually does because --

THE COURT:  But isn't part of the problem that they have with it the timing of it, that it was well after the March, and I think that set a June deadline; so they can't go back in time and reissue a NOFO in June of 2025, so how can they possibly, you know, do one now that's even later?

MS. GHEIBI:  So to the extent that the question is whether or not the agency has the authority to issue something at this point, we would maintain that that's something that the government should have the opportunity to at least brief.

THE COURT:  You had the opportunity to brief that right here in this case, and you chose instead to withdraw it.

I'm going to hear from the parties their

argument about the effect of this.

MS. GHEIBI:  Well, we would maintain that our sort of the posture of this case is fundamentally different, it is today than it was yesterday; so we didn't really have a chance to sort of brief that and Plaintiffs' claims with respect to the 2025 NOFO.  But we're more than happy to brief the issue to the extent the Court is interested in it, but we don't think any relief is warranted on this sort of super expedited TRO posture.

THE COURT:  And so if the government comes back and gives and produces another 2025 NOFO, are they prepared to pay the costs for the parties in this case?

MS. GHEIBI:  Costs in terms of...

THE COURT:  Well, I'm assuming these lawyers spent time over the weekend.  I know I spent time over the weekend.  I note they spent time prepping this.  Your agency has had notice of these lawsuits for weeks, at least a week, two weeks?  It was from before Thanksgiving, let's put it that way, and right after Thanksgiving, and so, you know, it feels like intentional chaos.  But I'm going to hear from the other side.

MS. GHEIBI:  To answer your question about attorney's fees, I think there's the statute, I don't

have it top of my head how it would apply here, but we would maintain that the standard is whatever the relevant statute for attorney fees provides, but --.

THE COURT:  Okay.  All right.

Is it Ms. Gitomer or Ms. Bateman who is going to address the issue of this late filing?

MS. BATEMAN:  It will be me, your Honor, Kristin Bateman, for the National Alliance Plaintiffs.

As your Honor I think recognizes, and I want to make very clear this last-minute switch does not obviate our need for preliminary relief in this case and it does not obviate our need for fast preliminary relief.

THE COURT:  What is that, why is that, because I would assume that what I'm -- and I haven't read what the government filed, but unless I misunderstand what the government is saying, they're intending to go forward with the funding that they promised in the 2024-2025 combined NOFO and the Continuum of Care money goes out and 90 percent goes and the reauthorization goes out.  All that goes out.

MS. BATEMAN:  That is not how I understand what they're saying.

THE COURT:  Let's ask Ms. Gheibi.  Is that what you're saying?

MS. GHEIBI:  No, your Honor.  Just that --

(Overlapping speech)

THE COURT:  So how are they not entitled to relief?

MS. GHEIBI:  It's unclear what the relief would be.  Just to be clear, the 2024 NOFO did not entitle the recipients to automatic renewal, and the 2024 NOFO HUD just reserved the right to renew the contract and it and also --

THE COURT:  I believe that the NOFO allowed Continuum of Care treatment facilities to submit an application for both fiscal years and fiscal 2025 awards were to be made without new filings unless a project sought reauthorization; not the Agency.

MS. GHEIBI:  Right.  And at the bottom of page 4 of the 2024 NOFO it also said HUD reserves the right to modify this NOFO or issue a supplemental NOFO.

THE COURT:  So if that's the case we're back in did you violate the Administrative Procedures Act, did you violate the statute, so we're back in TRO land.

Go ahead, Ms. Bateman.

MS. BATEMAN:  Yes, your Honor, our position is that the rescission of the old NOFO, which is clear that they are standing by despite this last-minute switch on getting rid of the also problematic FY25

NOFO, the rescission is unlawful, it is both contrary to the timing mandates of the statute, and it is arbitrary and capricious; and the recission that's extremely late in the game for decision of the fiscal year 24-25 NOFO is already causing us irreparable harm. And that is because the extremely late switch in the rules and now it's going to be an even later switch that's going to cause funding delays.  That is inevitable at this point.  And those funding delays, that means there's going to be gaps in the funding for these organizations who have grants expiring as soon as January.  Those gaps in funding mean that they will not have the money to continue supporting the permanent housing that they fund for people to live in, and that people are going to be displaced, put back into homelessness in the middle of winter and face all the harms that come with that.

