# EXHIBIT B

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
 2


 3


 4    * * * * * * * * * * * * *    *25-CV-636-MSM
                                   *
 5    NATIONAL ALLIANCE TO END     *
      HOMELESSNESS, et al          *
 6             Plaintiffs,         *
                                   *
 7           VS.                   *
                                   *
 8    UNITED STATE DEPARTMENT OF    *
      HOUSING AND URBAN            *
 9    DEVELOPMENT, et al           *DECEMBER 8, 2025
               Defendants.         *
10    * * * * * * * * * * * * *    *
                                   *
11                                 *
      STATE OF WASHINGTON, et al,  *
12             Plaintiffs,         *
                                   *
13           VS.                   *25-CV-626-MSM
                                   *
14    UNITED STATES DEPARTMENT OF   *
      HOUSING AND URBAN            *
15    DEVELOPMENT, et al           *
               Defendants.         *VIA VIDEO CONFERENCE
16    *****************************  *PROVIDENCE, RI

17


18


19


20
               BEFORE THE HONORABLE MARY S. McELROY
21
                        DISTRICT JUDGE
22
            (MOTIONS FOR TEMPORARY RESTRAINING ORDER)
23


24


25
```

1    **APPEARANCES:**

2    FOR THE PLAINTIFFS:
                                  Zane Muller
3    State of Washington          Washington State Attorney
                                  General's Office
4                                 1125 Washington Street SE
                                  PO Box 40100
5                                 Olympia, WA  98504-0100

6    National Alliance to         Kristin Bateman, Esq.
     End Homelessness             Democracy Forward Foundation
7                                 PO Box 34553
                                  Washington, DC 20043
8
     FOR THE DEFENDANTS:
9
     U.S. Department of Housing   PARDIS GHEIBI, DOJ-Civ
10   and Urban Development        Civil Division, Federal
                                  Programs Branch
11                                1100 L Street NW Room 11526
                                  Washington, DC 20005
12

13   Court Reporter:              Denise P. Veitch, RPR
                                  One Exchange Terrace
14                                Providence, RI  02903

15

16

17

18

19

20

21

22

23

24

25

1    VIA VIDEO CONFERENCE

2    8 December 2025 -- 3:30 p.m.

3            (Discussion off the record)

4            THE COURT:  Are we ready to go?

5            (No audible response)

6            THE COURT:  I'm going to assume yes.  So there

7    are two cases here for a motion for temporary

8    restraining order, motions for temporary restraining

9    order; and as you all recall from the conference on

10   Friday, we put them on for this and then they're still

11   maintained as motions for preliminary injunction.

12   We're on the record.  Is Denise present?  Yes.  Okay.

13           THE CLERK:  Yes, Judge.

14           THE COURT:  Thank you.  So a reminder, we're on

15   the record in Civil Action 25-626, which we've titled

16   the State of Washington et al v. The Department of

17   Housing and Urban Development, and 25-636, which we

18   have titled the National Alliance to End Homelessness

19   v. The United States Department of Housing and Urban

20   Development.  We've combined these two for a single

21   hearing on TROs because they both involve the same or

22   similar actions which the Administration or by the

23   Department.

24           A couple of reminders.  The record is only as

25   good as you make it, so speak slowly.  I understand the

1    temptation when you're on Zoom to read and it tends to

2    make people go more quickly, so just be aware of that.

3            My understanding is that for the State of

4    Washington we have Mr. Muller, and you'll be arguing

5    the Plaintiffs' case in that case, --

6            MR. MULLER:   That's correct.

7            THE COURT:   -- which is 626.

8            And then Ms. Gheibi -- did I pronounce that

9    correctly?

10           MS. GHEIBI:  Yes, your Honor.

11           THE COURT:   Okay.  -- will be arguing for the

12   government in those cases.

13           And then in the 636 we have Ms. Bateman and

14   Ms. Gitomer.

15           MS. GITOMER:  That's correct, your Honor.

16           THE COURT:   All right.  So I don't know how you

17   want to structure this.  My thought is to start with

18   the attorney for the states, their argument on the TRO.

19   And then, Ms. Gheibi, it's up to you; do you want to

20   respond once or do you want to respond to each party

21   separately?  I think it might make sense to hear from

22   all three Plaintiffs and then allow you to respond, but

23   your call.

