## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF WASHINGTON, et al.,

                           Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and ERIC SCOTT TURNER, in His Official Capacity as Secretary of the United States Department of Housing and Urban Development,

                           Defendants.

C.A. No. 1:25-cv-00626-MSM-AEM

**PLAINTIFF STATES' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**REQUEST FOR EMERGENCY RELIEF**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 3

   A.   Plaintiffs Are Likely to Succeed on their Claims
        Related to the Challenged Conditions in the FY 2025 NOFO.............................. 3

        1.   Defendants' eleventh-hour withdrawal to avoid a temporary restraining
             order does not render Plaintiffs' claims moot ............................................. 3

        2.   Defendants' late withdrawal exacerbates—not eliminates—
             plaintiffs' irreparable harm ........................................................................ 5

        3.   Defendants make no effort to defend the Challenged Conditions ............. 6

   B.   Plaintiffs are Likely to Succeed on their Claims that the
        Rescission of the FY 2024-2025 NOFO Was Unlawful ....................................... 7

        1.   The rescission was a final agency action ..................................................... 7

        2.   Plaintiffs have standing to challenge
             Defendants' untimely rescission of the FY 2024-2025 NOFO ................. 9

        3.   The rescission of the FY 2024-2025 NOFO
             is not committed to agency discretion ....................................................... 10

        4.   The untimely rescission was contrary to law ............................................. 11

        5.   The untimely rescission was arbitrary and capricious ............................... 17

   C.   The States Will Suffer Irreparable Harm Absent Injunctive Relief..................... 19

   D.   The Equities and Public Interest Weigh Strongly in the States' Favor................ 21

   E.   The Plaintiff States Seek Proper Relief ............................................................... 22

III.  CONCLUSION..................................................................................................... 25

## I.    INTRODUCTION

At this point, all parties seem to agree that the Fiscal Year (FY) 2025 Notice of Funding Opportunity (NOFO) was unlawful. The only question remaining is: can this Court do anything about it? The answer is yes. This Court has the power to return the parties to the status quo by enjoining the FY 2025 NOFO, including its unlawful rescission of the FY 2024-2025 NOFO, reinstating the FY 2024-2025 NOFO, and enjoining Defendants from re-rescinding that NOFO via a new, untimely, and unlawful NOFO.

Defendants badly want this not to be true. They insist their late-breaking decision to withdraw the FY 2025 NOFO—coupled with a vague promise to promulgate a new NOFO at some unspecified time that may or may not contain some or all of the Challenged Conditions—strips this Court of jurisdiction. But jurisdiction is not so easily defeated. Contrary to Defendants' claims, their withdrawal of the FY 2025 NOFO does not render Plaintiffs' challenges moot because Defendants have not met their burden to show that their wrongful conduct cannot be reasonably expected to recur. Beyond arguing mootness, Defendants make no effort to defend any of the Challenged Conditions in the FY 2025 NOFO. The issuance of the FY 2025 NOFO—and its subsequent withdrawal—has irreparably harmed Plaintiffs, who face gaps in funding, administrative chaos, and increased homelessness.

This Court should enjoin the FY 2025 NOFO, including each of the Challenged Conditions, enjoin the FY 2025 NOFO's untimely rescission of the prior FY 2024-2025 NOFO, and order the former NOFO reinstated during the pendency of this litigation. Defendants admit that the Department of Housing and Urban Development (HUD) was required to have a NOFO in place for FY 2025 by June 15, 2025, and that the FY 2025 NOFO, which purported to rescind the FY 2024-2025 NOFO, was not issued until November, supporting Plaintiffs' contrary to law claim.

1

And they all but admit that the rescission was arbitrary and capricious, as they *fail* to provide any evidence that they examined the relevant data, offered a reasonable basis for the rescission, or considered any of Plaintiffs' reliance interests in the FY 2024-2025 NOFO before rescinding it. These failures were not merely procedural. They substantively interfered with Defendants' statutory obligations to make funds available for renewals and injured Plaintiffs.

Defendants offer up some non-merits arguments to avoid review but each fails. Defendants' rescission of the FY 2024-2025 NOFO was certainly final agency action, since a NOFO that once was no longer is. And, contrary to Defendants' claims, enjoining that rescission would remedy Plaintiffs' harms, as HUD would be required to proceed pursuant to the funding and renewal terms of that NOFO. Nor was Defendants' decision to rescind the FY 2024-2025 NOFO committed to agency discretion; in fact, it was just the opposite: the statute specifically provides a deadline for HUD to issue the NOFO and describes which factors HUD should use when awarding funding, among other detailed requirements.

Defendants' arguments on irreparable harm fare no better. Plaintiffs' motion detailed significant irreparable harm from Defendants' rescission of the FY 2024-2025 NOFO, and Defendants *do not refute* many of the harms described in Plaintiffs' motion. Instead, Defendants merely state that harms incurred by third parties are outside the scope of this case and that HUD has missed deadlines in the past, but these arguments do not negate the very real and ongoing harms incurred by Plaintiffs here as a result of Defendants' unlawful conduct.

Finally, contrary to Defendants' claims, Plaintiffs seek relief that is within this Court's broad equitable power. Enjoining the FY 2025 NOFO (including the Challenged Conditions) and reinstating the FY 2024-2025 NOFO will return the parties to the status quo ante, which is the world as it existed prior to Defendants' issuance of the 2025 NOFO. Defendants' efforts to cast

this as an impermissible mandatory injunction are misguided. Reinstating the FY 2024-2025 NOFO may well require Defendants to begin processing renewals, but that is because the statutes and regulations require it, not because of any purported flaw in Plaintiffs' requested relief.

This Court should grant Plaintiffs' Motion for Preliminary Injunction.

## II.    ARGUMENT

### A.    Plaintiffs Are Likely to Succeed on their Claims Related to the Challenged Conditions in the FY 2025 NOFO

#### 1.    Defendants' eleventh-hour withdrawal to avoid a temporary restraining order does not render Plaintiffs' claims moot

Immediately before this Court's scheduled hearing on Plaintiffs' motion for a temporary restraining order on December 8, 2025, Defendants withdrew the 2025 NOFO. ECF No. 55. Defendants now ask this Court to reward their gamesmanship by declaring that "Plaintiffs' challenges to the 2025 NOFO have been rendered moot" by that rescission. ECF No. 55 at 20. The Court should reject Defendants' mootness arguments because Defendants have not shown that the challenged aspects of the 2025 NOFO will not later be restored.