So for that reason, we are asking for relief as quickly as possible.  Friday is no longer a hard deadline for us.  The Friday deadline was about applying to the new FY25 NOFO that now no longer exists.  It is not a hard deadline.  We do have a sort of like as soon as possible deadline because the harm is already occurring, so each day that goes past is worse and worse.

We do not object to giving the government an opportunity for, to file a written response before that relief is granted and -- but we would ask that happen as quickly as possible.

THE COURT:  Right.  I think that we had already committed last week to a December 15th response by the government in both cases.  And I would be inclined to then give the Plaintiff states and the Plaintiff agencies the opportunity to file a reply, particularly because they need to address the issue of what I understand you're arguing, Ms. Bateman, is that we have these arbitrary and capricious actions and now we have this yet another arbitrary and capricious action.  It doesn't undo the actions that were previously done; it just adds, exacerbates the problem.

MS. BATEMAN:  That's exactly it, your Honor.

THE COURT:  And it seems to be that it could be capable of repetition yet evading review since the government can just wait until an hour before every hearing and withdraw what they filed and then file again, --

MS. BATEMAN:  Correct, your Honor.

THE COURT:  -- creating this delay.

So this is my inclination, and I don't know if this makes any sense, but it makes sense to me, and if

it doesn't, feel free to speak up, anybody.  I'm inclined to say we don't need those preliminary injunction motions to be converted to a temporary restraining order because the government doesn't have an outstanding NOFO; but the government is still ordered to respond to those preliminary injunction hearing motions by Monday and to also address the nature and the effect of the rescission and how and when that decision was made.

And then I would be inclined to give the Plaintiffs what time they want for a reply, because I assume you want to address the issue of how the -- of the rescission's impact.  Does that make sense?

MS. BATEMAN:  Yes, that makes sense.

There is one additional thing I think we would add at this juncture.

THE COURT:  Sure.

MS. BATEMAN:  And to mitigate that irreparable harm that I was just talking about, we want to get this case to final judgment quickly because on final judgment what we're going to ask this Court to do is to order HUD to process and pay out the renewals under the fiscal year 24-25 NOFO.  Obviously we want that to happen as quickly as possible given that there are funding gaps, and so we would like expedited summary

judgment and expedited production of the administrative record which would be --

(Overlapping speech)

THE COURT:  Yes, there won't be much of an administrative record, I would imagine.

Ms. Gheibi, do you have any objection to that?

MS. GHEIBI:  So we are fine with the timeline of responding on Monday, December 15th.  And just to clarify, we're going to be opposing the PI.  And then you asked that we also address the nature and effect of the rescission and how and when that decision was made; correct?  Just to clarify.

THE COURT:  Yes, because I don't know how I can address the preliminary injunctions without also addressing the rescission.  If you don't want to address the rescission then I'll take -- then, you know, I'm left to analyze it as I see fit.  But I would prefer that the government actually address it.

MS. GHEIBI:  Right.  Of course.  And I didn't mean to insinuate that we didn't want to; I just wanted to clarify so that I'm clear to what our obligations are.  That works for us.

On the final judgment piece, we would ask that we be given -- that it wouldn't be extremely truncated. Just for some context, even in the prior years the

money didn't actually go out until March or April, as I understand it, and that appears in the declarations. So we ask that we be given leeway until there's final judgment.

THE COURT:  Well, depending on the decision on the preliminary injunction, if the Plaintiffs, if the Plaintiffs were to succeed in a preliminary injunction certainly the government could agree to convert it to a permanent injunction and actually appeal this one. They didn't appeal the one in September and they haven't appealed many of these but could actually do that.  Otherwise, I'll take a suggestion from both sides as to what they think the briefing schedule would be for summary judgment.  But I would expect it to be very -- to be expedited.  These cases keep creating chaos because of the way government is failing to follow the sort of normal process.  And I understand changing policies.  That's not the issue.  You can change the policy all you want, but there's a mechanism for doing so, and it's not doing things an hour before court, and it's not some of the stuff that's been done in some of these cases.

MS. GHEIBI:  Understood.  And to your point about the, converting the PI to summary judgment, that's certainly something that we could consider after

or, excuse me, PI to a permanent injunction.  That's certainly something we could consider, and I think perhaps it would make sense to, for us to after there is a decision on the PI, for us to confer with Plaintiffs about what kind of summary judgment, if any, briefing schedule would be warranted.

THE COURT:  Ms. Bateman.  Mr. Muller. Ms. Gitomer.