24           MS. GHEIBI:  That works for us, your Honor.

25           THE COURT:   Perfect.

1          All right.  Whenever you're ready, Mr. Muller.

2     And I would like people to introduce themselves for the

3     record so the stenographer knows who is talking.

4          MR. MULLER:  Thank you, your Honor.  Zane Muller

5     on behalf of the State of Washington, and I'm actually

6     going to shortly turn it over to my colleagues for the

7     organization to address issues raised by the actions

8     this morning by the Government, as I'm sure you saw, to

9     rescind the 2025 NOFO, which we received notice of

10    about an hour and a half ago.

11         THE COURT:  I have not seen that.  Can somebody

12    tell me what happened and how it impacts this.

13         MR. MULLER:  So, yes, your Honor.  We received

14    notice through first our providers and then through

15    ECF, not through opposing counsel, that the 2025 NOFO

16    has been temporarily withdrawn such that HUD has

17    reserved the right to issue a new 2025 NOFO at a later

18    date; which you know, your Honor, when we spoke on

19    Friday the two harms that we outlined were the sort of

20    chaos that the late arriving and unlawful NOFO were so

21    (indecipherable) in the CoC for the states or

22    providers, and the risk also that the funding which

23    begins to dry up in January would be unduly delayed as

24    a result of HUD's unlawful process.  And HUD earlier

25    stated the one thing that actually I think compounded

1    those harms, and so that's what I think we need to

2    address before we actually get to the substance.

3         THE COURT:  Is it possible that, and I don't

4    know if this is -- and not having had the opportunity

5    to look at what was done an hour or so ago, but do we

6    have -- if they're withdrawing the 2025 NOFO, then it

7    would be my understanding that the original '24 NOFO

8    that includes Continuum of Care and all of the things

9    that they've withdrawn in 2025 is still in existence.

10   Is that --

11        MR. MULLER:  That's what we believe should be

12   the case, your Honor, and I'll let the government

13   answer as far as what they purport to do with this sort

14   of notification this morning.  But I just want to frame

15   for your Honor sort of the unexpected and chaotic

16   situation that we're in, you know, as of an hour and a

17   half ago.

18        THE COURT:  Okay.  And you want somebody else to

19   talk about that before we get to the substance of --

20        MR. MULLER:  Yes, to my co-Plaintiff.

21        THE COURT:  Is it possible that the government's

22   action has mooted out these actions?  So it's a 2025,

23   it was filed at 2:32 in the court, so an hour ago, an

24   hour before hearing.  I don't know who filed it.

25        Ms. Gheibi, was it you?

1      MS. GHEIBI:  Yes, your Honor, we filed it.  We

2  filed it as soon as the notice of withdrawal was

3  published.

4      Our position is that Plaintiffs' claim or at the

5  very least that the TRO is now moot because we've

6  withdrawn the 2025 NOFO.  So to the extent that

7  Plaintiffs were entitled to any relief on this

8  emergency posture which would have been stay of the

9  2025 NOFO, they effectively already have that.

10      THE COURT:  Who made that decision and when was

11  it made?

12      MS. GHEIBI:  The decision was made by HUD and it

13  was made --

14      THE COURT:  Well, HUD is not a person.  So who

15  made the decision?

16      MS. GHEIBI:  I can't really speak to exactly

17  who -- are you asking about who was the final person?

18  I -- if that's something the Court is interested in we

19  can file a notice later as to exactly who made that

20  decision.

21      THE COURT:  And when was it made?

22      MS. GHEIBI:  It was made shortly before I

23  filed -- I mean the decision was publicized shortly

24  before I filed the notice.  We didn't have the chance

25  to sort of confer with Plaintiffs' counsel, but it was

1    made this afternoon or -- yes, the rescission happened

2    this afternoon.

3        THE COURT:  So this sort of haphazard approach

4    to administrative law is the problem.  It's been a

5    problem.  And I'm speaking to you, Ms. Gheibi, but I

6    recognize that you don't make these decisions; you're

7    the lawyer.  But your clients -- you know, we've

8    started hearing, courts in general started hearing

9    these cases back in February or March.  There's a

10   process and a procedure that's laid out in the

11   Administrative Procedures Act for agency action and

12   agency rulemaking, and there's a process for amending

13   legislation if the legislation that the Administration

14   disagrees with the language and the legislation whether

15   it relates to the funding formula or whether it relates

16   to the priorities of the legislation, there's a process

17   for amending that, but it's not by Tweets and it's not

18   by last-minute orders or last-minute withdrawals.