"The burden of establishing mootness rests with the party urging dismissal. This burden is a heavy one." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 88 (1st Cir. 2008) (internal citations omitted). Defendants cannot do that because they have made clear that the challenged aspects of the 2025 NOFO are likely to recur, putting this case squarely within the voluntary cessation doctrine. "[T]he voluntary-cessation doctrine exists to stop a scheming defendant from trying to immunize itself from suit indefinitely by unilaterally changing its behavior long enough to secure a dismissal and then backsliding when the judge is out of the picture[.]" *Boston Bit Labs*, *Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (cleaned up). "[V]oluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly

wrongful behavior could not reasonably be expected to recur.'" *Trinity Lutheran Church of Colombia*, *Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (quoting *Friends of the Earth*, *Inc. v. Laidlaw Env't Servs. (TOC)*, *Inc.*, 528 U.S. 167, 189 (2000)); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2024) (describing the voluntary cessation doctrine as a "formidable burden" for defendants).

Defendants have not met their formidable burden. To resolve the question of mootness in Plaintiffs' favor, the Court need look no further than footnote three in Defendants' opposition: "To be clear, Defendants do not maintain that the forthcoming NOFO will not include any of the same (or similar) conditions that appeared in the withdrawn 2025 NOFO." ECF No. 55 at 24 n.3. Defendants admit that they reserve the right to issue a third (or fourth, or fifth, or sixth) NOFO that includes some or all of the exact same terms from the 2025 NOFO that Plaintiffs challenge here. Defendants therefore admit their unlawful conduct may well recur.

Furthermore, Defendants' reliance on *Boston Bit Labs* is misplaced. There, intervening (and non-litigation-related) events—namely, the withdrawal of executive orders related to the COVID-19 pandemic—made it extremely unlikely for the challenged action to recur. *Boston Bit Labs*, 11 F.4th at 11. No similar circumstances exist here.

In recent months, this Court has repeatedly rejected similar attempts to avoid legal challenges to agency action through voluntary cessation. For example, in *Illinois v. FEMA*, this Court found that the defendants had not met their "formidable burden of showing [that] conduct cannot reasonably be expected to recur because [Defendants] preserved [their] discretion to reapply" challenged terms in grant awards. *Illinois v. FEMA*, No. 1:25-cv-00206-WES-PAS, 2025 WL 2716277, at *7 (D.R.I. Sept. 24, 2025) (internal quotation marks omitted), *appeal docketed*, No. 25-2131 (1st Cir.). So too here. And in *New York v. Trump*, this Court found that the agency's voluntary rescission of a directive did not moot the plaintiffs' claim, since the evidence suggested

rescission was a litigation tactic rather than an internal rethinking about the legality of the challenged directive. *New York v. Trump*, 769 F. Supp. 3d 119, 133-34 (D.R.I. 2025).

Defendants maintain that the Court cannot now enjoin the Challenged Conditions, because the 2025 NOFO is no longer in effect. ECF No. 55 at 22-23. But Plaintiffs primarily seek reinstatement of the original 2024-2025 NOFO (ECF No. 11 at 50), and they secondarily seek to enjoin the implementation of the Challenged Conditions. *Id.* Mootness only occurs "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome . . .[or] the court cannot give any effectual relief to the potentially prevailing party." *Bayley's Campground*, *Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021). With Defendants' reservation of the right to include the Challenged Conditions in future NOFOs, Plaintiffs' requests to reinstate the 2024-2025 NOFO, and alternatively to enjoin Defendants from implementing the Challenged Conditions, remain live issues for this Court's review.

### 2. Defendants' late withdrawal exacerbates—not eliminates—plaintiffs' irreparable harm

Defendants similarly argue that their decision to withdraw the 2025 NOFO somehow undermines Plaintiffs' showing of irreparable harms because "currently there are *no* conditions in place" that harm Plaintiffs. ECF No. 55 at 26. But for much the same reasons their mootness argument fails, so too does this one. So long as they refuse to disclaim the Challenged Conditions, Defendants cannot pull the football away at the last moment and avoid this Court's judgment.

Moreover, this argument ignores multiple ongoing harms caused by Defendants' unlawful conduct. In withdrawing the FY 2024-2025 NOFO well past the statutory deadline, Defendants have guaranteed gaps in funding. That is, they have guaranteed that programs will run out of money and their participants will lose housing and related services. *See, e.g.*, ECF No. 13-11 ¶ 27; ECF No. 13-17 ¶¶ 23, 56-62; ECF No. 13-16 ¶ 10. And they have created administrative chaos within

5

the Plaintiff States, as the States scramble to hold vital programs together, without any certainty as to if, when, or on what terms funding may ultimately be provided. *E.g.*, ECF No. 13-11 ¶ 27; ECF No. 13-9 ¶¶ 32-33; ECF No. 13-18 ¶ 30; ECF No. 13-19 ¶ 7. By withdrawing the FY2025 NOFO and leaving nothing in its place, Defendants have only created further delay and magnified the chaos. *See* ECF No. 57 ¶¶ 8-14; ECF No. 57-1 ¶¶ 6-25; CA-Buchanan Decl. ¶¶ 11-12; NM-Nair Decl. ¶ 24.

### 3.      Defendants make no effort to defend the Challenged Conditions

Defendants utterly fail to defend the 2025 NOFO, or any of the Challenged Conditions, on the merits. *See generally* ECF No. 55. The Court should treat this as a concession that Plaintiffs are likely to succeed on the merits of their claims with respect to the Challenged Conditions. *See Johnson v. Ocwen Loan Servicing, LLC*, 1:17-cv-11944-ADB, 2020 WL 1063083, at *10 (D. Mass. Mar. 5, 2020) ("Because Plaintiffs have failed to address any of Defendants' arguments concerning Plaintiffs' . . . claim, the Court will treat those arguments as conceded.") (citing *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 19 (1st Cir. 2009)); *Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 704 F. Supp.2d 54, 60 (D.D.C. 2010) ("It is a long-established policy that when a party's opposition to a motion fails to respond to arguments raised by the opposing party, a court may treat those unopposed arguments as conceded.").

To be sure, even without Defendants' concession, Plaintiffs' claims would still be likely to succeed on the merits because the Challenged Conditions are unlawful. *See* ECF No. 11 at 26-43. This Court should therefore conclude that Plaintiffs are likely to succeed on their claims related to the Challenged Conditions.

**B.    Plaintiffs are Likely to Succeed on their Claims that the Rescission of the FY 2024-2025 NOFO Was Unlawful[1]**

Defendants likewise do not dispute that they violated 42 U.S.C. § 11382(b) by rescinding and replacing the FY 2024-2025 NOFO more than three months after Congress appropriated money for the Continuum of Care (CoC). But, despite the dire consequences this unlawful conduct has had and continues to have on the Plaintiff States and others, Defendants claim there is nothing this Court can do about it. Fortunately, their arguments lack merit.