MS. BATEMAN:  Yes.  We proposed a schedule in our motion for expedited production of the administrative record and we think that that, you know, we would ask for that schedule and that has been produced in the administrative record by December 15 to kick off the process.

THE COURT:  Okay.  So with your filing why don't you produce the administrative record, Ms. Gheibi.

MS. GHEIBI:  December 15th?

THE COURT:  Yes.  That's next week.

MS. GHEIBI:  Your Honor, I'm not sure if that's doable.  I haven't really had a chance to speak with my HUD counterparts.  Prior to the rescission my understanding was the fastest the could do it would be 60 days from last week when he spoke with them.  Now of course things look different because of the rescission, but I haven't had the chance to --

THE COURT:  60 days isn't going to be acceptable.  So I might give them an extra week, but, you know, considering that they spent the last week, two weeks not producing the administrative record but figuring out how to rescind this thing, I think they can hurry it up.  People can work overtime if they need to; I do, they do, I'm sure you do.

MS. GHEIBI:  I certainly do.

THE COURT:  I know you do.

MS. GHEIBI:  But so, again, we would ask that at least it be after the holidays to sort of accommodate the holidays.

THE COURT:  No.  Nope.  I mean we can address that on Monday.  You get a better sense of when they can produce it and you give me an idea, and Ms. Gitomer and Mr. Muller, of when you absolutely feel that you must have the administrative record.  And it should be shorter now that you've rescinded the NOFO.

MS. GHEIBI:  Yes, your Honor.

THE COURT:  Is there anything else we can do at this current hearing?

MS. BATEMAN:  Your Honor, when would you like our reply, or is it just for --

THE COURT:  You tell me when you'd like to have your reply due.

MS. BATEMAN:  Okay.

THE COURT:  Maybe we can --  typically it's seven days after, so I'm willing to give you seven days, but I'm also -- I think Mr. Muller last time had suggested shortening it, and I'm willing to do that if that makes things easier for you.

MR. MULLER:  I think it would be the states' preference, your Honor, to have a hearing next week as perhaps towards the end of the week with a maybe expedited, shortened window for reply just for the time and considerations that we've outlined and the fact that the chaos and the harm are happening now.

THE COURT:  So if it's due Monday, if their thing is due Monday, can you get a reply together by Wednesday?  Because bearing in mind that at some point you're going to need to address the rescission since it's now part of the case here since it's been filed in the docket of these cases.

And I'm going to ask Carrie to take a look at my calendar.

THE CLERK:  Judge, you have the afternoon of the 18th and the afternoon of the 19th, which is the Thursday and Friday.

THE COURT:  Okay.  Why don't you guys get together and come up with which one you prefer and

we'll do one of those -- actually, no, Thursday is the 18th; correct?

THE CLERK:  Correct, Judge.

THE COURT:  Yeah; we have to do it Friday.  We can't do Thursday on this case because the law clerk attached is not going to be here on Thursday, so.

THE CLERK:  Friday morning at 10:00 a.m., is that too early?

THE COURT:  Not for me.

THE CLERK:  For the West Coasters?

THE COURT:  Oh, I forgot, Mr. Muller, you're West Coast.

MR. MULLER:  Today was fine (indecipherable), so if it's a hearing in person we may be able to appear. So we can make whatever time works for your Honor.

THE COURT:  It's up to you guys.  Again, the parties usually decide in civil matters whether it's in person or on Zoom.  We leave it up to you guys post-Covid to decide, so, what you prefer.

MR. MULLER:  I think we'll take the 10:00 a.m., your Honor, and we can decide from there as to which.

MS. GHEIBI:  Yes.

THE COURT:  All right.

MR. MULLER:  The only other issue I'd like to flag for your Honor is in light of the certain new

developments we may need minor amendment to our complaint to account for the sort of, as your Honor indicated, the voluntary cessation problems and the potential sort of unlawfully withheld agency action that this new switcheroo represents.

THE COURT:  Okay.  All right.  So we'll attempt a hearing, is that Friday, the 19th?  Next Friday, okay.  And we'll have your response with a note, a notice of when you can find the, when you can get the administrative record to us, with an understanding that I want it before the new year.

MS. GHEIBI:  Understood.  Yes, we'll get that to you.

THE COURT:  Thank you.  Everybody, have a good day.  All right, bye.

(Adjourned)

C E R T I F I C A T I O N

I, Denise P. Veitch, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Denise P. Veitch_
Denise P. Veitch, RPR
Federal Official Court Reporter

December 9, 2025
Date