19   These cases tend to be incredibly labor-intensive and

20   incredibly wasteful financially for the government, for

21   the courts, for the agencies and states and, you know,

22   the last-minute sort of oh, never mind, we're going to

23   withdraw this.  Are we going to see another 2025 NOFO

24   without the proper procedure in place tomorrow?

25       MS. GHEIBI:  Your Honor, first of all, I

1    completely understand.  But in terms of whether or not

2    there's going to be a 2025 NOFO, HUD has said in the

3    notice, and I recognize that it was filed shortly

4    before the hearing and the Court hasn't had the chance

5    to take a look at it, so completely understand.  But

6    HUD has said, has communicated that it is its intention

7    to issue a new NOFO.  To the extent that Plaintiffs

8    have or anticipate having a problem with that, we would

9    maintain that they'd have to wait to see what HUD

10   actually does because --

11        THE COURT:  But isn't part of the problem that

12   they have with it the timing of it, that it was well

13   after the March, and I think that set a June deadline;

14   so they can't go back in time and reissue a NOFO in

15   June of 2025, so how can they possibly, you know, do

16   one now that's even later?

17        MS. GHEIBI:  So to the extent that the question

18   is whether or not the agency has the authority to issue

19   something at this point, we would maintain that that's

20   something that the government should have the

21   opportunity to at least brief.

22        THE COURT:  You had the opportunity to brief

23   that right here in this case, and you chose instead to

24   withdraw it.

25        I'm going to hear from the parties their

1    argument about the effect of this.

2        MS. GHEIBI:  Well, we would maintain that our

3    sort of the posture of this case is fundamentally

4    different, it is today than it was yesterday; so we

5    didn't really have a chance to sort of brief that and

6    Plaintiffs' claims with respect to the 2025 NOFO.  But

7    we're more than happy to brief the issue to the extent

8    the Court is interested in it, but we don't think any

9    relief is warranted on this sort of super expedited TRO

10   posture.

11       THE COURT:  And so if the government comes back

12   and gives and produces another 2025 NOFO, are they

13   prepared to pay the costs for the parties in this case?

14       MS. GHEIBI:  Costs in terms of...

15       THE COURT:  Well, I'm assuming these lawyers

16   spent time over the weekend.  I know I spent time over

17   the weekend.  I note they spent time prepping this.

18   Your agency has had notice of these lawsuits for weeks,

19   at least a week, two weeks?  It was from before

20   Thanksgiving, let's put it that way, and right after

21   Thanksgiving, and so, you know, it feels like

22   intentional chaos.  But I'm going to hear from the

23   other side.

24       MS. GHEIBI:  To answer your question about

25   attorney's fees, I think there's the statute, I don't

1   have it top of my head how it would apply here, but we

2   would maintain that the standard is whatever the

3   relevant statute for attorney fees provides, but --.

4           THE COURT:  Okay.  All right.

5           Is it Ms. Gitomer or Ms. Bateman who is going to

6   address the issue of this late filing?

7           MS. BATEMAN:  It will be me, your Honor, Kristin

8   Bateman, for the National Alliance Plaintiffs.

9           As your Honor I think recognizes, and I want to

10  make very clear this last-minute switch does not

11  obviate our need for preliminary relief in this case

12  and it does not obviate our need for fast preliminary

13  relief.

14          THE COURT:  What is that, why is that, because I

15  would assume that what I'm -- and I haven't read what

16  the government filed, but unless I misunderstand what

17  the government is saying, they're intending to go

18  forward with the funding that they promised in the

19  2024-2025 combined NOFO and the Continuum of Care money

20  goes out and 90 percent goes and the reauthorization

21  goes out.  All that goes out.

22          MS. BATEMAN:  That is not how I understand what

23  they're saying.

24          THE COURT:  Let's ask Ms. Gheibi.  Is that what

25  you're saying?

1        MS. GHEIBI:  No, your Honor.  Just that --

2        (Overlapping speech)

3        THE COURT:  So how are they not entitled to

4    relief?