**1.    The rescission was a final agency action**

Defendants start by insisting that their rescission of the FY 2024-2025 NOFO was not final agency action. ECF No. 55 at 43. They are incorrect.

Defendants first assert that "[a]t this juncture, there is no 'discrete' final agency action for this Court's review" because the NOFO that rescinded the FY 2024-2025 NOFO was itself withdrawn. ECF No. 55 at 43. Thus, according to Defendants, HUD has merely "expressed a nonbinding statement of something it intends to do in the future." *Id.* at 44 (quotation omitted). Except that according to Defendants themselves, the FY 2024-2025 NOFO still remains rescinded. There is nothing tentative or hypothetical about that. Unless Defendants want to concede that the withdrawal of the FY 2025 NOFO has the effect of reinstating the FY 2024-2025 NOFO, this argument defies objective reality. *See Biden v. Texas*, 597 U.S. 785, 808 (2022) (holding federal government's rescission memoranda for Migrant Protection Protocols were final agency action); *Scotts Valley Band of Pomo Indians v. Burgum*, No. 1:25-cv-00958-TNM, 2025 WL 3034885, at

---

[1] Defendants spend fifteen pages—more than a quarter of their brief—arguing that Plaintiffs are unlikely to succeed on a Section 706(1) unreasonable delay claim. ECF No. 55 at 27-45. But Plaintiffs did not move for preliminary relief on their unreasonable delay claim. To the extent Defendants argue (incorrectly) that 42 U.S.C. § 11386c does not generally require them to renew projects, *id.* at 32-35, that argument is addressed below in Section II.B.4.

*5 (D.D.C. Oct. 30, 2025) (determining rescission was a final agency action where it "nullified the agency's previous determination[]").

To the extent Defendants argue that the FY 2024-2025 rescission was not a discrete action but "a series of events" beginning in January 2025, ECF No. 55 at 44 (emphasis omitted), they miss the mark again. This argument is inconsistent with the plain text of the FY 2025 NOFO, which says flatly: "*This NOFO* rescinds and supersedes any mention of awards of FY 2025 CoC funds in the FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants published on July 31, 2024[.]" ECF No. 12-3 at 16 (emphasis added). No amount of post-hoc lawyering can rewrite the NOFO.

Defendants point to two other actions to suggest that this explicit rescission was not actually a rescission, but neither helps their cause. First, Defendants claim they "closed the 2024 NOFO from the grants.gov website" in January 2025. ECF No. 55 at 44. But that is irrelevant because that is not the action Plaintiffs challenge here. Second, Defendants point to a July 3 email in which "HUD made clear that 'it intends to publish'" a new NOFO for FY 2025. *Id*. But to quote Defendants: "a nonbinding statement of something [an agency] intends to do in the future" is not final agency action. *Id.* (quotation omitted). To the extent these two prior actions show anything, they show that Defendants had taken preliminary steps prior to rescinding the FY 2024-2025 NOFO, but that the FY 2025 NOFO "mark[ed] the consummation of the agency's decisionmaking [sic] process[.]" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation omitted).

Finally, Defendants claim that the rescission of the FY 2024-2025 NOFO was not a final agency action because "legal consequences did not flow from the 2024 NOFO (let alone its rescission)." ECF No. 55 at 46. But as Courts addressing similar cases have consistently found, grant conditions (including NOFOs) set the rules of the game, including the lawful scope of

activities permitted and may lead to denial of awards, terminations, and other legal consequences. *See R.I. Coal. Against Domestic Violence v. Kennedy*, 1:25-cv-00342-MRD-PAS, 2025 WL 2988705, at *5 (D.R.I. Oct. 23, 2025); *Hous. Auth. of San Francisco v. Turner*, 4:25-cv-08859-JST, 2025 WL 3187761, at *17 (N.D. Cal. Nov. 14, 2025). And by rescinding the NOFO, Defendants not only flipped over the game board, they also ensured that Plaintiffs and other funding recipients would see delays in receipt of critical federal funds. This clearly qualifies as final under "the 'pragmatic' approach [courts] have long taken to finality." *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 599 (2016).

### 2.    Plaintiffs have standing to challenge Defendants' untimely rescission of the FY 2024-2025 NOFO

Plaintiffs have standing to challenge Defendants' untimely rescission of the FY 2024-2025 NOFO because they face actual or imminent injury fairly traceable to Defendants' conduct—including serious funding delays and administrative chaos, which this Court can redress. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants are incorrect that the only meaningful relief Plaintiffs can obtain is "contract renewals." *Contra* ECF No. 55 at 48.

Plaintiffs' burden to establish redressability is "relatively modest." *Bennett*, 520 U.S. at 171. "The plaintiff must show that a favorable resolution of her claim would likely redress the professed injury." *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012). A plaintiff "need not definitively demonstrate that a victory would completely remedy the harm." *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 318 (1st Cir. 2012). They need only show a favorable decision would result in a "change in a legal status" and that a "practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002).

Here, Plaintiffs seek, among other things, an order vacating Defendants' rescission of the FY 2024-2025 NOFO, because that rescission was contrary to the timing requirements of 42 U.S.C. § 11382(b), and enjoining Defendants from further violating the statute with yet another untimely NOFO. Vacating this rescission will mean, at a minimum, that this matter can be remanded to Defendants to award CoC grants with the benefit of this Court's guidance. Presumably, once Defendants know what the law is, they will follow it. And contrary to Defendants' assertion, this relief would remedy Plaintiffs' injuries because HUD would be required to make awards pursuant to the lawful terms of the FY 2024-2025 NOFO. ECF No. 11 at 20-21.

### 3. The rescission of the FY 2024-2025 NOFO is not committed to agency discretion

Defendants stray even further afield in arguing that their decision to rescind the FY 2024-2025 NOFO was committed to their unreviewable discretion. ECF No. 55 at 48-50. This is not one of the rare cases where the APA's "basic presumption of judicial review" is overcome. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22-23 (2018) (citation omitted). The § 701(a)(2) exception does not apply "[e]ven where statutory language grants an agency unfettered discretion, [because] its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion." *Thakur v. Trump*, 148 F.4th 1096, 1105 (9th Cir. 2025) (citation omitted); *see also Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751-52 (9th Cir. 2021).

Here, Defendants' rescission of the FY 2024-2025 NOFO was contrary to explicit Congressional command that the NOFO be promulgated within three months of a Congressional appropriation. 42 U.S.C. § 11382(b). Defendants' argument that there are no meaningful limits on

its discretion to rescind a NOFO and publish a superseding one, when Congress has explicitly set out time limits by statute, is plainly wrong.