5        MS. GHEIBI:  It's unclear what the relief would

6    be.  Just to be clear, the 2024 NOFO did not entitle

7    the recipients to automatic renewal, and the 2024 NOFO

8    HUD just reserved the right to renew the contract and

9    it and also --

10        THE COURT:  I believe that the NOFO allowed

11   Continuum of Care treatment facilities to submit an

12   application for both fiscal years and fiscal 2025

13   awards were to be made without new filings unless a

14   project sought reauthorization; not the Agency.

15        MS. GHEIBI:  Right.  And at the bottom of page 4

16   of the 2024 NOFO it also said HUD reserves the right to

17   modify this NOFO or issue a supplemental NOFO.

18        THE COURT:  So if that's the case we're back in

19   did you violate the Administrative Procedures Act, did

20   you violate the statute, so we're back in TRO land.

21        Go ahead, Ms. Bateman.

22        MS. BATEMAN:  Yes, your Honor, our position is

23   that the rescission of the old NOFO, which is clear

24   that they are standing by despite this last-minute

25   switch on getting rid of the also problematic FY25

1    NOFO, the rescission is unlawful, it is both contrary

2    to the timing mandates of the statute, and it is

3    arbitrary and capricious; and the recission that's

4    extremely late in the game for decision of the fiscal

5    year 24-25 NOFO is already causing us irreparable harm.

6    And that is because the extremely late switch in the

7    rules and now it's going to be an even later switch

8    that's going to cause funding delays.  That is

9    inevitable at this point.  And those funding delays,

10   that means there's going to be gaps in the funding for

11   these organizations who have grants expiring as soon as

12   January.  Those gaps in funding mean that they will not

13   have the money to continue supporting the permanent

14   housing that they fund for people to live in, and that

15   people are going to be displaced, put back into

16   homelessness in the middle of winter and face all the

17   harms that come with that.

18          So for that reason, we are asking for relief as

19   quickly as possible.  Friday is no longer a hard

20   deadline for us.  The Friday deadline was about

21   applying to the new FY25 NOFO that now no longer

22   exists.  It is not a hard deadline.  We do have a sort

23   of like as soon as possible deadline because the harm

24   is already occurring, so each day that goes past is

25   worse and worse.

1        We do not object to giving the government an

2    opportunity for, to file a written response before that

3    relief is granted and -- but we would ask that happen

4    as quickly as possible.

5        THE COURT:  Right.  I think that we had already

6    committed last week to a December 15th response by the

7    government in both cases.  And I would be inclined to

8    then give the Plaintiff states and the Plaintiff

9    agencies the opportunity to file a reply, particularly

10   because they need to address the issue of what I

11   understand you're arguing, Ms. Bateman, is that we have

12   these arbitrary and capricious actions and now we have

13   this yet another arbitrary and capricious action.  It

14   doesn't undo the actions that were previously done; it

15   just adds, exacerbates the problem.

16       MS. BATEMAN:  That's exactly it, your Honor.

17       THE COURT:  And it seems to be that it could be

18   capable of repetition yet evading review since the

19   government can just wait until an hour before every

20   hearing and withdraw what they filed and then file

21   again, --

22       MS. BATEMAN:  Correct, your Honor.

23       THE COURT:  -- creating this delay.

24       So this is my inclination, and I don't know if

25   this makes any sense, but it makes sense to me, and if

1    it doesn't, feel free to speak up, anybody.  I'm

2    inclined to say we don't need those preliminary

3    injunction motions to be converted to a temporary

4    restraining order because the government doesn't have

5    an outstanding NOFO; but the government is still

6    ordered to respond to those preliminary injunction

7    hearing motions by Monday and to also address the

8    nature and the effect of the rescission and how and

9    when that decision was made.

10        And then I would be inclined to give the

11   Plaintiffs what time they want for a reply, because I

12   assume you want to address the issue of how the -- of

13   the rescission's impact.  Does that make sense?

14        MS. BATEMAN:  Yes, that makes sense.

15        There is one additional thing I think we would

16   add at this juncture.