Moreover, both the McKinney-Vento Act and HUD's own regulations provide meaningful standards for how Defendants are to administer Congressional appropriations—these are the very standards Defendants have violated. For example, 42 U.S.C. §§ 11386 and 11386a explicitly tell HUD which factors it should consider in awarding funding and what certifications to require. 42 U.S.C. §§ 11386a and 11386c explicitly direct HUD to prioritize permanent housing and renewals, respectively. HUD's regulations likewise direct it to prioritize renewals. HUD's own Equal Access regulation requires CoC funding recipients to provide services and accommodation in accordance with an individual's gender identity. *See* 24 C.F.R. § 5.106. All of these, and the other statutes and regulations detailed in Plaintiffs' briefing, provide meaningful standards against which this Court can measure HUD's exercise of discretion. This case bears no relation to *Lincoln v. Vigil*, in which Congress appropriated an undifferentiated lump sum with no conditions attached. *Lincoln v. Vigil*, 508 U.S. 182, 193–94 (1993). Nor is this a case like *Heckler v. Chaney*, 470 U.S. 821 (1985), in which the relevant statute plainly provides the decisionmaker with unfettered discretion. *See Washington v. U.S. Dep't of Educ.*, No. 25-7157, 2025 WL 3486895, at *2 (9th Cir. Dec. 4, 2025) (per curiam) (rejecting the same APA discretion arguments from the federal government).

Defendants insist that a new administration must be free to implement its own policy priorities. ECF No. 55 at 49. However, if a new administration wishes to change policies, it must follow the law to do so.

### 4.     The untimely rescission was contrary to law

Defendants are wrong that the untimely rescission of the 2024-2025 NOFO was not contrary to law. *Cf.* ECF No. 55 at 50-54. 42 U.S.C. § 11382(b) requires that HUD "shall release"

a NOFO for grants for a particular fiscal year "not later than 3 months after the enactment of the act making the relevant appropriation." Congress made its appropriation for FY 2025 on March 15, 2025, at which point the FY2024-2025 NOFO was already in effect. Therefore, the statutory deadline for issuance of a NOFO for fiscal year 2025 was June 15, 2025. When that date came and went, the 2024-2025 NOFO remained in effect. As of the statutory deadline, HUD was and had been silent about any intention to rescind or replace the NOFO for FY 2025. ECF No. 55 at 18; *cf.* ECF No. 55 at 51 (dubbing the 2024-2025 NOFO "a functional nullity" on the basis that HUD had "pulled down" the FY 2024-25 NOFO application, which closed on October 30, 2024, from grants.gov in January 2025.). The inevitable consequence of this belated rescission, which Defendants fail to acknowledge or rebut, is that HUD will be unable to adhere to the statutorily-mandated renewal process that Congress commands HUD to undertake each annual appropriations cycle. *See* ECF No. 11 at 8, 31-32; 42 U.S.C. § 11386c(b) ("The sums made available under subsection (a) [the appropriations account for this subchapter] shall be available for the renewal of contracts in the case of tenant-based assistance, successive 1-year terms[]"). Defendants' flagrant disregard of the statutory deadline has prevented their compliance with the core purpose and provisions of the statute.

Defendants' effort to read Section 11386c's renewal provision as a broad grant of authority to the Secretary to *deny* renewals badly contorts the statutory text and conflicts with Congressional intent to ensure housing stability. That provision makes clear that Defendants shall renew project applications so long as funds are available and the Secretary determines that applicants meet certain threshold conditions. Subsection (b) provides, in relevant part:

> The sums made available [for the CoC program] shall be available for the renewal of contracts in the case of tenant-based assistance, successive 1-year terms, and in the case of project-based assistance, successive terms of up to 15 years at the discretion of the applicant

12

or project sponsor and subject to the availability of annual appropriations . . . The Secretary shall determine whether to renew a contract for such a permanent housing project on the basis of certification by the collaborative applicant for the geographic area that—

**(1)** there is a demonstrated need for the project; and

**(2)** The project complies with program requirements and appropriate standards of housing quality and habitability, as determined by the Secretary.

42 U.S.C. § 11386c(b).

The statute establishes a framework where renewal funds "shall be available" for the renewal of contracts in the case of tenant-based and project-based assistance, and the Secretary's role is limited to verifying the applicants' certification of project need and compliance with program requirements. Additionally, the statute provides that renewal funds shall be available for successive terms, not intermittently. Nothing in this text gives discretion to the Secretary to deny renewals for reasons beyond those enumerated criteria.

Defendants' various efforts to torture the language in Section 11386c fall short. First, they contend that the phrase "at the discretion of the applicant or project sponsor" only modifies the phrase "up to 15 years," such that the "the only 'discretion' provided to recipients of 'project-based assistance' contracts is the *length* of the renewal (i.e. 'up to 15 years')." ECF No. 55 at 33. Defendants' reading relies on the same last-antecedent argument this Court recently rejected in litigation challenging agencies' interpretations of federal public benefits under the Personal Responsibility and Work Opportunity Reconciliation Act. As this Court explained, "the last-antecedent rule . . . 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" *New York v. U.S. Dep't of Justice*, 1:25-cv-00345-MSM-PAS, 2025 WL 2618023, at *15 (D.R.I. Sept. 10, 2025) (quoting *Lockhart v. United States*, 577 U.S. 347, 352 (2016)). Here, the last-antecedent rule similarly does not control and would lead to absurd results. For example,

13

if the phrase "at the discretion of the applicant or project sponsor" only modifies the "up to 15 years" language, then the phrase "and subject to the availability of annual appropriations" would also only apply to the fifteen-year clause. Under that reading, the renewals of "tenant-based assistance" would therefore not by subject to the availability of annual appropriations. This result would be absurd.

Second, Defendants mischaracterize the plain language of the Section 11386c(b). They functionally ask the Court to replace "shall" with "may" and "successive" with "intermittent." Defendants' attempt to defeat the purpose of this section—to promote and prioritize renewal of existing projects—through semantics by insisting that requiring funds to be "available" merely requires setting them aside for renewal, not actually renewing projects. ECF No. 55 at 33. Defendants' reading strains ordinary usage, as "available" means "present or ready for immediate use," "accessible," or "obtainable." Merriam Webster, *Available*, https://www.merriam-webster.com/dictionary/available (last visited Dec. 17, 2025). Each of these definitions contemplate that the thing made "available" is readily usable for the one who seeks it. So too here: where Congress has directed Defendants that funds "shall be available" for renewals coupled with Congressional intent to provide dependable housing, Defendants cannot deny renewals at their discretion beyond the conditions explicitly provided in the statute.

The very next sentence of the statute confirms this. It provides that in determining whether to renew a particular project, the Secretary may consider only the applicant's certification that (1) "there is a demonstrated need for the project" and (2) "the project complies with program requirements and appropriate standards of housing quality and habitability, as determined by the Secretary." Defendants suggest this gives the Secretary near-limitless discretion because the Secretary himself can determine what "program requirements" to implement. ECF No. 55 at 34.