17        THE COURT:  Sure.

18        MS. BATEMAN:  And to mitigate that irreparable

19   harm that I was just talking about, we want to get this

20   case to final judgment quickly because on final

21   judgment what we're going to ask this Court to do is to

22   order HUD to process and pay out the renewals under the

23   fiscal year 24-25 NOFO.  Obviously we want that to

24   happen as quickly as possible given that there are

25   funding gaps, and so we would like expedited summary

1    judgment and expedited production of the administrative

2    record which would be --

3          (Overlapping speech)

4          THE COURT:  Yes, there won't be much of an

5    administrative record, I would imagine.

6          Ms. Gheibi, do you have any objection to that?

7          MS. GHEIBI:  So we are fine with the timeline of

8    responding on Monday, December 15th.  And just to

9    clarify, we're going to be opposing the PI.  And then

10   you asked that we also address the nature and effect of

11   the rescission and how and when that decision was made;

12   correct?  Just to clarify.

13         THE COURT:  Yes, because I don't know how I can

14   address the preliminary injunctions without also

15   addressing the rescission.  If you don't want to

16   address the rescission then I'll take -- then, you

17   know, I'm left to analyze it as I see fit.  But I would

18   prefer that the government actually address it.

19         MS. GHEIBI:  Right.  Of course.  And I didn't

20   mean to insinuate that we didn't want to; I just wanted

21   to clarify so that I'm clear to what our obligations

22   are.  That works for us.

23         On the final judgment piece, we would ask that

24   we be given -- that it wouldn't be extremely truncated.

25   Just for some context, even in the prior years the

1    money didn't actually go out until March or April, as I

2    understand it, and that appears in the declarations.

3    So we ask that we be given leeway until there's final

4    judgment.

5         THE COURT:  Well, depending on the decision on

6    the preliminary injunction, if the Plaintiffs, if the

7    Plaintiffs were to succeed in a preliminary injunction

8    certainly the government could agree to convert it to a

9    permanent injunction and actually appeal this one.

10    They didn't appeal the one in September and they

11    haven't appealed many of these but could actually do

12    that.  Otherwise, I'll take a suggestion from both

13    sides as to what they think the briefing schedule would

14    be for summary judgment.  But I would expect it to be

15    very -- to be expedited.  These cases keep creating

16    chaos because of the way government is failing to

17    follow the sort of normal process.  And I understand

18    changing policies.  That's not the issue.  You can

19    change the policy all you want, but there's a mechanism

20    for doing so, and it's not doing things an hour before

21    court, and it's not some of the stuff that's been done

22    in some of these cases.

23         MS. GHEIBI:  Understood.  And to your point

24    about the, converting the PI to summary judgment,

25    that's certainly something that we could consider after

1    or, excuse me, PI to a permanent injunction.  That's

2    certainly something we could consider, and I think

3    perhaps it would make sense to, for us to after there

4    is a decision on the PI, for us to confer with

5    Plaintiffs about what kind of summary judgment, if any,

6    briefing schedule would be warranted.

7         THE COURT:  Ms. Bateman.  Mr. Muller.

8    Ms. Gitomer.

9         MS. BATEMAN:  Yes.  We proposed a schedule in

10   our motion for expedited production of the

11   administrative record and we think that that, you know,

12   we would ask for that schedule and that has been

13   produced in the administrative record by December 15 to

14   kick off the process.

15        THE COURT:  Okay.  So with your filing why don't

16   you produce the administrative record, Ms. Gheibi.

17        MS. GHEIBI:  December 15th?

18        THE COURT:  Yes.  That's next week.

19        MS. GHEIBI:  Your Honor, I'm not sure if that's

20   doable.  I haven't really had a chance to speak with my

21   HUD counterparts.  Prior to the rescission my

22   understanding was the fastest the could do it would be

23   60 days from last week when he spoke with them.  Now of

24   course things look different because of the rescission,

25   but I haven't had the chance to --

1          THE COURT:  60 days isn't going to be

2    acceptable.  So I might give them an extra week, but,

3    you know, considering that they spent the last week,

4    two weeks not producing the administrative record but

5    figuring out how to rescind this thing, I think they

6    can hurry it up.  People can work overtime if they need

7    to; I do, they do, I'm sure you do.

8          MS. GHEIBI:  I certainly do.

9          THE COURT:  I know you do.

10          MS. GHEIBI:  But so, again, we would ask that at

11    least it be after the holidays to sort of accommodate

12    the holidays.