14

But the truth is the opposite: the CoC "program requirements" are largely spelled out in the statute. 42 U.S.C. § 11386 ("Program requirements"). They cover things like "program administration, accountability, and service delivery." *City of Seattle v. Trump*, 2:25-cv-01435-BJR, 2025 WL 3041905, at *8 (W.D. Wash. Oct. 31, 2025). And although the statute provides the Secretary the authority to implement "other terms and conditions as he may establish to carry out this part in an effective and efficient manner[,]" 42 U.S.C. § 11386(b)(8), he is limited to the same type of prosaic administrative conditions explicitly detailed in the statute, *City of Seattle*, 2025 WL 3041905, at *8. When an applicant certifies compliance with those conditions (and that there is a need for the project and that it meets habitability standards), the statute requires the Secretary to renew.

Third, Defendants try to mine discretion from subsection c of the statute, which provides that "[n]othing in this section shall be construed as prohibiting the Secretary from renewing contracts under this part in accordance with criteria set forth in a provision of this part other than this section." But this merely preserves the Secretary's discretion to award renewals that might not otherwise meet the requirements of subsection b—it does not give him discretion to deny or indefinitely withhold renewals that Congress has otherwise directed Defendants to fund.

Defendants' flawed analogies to cases where a statutory deadline was a mere technicality fail to paper over this problem with their position. For example, in *Brock v. Pierce County*, the Supreme Court reversed a lower court holding that an agency's failure to adhere to a 120-day "procedural requirement" for the resolution of a grant audit eliminated the agency's power to recover misused funds "when . . . there are less drastic remedies available for failure to meet a statutory deadline." *Brock v. Pierce County*, 476 U.S. 253, 260 (1986); *see* ECF No. 55 at 51-52. But the plaintiff in that suit "conced[ed] that the Secretary did not lose jurisdiction to make a determination after 120 days had passed [but] argued that it had suffered prejudice because of the

15

lengthy delay[,]" and the court reasoned that because the "deadline was ancillary to the statute's substantive mandate" and because "the Secretary's ability to complete [an audit] within 120 days is subject to factors beyond his control[,]" Congress had not intended to "impose a jurisdictional limitation on the Secretary's enforcement powers" if he missed the deadline. *Pierce County*, 476 U.S. at 261-65. By contrast, the belated rescission at issue here, which was entirely within HUD's control, defeats "the statute's substantive mandate": to make renewal funds available to performing projects on an annual basis. Here, there are no "less drastic remedies" available than enjoining HUD's unlawful rescission to prevent the harm to the "important public rights" at issue in this case. *See infra* Section II.C. Defendants' argument that "the Secretary's obligation to issue a notice is plainly ancillary to . . . implementing the CoC program," ECF No. 55 at 52, is both unsupported and unsupportable—the Secretary's ability to perform his statutory obligation to implement the CoC program in accordance with the law is fully dependent on the timely issuance of a lawful NOFO. *See, e.g.*, 42 U.S.C. § 11382(c)(2)(A) (generally requiring the HUD Secretary to announce conditional awards "within 5 months" of a NOFO's application deadline).

Defendants' reliance on *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990) (ECF No. 55. at 52) is likewise misplaced. There, the court held that a defendant's pre-trial release for failure to hold a detention hearing immediately upon the defendant's first appearance was erroneous because "[n]either the time requirements nor any other part of the [Bail Reform] Act indicates that compliance with the first appearance requirement is a pre-condition to holding the hearing or that failure to comply so subverts [the statute's] procedural scheme as to invalidate the hearing." *Montalvo-Murillo*, 495 U.S. at 711. The "unreasonable result" the court took issue with in *Montalvo-Murillo* was the government's "loss of all later powers to act" due to the "release of a person who should otherwise be detained[,]" which it found to be "[in]consistent with the design

and function of the statute." *Id.* at 717-19. By Defendants' logic, the statutory requirement to conduct the CoC award process in a timely manner consistent with the law is apparently a comparable "punitive sanction" on the Secretary in the form of the "loss of all later powers" (ECF No. 55 at 52-53) rather than a clear Congressional directive on when and how to disburse appropriated funds.

Defendants' remaining arguments with respect to 11382(b) are irrelevant. That the 2024-2025 NOFO was delayed (1) does not excuse HUD's tardy rescission here and (2) did not prevent HUD from implementing the CoC program, including renewals, in a timely manner that avoided disruption for CoCs in FY 2024. *Cf.* ECF No. 55 at 53. And if HUD wanted to exercise any "'reserve[d] right' to impose subsequent terms with respect to 2025 CoC awards," ECF No. 55 at 54, it needed to do so at a time and in a way that did not violate the core requirements of the statute.

### 5.    The untimely rescission was arbitrary and capricious

Defendants are wrong that "HUD's decision to rescind the 2024 NOFO was not arbitrary and capricious." *Cf.* ECF No. 55 at 54-57. While a new administration is not strictly beholden to the policy priorities of the previous administration, policy decisions are still subject to the Administrative Procedure Act's requirements that changes be "reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). HUD's rescission of the 2024-25 NOFO was neither, and Defendants make no serious effort to show or explain any "genuine justifications for important decisions [or] reasons that can be scrutinized by courts and the interested public." *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019).

Nowhere in the partial administrative record, Defendants' declaration, or Defendants' brief is any evidence or explanation of how HUD "examine[d] the relevant data [or] articulate[d] a

satisfactory explanation for its action including a rational connection between the facts found and the choices made." ECF No. 55 at 55 (quoting *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 53 (1st Cir. 2025)). Rather, Defendants present a list of Biden administration policies reflected in the 2024-2025 NOFO and explain simply that "President Trump rescinded" them via executive order; *ergo*, rescission was reasonable, and President Trump's say-so is all the explanation anyone needs. ECF No. 55 at 55-56. Defendants appear to argue that *any* "decision to rescind a NOFO premised on the prior Administration's policy directives" is "within the 'zone of reasonableness' under the APA," regardless of the substance of those decisions, the explicit Congressional purpose of the statute, or the impact of those decisions on relevant parties. *Id.* (citing *Prometheus Radio*, 592 U.S. at 423; *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). But that is not what the case law says: courts must "*ensure*[] that the agency has acted within a zone of reasonableness." *Prometheus Radio*, 592 U.S. at 423 (emphasis added) (rejecting APA challenge where agency "thoroughly examined [] record evidence" and "addressed the possible impact on minority and female ownership."); *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020) (agency's rescission of a prior Administration's policy violated the APA where the Secretary "entirely failed to consider th[e] important aspect of the problem[]"). While it is true that a change in policy need not be justified by "reasons more substantial than those required to adopt a policy in the first instance[,]" the agency must still "examine the relevant data and articulate a satisfactory explanation for its action." *Fox Television Stations, Inc.*, 556 U.S. at 513-514 (quoting *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Furthermore, it is not the existence of Plaintiffs' "reliance interests on the 2024 NOFO [that] render[s] [HUD's] rescission arbitrary and capricious" (*cf.* ECF No. 55 at 56); rather, it is