13          THE COURT:  No.  Nope.  I mean we can address

14    that on Monday.  You get a better sense of when they

15    can produce it and you give me an idea, and Ms. Gitomer

16    and Mr. Muller, of when you absolutely feel that you

17    must have the administrative record.  And it should be

18    shorter now that you've rescinded the NOFO.

19          MS. GHEIBI:  Yes, your Honor.

20          THE COURT:  Is there anything else we can do at

21    this current hearing?

22          MS. BATEMAN:  Your Honor, when would you like

23    our reply, or is it just for --

24          THE COURT:  You tell me when you'd like to have

25    your reply due.

1          MS. BATEMAN:  Okay.

2          THE COURT:  Maybe we can --  typically it's

3     seven days after, so I'm willing to give you

4     seven days, but I'm also -- I think Mr. Muller last

5     time had suggested shortening it, and I'm willing to do

6     that if that makes things easier for you.

7          MR. MULLER:  I think it would be the states'

8     preference, your Honor, to have a hearing next week as

9     perhaps towards the end of the week with a maybe

10    expedited, shortened window for reply just for the time

11    and considerations that we've outlined and the fact

12    that the chaos and the harm are happening now.

13         THE COURT:  So if it's due Monday, if their

14    thing is due Monday, can you get a reply together by

15    Wednesday?  Because bearing in mind that at some point

16    you're going to need to address the rescission since

17    it's now part of the case here since it's been filed in

18    the docket of these cases.

19         And I'm going to ask Carrie to take a look at my

20    calendar.

21         THE CLERK:  Judge, you have the afternoon of the

22    18th and the afternoon of the 19th, which is the

23    Thursday and Friday.

24         THE COURT:  Okay.  Why don't you guys get

25    together and come up with which one you prefer and

1    we'll do one of those -- actually, no, Thursday is the

2    18th; correct?

3           THE CLERK:  Correct, Judge.

4           THE COURT:  Yeah; we have to do it Friday.  We

5    can't do Thursday on this case because the law clerk

6    attached is not going to be here on Thursday, so.

7           THE CLERK:  Friday morning at 10:00 a.m., is

8    that too early?

9           THE COURT:  Not for me.

10          THE CLERK:  For the West Coasters?

11          THE COURT:  Oh, I forgot, Mr. Muller, you're

12   West Coast.

13          MR. MULLER:  Today was fine (indecipherable), so

14   if it's a hearing in person we may be able to appear.

15   So we can make whatever time works for your Honor.

16          THE COURT:  It's up to you guys.  Again, the

17   parties usually decide in civil matters whether it's in

18   person or on Zoom.  We leave it up to you guys

19   post-Covid to decide, so, what you prefer.

20          MR. MULLER:  I think we'll take the 10:00 a.m.,

21   your Honor, and we can decide from there as to which.

22          MS. GHEIBI:  Yes.

23          THE COURT:  All right.

24          MR. MULLER:  The only other issue I'd like to

25   flag for your Honor is in light of the certain new

1    developments we may need minor amendment to our

2    complaint to account for the sort of, as your Honor

3    indicated, the voluntary cessation problems and the

4    potential sort of unlawfully withheld agency action

5    that this new switcheroo represents.

6            THE COURT:  Okay.  All right.  So we'll attempt

7    a hearing, is that Friday, the 19th?  Next Friday,

8    okay.  And we'll have your response with a note, a

9    notice of when you can find the, when you can get the

10   administrative record to us, with an understanding that

11   I want it before the new year.

12           MS. GHEIBI:  Understood.  Yes, we'll get that to

13   you.

14           THE COURT:  Thank you.  Everybody, have a good

15   day.  All right, bye.

16           (Adjourned)

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3

4

5

6          I, Denise P. Veitch, RPR, do hereby certify

7    that the foregoing pages are a true and accurate

8    transcription of my stenographic notes in the

9    above-entitled case.

10

11

12

13                    /s/ Denise P. Veitch_
                      Denise P. Veitch, RPR
14                    Federal Official Court Reporter

15

16

17                    December 9, 2025
                            Date
18

19

20

21

22

23

24

25