HUD's admitted disregard for those interests and failure to consider any alternative paths that would injure those interests less. Rather than attempt to show that they considered reliance interests, Defendants instead dismiss those interests as "[un]justified" in light of HUD's "disclaimers and warnings." ECF No. 55 at 57 (citing *Regents of Univ. of Cal.*, 591 U.S. at 31). But in *Regents*, the Supreme Court held that DHS's failure to consider reliance interests was arbitrary and capricious, as the Court should here. *See Regents*, 591 U.S. at 34.

Finally, Defendants' argument that Plaintiffs cannot sustain an arbitrary-and-capricious claim with respect to Defendants' eleventh-hour withdrawal of the 2025 NOFO on December 8 is absurd, and, if accepted, would incentivize similarly haphazard and harmful actions in future circumstances. ECF No. 55. at 57. Defendants' undignified retreat from the 2025 NOFO when called to account for the "issues" with its timing and content, which "Plaintiffs themselves identified . . .in their briefing" (while maintaining, of course, that "Defendants do not necessarily agree with all [Plaintiffs'] concerns"), smacks of bad faith and gamesmanship. For reasons explained throughout, "it is [not] enough" for Defendants to revoke and revise (at some later date) the unlawful 2025 NOFO to avoid irreparable harm to the Plaintiff States. *See* ECF No. 55. at 57 (citing *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 352 (1st Cir. 2004)). This Court can and should vacate the unlawful rescission of the 2024-25 NOFO and enjoin any subsequent future rescission via a new NOFO for FY 2025.

**C.      The States Will Suffer Irreparable Harm Absent Injunctive Relief**

This Court should enjoin the rescission and any future attempt at replacement of the 2024-2025 NOFO because Defendants have submitted no evidence to counter the "concrete examples of the many irreparable harms the States are currently, and will continue, to experience" that are ongoing and imminent. *New York v. Kennedy*, 789 F. Supp. 3d 174, 212 (D.R.I. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008)); ECF No. 11 at 43-49 (citing

ECF Nos. 13-1–13-29); CA-Buchanan Decl. ¶ 13 (estimating that "nearly 27,000 Californians could lose their housing due to the Administration's decision to decrease funding for permanent housing."); *see also* CA-Buchanan Decl. ¶¶ 14-21; NM-Nair Decl. ¶¶ 10-23. Although Defendants attempt to argue that CoC recipients in prior years generally received CoC funds in the following spring (such that there would have been a gap in funding regardless), this contradicts Defendants' own admission that it now does not intend to obligate 2025 CoC funds until as late as September 2027, which is almost two years from now. ECF No. 55 at 62. More importantly, and in any event, Defendants neglect to differentiate between past situations—in which HUD had committed to providing recipients with specific awards at an upcoming future date, which were then shortly delivered—with the current situation in which the terms of the NOFO, the obligation of funds, and the timing of that obligation are all unknown due to Defendants' unlawful conduct.

Likewise, Defendants seek to misrepresent some of Plaintiffs' harms as purely the harms of "third parties," such as the harms experienced by individuals experiencing homelessness (ECF No. 55 at 58), but this entirely ignores that Plaintiffs explained this harm "shift[s] enormous costs to other *state* public services" including "emergency medical systems, state-funded behavioral-health providers, long-term inpatient facilities, local jails, and child-welfare programs serving unhoused families," among other things. ECF No. 11 at 46-47 (emphasis added). Critically, Defendants fail to address many of the irreparable harms discussed in Plaintiffs' motion, such as state investments and loans that are threatened by the loss of expected federal funds and the long-term lease commitments and service staffing models that depend on stable annual HUD renewals. *Id*. at 44, 47. Relatedly, Defendants misconstrue *Matos ex rel. Matos v. Clinton School District*, which merely stands for the unremarkable proposition that a "preliminary injunction should not issue except to prevent a real threat of harm." *Matos ex rel. Matos v. Clinton School District*, 367

F.3d 68, 73 (1st Cir. 2004). Here, the irreparable and significant harm and chaos caused by Defendants' actions is very real. And it is already occurring.

Defendants' unexplained withdrawal of the Challenged NOFO in the hours before the TRO hearing "in order to assess the issues raised by Plaintiffs in their suits and to fashion a revised NOFO" (ECF No. 41) with unknown terms on an unknown timeline has only compounded the "chaos and uncertainty" resulting from the rescission and untimely replacement of the 2024-25 NOFO. *Colorado v. U.S. Dep't of Health & Hum. Servs.*, 783 F. Supp. 3d 641, 649 (D.R.I. 2025), *reconsideration denied*, 788 F. Supp. 3d 277 (D.R.I. 2025); *see* ECF No. 49-1 at 3 (citing ECF No. 57 ¶¶ 8-14; ECF No. 57-1 ¶¶ 6-25); CA-Buchanan Decl. ¶¶ 11-12; NM-Nair Decl. ¶ 24 (stating that the withdrawal of the 2025 NOFO without replacement "would create a gap in services, could result in the expiration of housing vouchers, and could increase unsheltered homelessness and demand for the Department's funding and services"). The Court should therefore grant Plaintiffs' preliminary injunction.

## D.     The Equities and Public Interest Weigh Strongly in the States' Favor

Defendants' argument that the balance of equities tips in their favor is plainly wrong. Contrary to Defendants' argument, Plaintiffs' requested injunction would obligate Defendants to perform their Congressional mandate, which is to implement *Congress's* "housing policies and priorities" as described in the McKinney-Vento Act and to refrain from haphazard attempts to override those policies and priorities with its own. *Cf.* ECF No. 55 at 59. Defendants' conduct in this litigation also reinforces Plaintiffs' arguments that the balance of the equities and public interest tip sharply in favor of the Plaintiff states and the homeless Americans they serve, which Defendants submit no evidence to contest. *See* ECF No. 11 at 49-50; *cf.* ECF No. 55. (generally). Defendants can show no prospective injury because an injunction against unlawful actions does not injure the government or the public. *Doe v. Trump*, 157 F.4th 36, 79 (1st Cir. 2025).

**E.      The Plaintiff States Seek Proper Relief**

At this stage, Plaintiffs seek only the remedies necessary to ameliorate their imminent, irreparable harms: a preliminary injunction of the FY 2025 NOFO (including its rescission of the FY 2024-2025 NOFO) and a return to the status quo ante under the FY 2024-2025 NOFO. Defendants offer a hodgepodge of arguments to suggest this relief is inappropriate, but none have merit.

They first contend that this Court cannot "bar[] HUD from issuing a new 2025 NOFO." ECF No.55. at 60. Defendants' reasoning seems to be that because such an injunction "would prescribe HUD's future conduct, it would amount to a mandatory injunction." *Id.* at 60. But a mandatory injunction is one that "requires affirmative action by the non-moving party in advance of trial." *Braintree Labs.*, *Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010). Here, however, Plaintiffs seek to return the parties to the status quo ante—that is, the world as it existed prior to Defendants' issuance of the 2025 NOFO. ECF No. 11 at 50; *see N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (describing the status quo as "the last actual, peaceable uncontested status which preceded the pending controversy[]"); *Cohen v. Brown Univ.*, 809 F. Supp. 978, 999 (D.R.I. 1992), *aff'd*, 991 F.2d 888 (1st Cir. 1993) (same). And as part of that, they seek an order prohibiting Defendants from yet-again rescinding the FY 2024-2025 NOFO via a subsequent NOFO.

As an alternative to reinstatement of the FY 2024-2025 NOFO, Plaintiffs request that the Court "direct[] Defendants to process CoC application renewals consistent with 42 U.S.C. § 11386c and 24 CFR 578.33." ECF No. 11 at 518. But this is not mandatory either; rather, it is a request that Defendants follow their obligations as they existed prior to the issuance of the 2025 NOFO. Moreover, even if this were construed as mandatory relief, it would make no difference: "Because a mandatory preliminary injunction alters rather than preserves the status quo, it

normally should be granted only in those circumstances when the exigencies of the situation demand such relief. Nevertheless, those exigencies should still be measured according to the same four-factored test [as a prohibitory preliminary injunction], as the focus always must be on prevention of injury by a proper order, not merely preservation of the status quo." *Braintree Labs.*, 622 F.3d at 41 (quotation altered). As demonstrated in Plaintiffs' Motion, the exigencies of the imminent homelessness faced by countless vulnerable residents of Plaintiffs' jurisdictions satisfies the additional burden imposed before a mandatory injunction may issue.

To the extent Defendants suggest that this Court is somehow barred from enjoining future unlawful (i.e., untimely) NOFOs, Defendants are likewise incorrect. Injunctions are forward-looking by nature. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring[.]"). Here, a forward-looking injunction prohibiting Defendants from re-rescinding the FY2024-2025 NOFO via a new NOFO—something Defendants have announced an intention to do—is necessary to address Defendants' unlawful conduct. Defendants improperly rescinded the FY 2024-2025 NOFO well past the statutory deadline for doing so, and in violation of the APA's prohibition against arbitrary and unreasonable agency conduct. The relief here is thus straightforward: Defendants ought to be held to the FY 2024-2025 NOFO, at least while this litigation is ongoing.

Defendants also suggest, without citation to any authority, that the Court cannot award injunctive relief at the preliminary stages of an APA case but may only stay the agency action pursuant to 5 U.S.C. § 705. ECF No. 55 at 59-61. Defendants are, again, wrong: the Court may order injunctive relief in an APA case under the same circumstances that it may do so in any case, where other remedies are insufficient to relieve the seeking party's injuries and the moving party

meets the requisite *Winter* factors to support the injunction. Here, Plaintiffs seek "a preliminary injunction[, which] is an equitable remedy." *O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*, 506 F. Supp. 3d 82, 101 (D. Mass. 2020) (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). And "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *New York v. Cathedral Acad.*, 434 U.S. 125, 129 (1977) (quotation omitted). Following these guideposts, courts routinely enter preliminary injunctions in APA cases, including in cases like this one in which maintaining the status quo might require the government to maintain a particular entitlement or follow a statutorily-required process. *See, e.g.*, *Regents of Univ. of Calif. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018), *aff'd sub nom. Regents of the Univ. of Calif. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018), *rev'd in part, vacated in part sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020) (preliminarily enjoining defendants "to maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA enrollees to renew their enrollments"); *New York v. U.S. Dep't of Energy*, No. 6:25-cv-01458-MTK, 2025 WL 3140578, at *17 (D. Or. Nov. 10, 2025) (awarding injunctive relief in addition to vacatur of the challenged agency action so as to award complete relief to plaintiffs); *see also New York v. U.S. Dep't of Justice*, No. 1:25-cv-00345-MSM-PAS, 2025 WL 2618023 (D.R.I. Sept. 10, 2025) (granting plaintiffs' request for a preliminary injunction against challenged agency action); 5 U.S.C. § 702 (providing courts with instructions on how to issue "any mandatory or injunctive decree" in APA cases). This Court can and should do the same.[2]

---

[2] Defendants identify no harm that warrants a bond, *see* ECF No. 55 at 64, and a bond should be denied here in any event as this case seeks to vindicate the public interest (or, at most, any bond should be nominal). *See New York v. U.S. Dep't of Educ.*, No. 25-1424, ECF No. 40 (2d Cir. June 20, 2025). The Court should also deny Defendants'

### III.    CONCLUSION

For the foregoing reasons and the reasons detailed in their Motion for Preliminary Injunction, Plaintiff States respectfully request that this Court enter an order preliminarily enjoining the FY 2025 NOFO and reinstating the prior FY 2024–2025 NOFO or, alternatively, preliminarily enjoining the Challenged Conditions within the Plaintiff States, including as to their instrumentalities and subdivisions, and directing Defendants to process CoC application renewals consistent with 42 U.S.C. § 11386c and 24 CFR 578.33. Plaintiff States seek expedited relief and respectfully request a hearing no later than December 8, 2025.

DATED this 17th day of December 2025.

---

cursory request to stay the preliminary injunction. First, the request is inadequately briefed, analyzing none of the stay factors. Second, Defendants cannot meet any stay factor, let alone all of them. Their request fails at the threshold: Defendants cannot meet their burden of showing that they will be irreparably injured absent a stay. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). Defendants also cannot make a strong showing that they are likely to succeed on the merits, the stay will substantially injure Plaintiffs and other parties interested in the proceeding, and the public interest lies in enjoining unconstitutional executive orders and thus maintaining the status quo. *See id.* at 1061-69; *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Respectfully submitted,

**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ Andrew R.W. Hughes*
ANDREW R.W. HUGHES*
ZANE MULLER*
ALIANA KNOEPFLER*
ANDREA ALEGRETT*
Assistant Attorneys General
CRISTINA SEPE*
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
Andrew.Hughes@atg.wa.gov
Zane.Muller@atg.wa.gov
Aliana.Knoepfler@atg.wa.gov
Andrea.Alegrett@atg.wa.gov
Cristina.Sepe@atg.wa.gov

*Attorneys for Plaintiff State of Washington*


**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Jordan G. Mickman*
KATHRYN M. SABATINI (RI Bar No. 8486)
Chief, Civil Division
Special Assistant Attorney General
JORDAN G. MICKMAN (RI Bar No. 9761)
Unit Chief, Civil and Community Rights
Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400, Ext. 2079
Ksabatini@riag.ri.gov
Jmickman@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**LETITIA JAMES**
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
COLLEEN K. FAHERTY*
Special Trial Counsel
STEPHEN C. THOMPSON*
Special Counsel
VICTORIA OCHOA*
Assistant Attorney General
28 Liberty Street
New York, NY 10005
212-416-6183
Rabia.Muqaddam@ag.ny.gov
Colleen.Faherty@ag.ny.gov
Stephen.Thompson@ag.ny.gov
Victoria.Ochoa@ag.ny.gov

*Counsel for Plaintiff State of New York*


**KRISTIN K. MAYES**
Attorney General of Arizona

*/s/ William Y. Durbin*
HAYLEIGH S. CRAWFORD*
Deputy Solicitor General
WILLIAM Y. DURBIN*
Senior Litigation Counsel
Office of the Attorney General
2005 North Central Ave.
Phoenix, Arizona 85004
602-542-3333
Hayleigh.Crawford@azag.gov
William.Durbin@azag.gov
ACL@azag.gov

*Attorneys for Plaintiff State of Arizona*

**ROB BONTA**
Attorney General of California

*/s/ Jarrell Mitchell*
JARRELL MITCHELL*
Deputy Attorney General
MICHAEL L. NEWMAN*
Senior Assistant Attorney General
JOEL MARRERO
Supervising Deputy Attorney General
BRIAN BILFORD*
LAUREN GREENAWALT*
Deputy Attorneys General
Jarrell.Mitchell@doj.ca.gov
Brian.Bilford@doj.ca.gov
Lauren.Greenawalt@doj.ca.gov
Joel.Marrero@doj.ca.gov
Michael.Newman@doj.ca.gov

*Counsel for Plaintiff State of California*

**WILLIAM TONG**
Attorney General of State of Connecticut

*/s/ Andrew M. Ammirati*
ANDREW M. AMMIRATI*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**PHILIP J. WEISER**
Attorney General of State of Colorado

*/s/ David Moskowitz*
DAVID MOSKOWITZ*
Deputy Solicitor General
NORA PASSAMANECK*
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
720-508-6000
David.Moskowitz@coag.gov

*Attorneys for Plaintiff State of Colorado*

**BRIAN L. SCHWALB**
Attorney General of District of Columbia

*/s/ Samantha Hall*
SAMANTHA HALL*
Assistant Attorney General
Office of the Attorney General
of the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
202-788-2081
Samantha.Hall@dc.gov

*Attorneys for Plaintiff District of Columbia*

**KATHLEEN JENNINGS**
Attorney General of State of Delaware

*/s/ Ian R. Liston*
IAN R. LISTON*
Director of Impact Litigation
VANESSA L. KASSAB*
Deputy Attorney General
ROSE GIBSON*
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov

*Attorneys for Plaintiff State of Delaware*

**KWAME RAOUL**
Attorney General of Illinois

*/s/ Aleeza Strubel*
ALEEZA STRUBEL*
Complex Litigation Counsel
ELENA S. METH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., 35th Floor
Chicago, IL 60603
773-914-3046
Aleeza.Strubel@ilag.gov
Elena.Meth@ilag.gov

*Counsel for Plaintiff State of Illinois*

**ANDY BESHEAR**
Governor of Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. TRAVIS MAYO*
General Counsel
TAYLOR PAYNE*
Chief Deputy General Counsel
LAURA C. TIPTON*
Deputy General Counsel
Office of the Governor
501 High Street
Frankfort, KY 40601
502-564-2611
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
Laurac.Tipton@ky.gov

*Attorneys for Plaintiff Office of the Governor
ex rel. Andy Beshear, in His Official Capacity as
Governor of the Commonwealth of Kentucky*

**AARON M. FREY**
Attorney General of Maine

*/s/ Katherine W. Thompson*
KATHERINE W. THOMPSON*
Special Counsel
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel: 207-626-8455
Fax: 207-287-3145
Kate.Thompson@maine.gov

*Attorneys for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

*/s/ James C. Luh*
JAMES C. LUH*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
Jluh@oag.maryland.gov

*Attorney for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

*/s/ Michelle Pascucci*
KATHERINE DIRKS*
 Chief State Trial Counsel
MICHELLE PASCUCCI*
State Trial Counsel
ESME CARAMELLO
Director, Housing Affordability Unit
AARON DULLES*
LAUREN YAMAGUCHI*
Assistant Attorneys General
Office of the Massachusetts
Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2255
Michelle.Pascucci@mass.gov

*Counsel for Plaintiff Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorneys for Plaintiff State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

*/s/ Brian S. Carter*
BRIAN S. CARTER
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
651-300-7403
Brian.carter@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

*/s/ Daniel Resler*
DANIEL RESLER*
Deputy Attorney General
33 Washington St., 9th Floor
Newark, NJ 07102
973-648-4726
Daniel.Resler@law.njoag.gov

*Attorney for Plaintiff State of New Jersey*


**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Scott P. Kennedy*
SCOTT P. KENNEDY*
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: 971-673-1880
Fax: 971-673-5000
Scott.Kennedy@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*


**CHARITY R. CLARK**
Attorney General of Vermont

*/s/ Jonathan T. Rose*
JONATHAN T. ROSE*
Solicitor General
109 State Street
Montpelier, VT 05609
802-828-3171
Jonathan.Rose@vermont.gov

*Attorney for Plaintiff State of Vermont*


**RAÚL TORREZ**
Attorney General of New Mexico

*/s/ Anjana Samant*
ANJANA SAMANT*
Deputy Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
Asamant@nmdoj.gov

*Attorneys for the State of New Mexico*


**JENNIFER C. SELBER**
General Counsel

*/s/ Jacob B. Boyer*
JACOB B. BOYER*
STEPHEN R. KOVATIS*
Deputy General Counsel
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
Jacobboyer@pa.gov
717-460-6786

*Attorney for Plaintiff Governor Josh Shapiro, in His Official Capacity as Governor of the Commonwealth of Pennsylvania*


**JOSHUA L. KAUL**
Attorney General of Wisconsin

*/s/ Faye B. Hipsman*
FAYE B. HIPSMAN*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-9487
Faye.Hipsman@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*