# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>Defendants.<br><br>AND<br><br>NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>Defendants. | Case Nos. 25-cv-626-MSM-AEM<br>         25-cv-636-MSM-AEM<br><br>District Judge Mary S. McElroy<br>Magistrate Judge Amy E. Moses<br><br>**DEFENDANTS' COMBINED MOTION TO DISSOLVE THE DECEMBER 19, 2025 PRELIMINARY INJUNCTIONS**<br><br>**EXPEDITED RELIEF REQUESTED** |

# INTRODUCTION

Pending the outcome of this litigation, the Court has enjoined the Department of Housing and Urban Development (HUD) from implementing, in any way, its chosen instrument for accepting applications for fiscal year (FY) 2025 funding under HUD's Continuum of Care (CoC) program: the December 2025 NOFO. This injunction, if it remains in effect, will not preserve the status quo pending the outcome of this litigation but will instead effectively dictate the final disposition of billions of FY 2025 dollars. That result follows from recent passage of the Consolidated Appropriations Act, 2026, which requires that, if HUD does not award FY 2025 funds to CoC projects expiring in the third and fourth quarters of 2026 under a NOFO before July 1, 2026, those projects will be noncompetitively renewed.[1] And projects expiring in the first and second quarters of 2026 will be noncompetitively renewed pursuant to the same statute—indeed, HUD is moving forward to complete second-quarter renewals because, under the Court's injunction, it will not be able to process applications and renewals prior to the April 1 second-quarter deadline under the Act.

HUD needs to open the December 2025 NOFO by April 1, 2026 to have any chance of issuing third- and fourth-quarter awards pursuant to that NOFO. *See* McKenney Decl. ¶ 5, Ex. C. Otherwise, those awards will be noncompetitively awarded, even if this Court or a higher court ultimately determines that the December 2025 NOFO was lawful. Both Congress and the Executive Branch have set a path forward for the CoC program. But right now, the Court's injunction prevents HUD from even making an attempt to avail itself of the options Congress afforded to the agency under the 2026 THUD Appropriations Act.

---

[1] *See* Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2026, Pub. L. No. 119-75, div. D., tit. II, 140 Stat. 173, H.R. 7148 at 209–51 ("2026 THUD Appropriations Act"); *see also id.* § 244, H.R. 7148 at 250–51.

Congress has ameliorated the threatened harms to Plaintiffs that drove the issuance of the preliminary injunction in the first place by providing that, in the event HUD has not made awards under a 2025 NOFO prior to those deadlines, Plaintiffs—like all CoC projects expiring in 2026—will receive noncompetitive project renewals. The Court should therefore either dissolve the December 19, 2025 preliminary injunction for the reasons stated in this motion and in the pending motions for summary judgment, or else rule on the pending motions for summary judgment directly, by no later than **March 2, 2026**, so that HUD can have a meaningful opportunity to implement the December 2025 NOFO consistent with the 2026 THUD Appropriations Act.

There is no longer a basis for the preliminary injunction. Most importantly, the balance of the equities and the public interest, which the Court found favored Plaintiffs at the preliminary-injunction stage, now squarely favor Defendants. Indeed, HUD's ongoing inability to attempt to meet the deadlines that Congress established in the 2026 THUD Appropriations Act exists entirely because this Court's order has enjoined HUD from rescinding the FY 2024 and FY 2025 Continuum of Care NOFO ("2024 NOFO") and implementing its new NOFO in any way. That injunction irreparably harms HUD, not Plaintiffs—and HUD's ongoing injury strongly outweighs any countervailing harm to Plaintiffs.

By contrast, Congress, through the Act, has eliminated any immediate irreparable harm Plaintiffs might face from HUD's implementation of the December 2025 NOFO: All projects expiring in the first two quarters of 2026 will receive noncompetitive renewals while leaving sufficient time to implement the existing December 2025 NOFO for projects expiring in the third and fourth quarters of 2026. Any potential future harm—*i.e.*, harm for Plaintiffs with projects expiring in the third and fourth quarters—is no longer immediate. Moreover, if HUD fails to make awards under a 2025 NOFO prior to the July 1, 2026 deadline, projects expiring in the second half

of the year will also be noncompetitively renewed under the Act—meaning those Plaintiffs will not be harmed at all. And if HUD's NOFO is *upheld* on the merits, Plaintiffs will not be subject to any harm from what will have been lawful government action.

And finally, as Defendants explained in their substantive defense of the rescission of the 2024 NOFO and implementation of the December 2025 NOFO (which Defendants issued after the Court's oral injunction), Defendants have succeeded on the merits in showing that their actions under the CoC program were lawful.[2] *See* Defs.' Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. for Summ. J., ECF No. 83, *State of Washington v. U.S. Dep't of Hous. & Urb. Dev.*, No. 25-cv-626 (D.R.I.) ("*State Litigation*"); Defs.' Cross-Mot. for Summ. J. & Opp'n to Pls. Mots. for Summ. J., ECF No. 68, *National Alliance to End Homelessness* ("*NAEH*") *v. U.S. Dep't of Hous. & Urb. Dev.*, No. 25-cv-636 (D.R.I.) ("*NAEH Litigation*") (collectively "Defs.' Br."); *see also State Litigation*, Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 87; *NAEH Litigation*, Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 72 (collectively "Defs.' Reply").

In order for HUD to meet Congress's July 1 deadline to make 2025 awards for CoC projects expiring in the third and fourth quarters of 2026, Defendants reiterate Plaintiffs' original request for a final judgment on the Parties' cross motions for summary judgment by March 2, 2026.[3] *See NAEH Litigation*, Pls.' Mot. for Summ. J., ECF No. 67 ¶ 2. If this Court issues final judgment by then, the instant motion would become moot. If, however, this Court does not issue its final

---

[2] To conserve judicial resources and to facilitate consolidated review, Defendants have attached exact copies of their cross-motion and reply to this motion, *see* Ex. A; Ex. B, rather than repeating their merits arguments in the body of this motion. A short overview of Defendants' merits arguments appears later in this motion.

[3] Following the enactment of the 2026 THUD Appropriations Act, Plaintiffs informed the Court by email that they "no longer have a need for the Court to rule on summary judgment in advance of March 2 or March 31, as requested in their motions."

judgment by then, Defendants respectfully request that this Court rule on the instant motion by March 2, 2026. A ruling by that date is necessary, in the event of an adverse decision, to secure relief from the United States Court of Appeals for the First Circuit in time to begin accepting applications under the December 2025 NOFO by April 1. *See* Ex. C ¶ 5. Under these unique circumstances, failure to rule on the instant motion or the pending summary-judgment motions by March 2 would amount to an effective denial of relief. *See* 16 Wright, Miller, & Cooper, Fed. Prac & Proc. § 3924.1 (3d ed.) ("Appeals frequently have been allowed on the theory that because preliminary relief must be granted promptly to be effective, simple inaction may have the practical effect of refusing an express request for a preliminary injunction.").

## BACKGROUND

The Court orally entered a preliminary injunction on December 19, 2025. *See State Litigation*, Min. Entry (Dec. 19, 2025); *NAEH Litigation*, Min. Entry (Dec. 19, 2025). It memorialized its injunction by written order on December 23, 2025. *See State Litigation*, ECF No. 68; *NAEH Litigation*, ECF No. 52 (collectively "PI Order"). The injunction stayed and preliminarily enjoined HUD's rescission of the 2024 NOFO. *See* PI Order ¶ 2. It also stayed and preliminarily enjoined the NOFO that HUD issued on November 13, 2025 ("November 2025 NOFO") and later rescinded. *See id.* ¶ 3. And it stayed and preliminarily enjoined each of the conditions Plaintiffs challenged in the November 2025 NOFO. *See id.* ¶ 4.

The Court also preliminarily enjoined Defendants from "giving effect to any existing or forthcoming agency action to further rescind or replace" the 2024 NOFO, including by "giving effect to any other NOFO to award FY2025 grants" for the CoC program. *Id.* ¶ 5. That order had the effect of enjoining HUD's December 2025 NOFO, which it issued on the evening of December 19, 2025. *See State Litigation*, Defs.' Notice of Publication of NOFO, ECF No. 66; *NAEH*

4

*Litigation*, Defs.' Notice of Publication of NOFO, ECF No. 51. And the Court further ordered Defendants to take "all steps necessary to process eligible renewals for FY 2025 CoC funding pursuant to the [2024 NOFO], but excluding the obligation of funding and the granting of any specific renewals." PI Order ¶ 6. The Court finally ordered Defendants to take a series of steps demonstrating compliance with its injunction. *See id.* ¶¶ 7–9. HUD is complying with Congress's requirement to noncompetitively renew CoC projects expiring in the first and second quarters of 2026. And HUD will also independently continue to comply with the Court's preliminary injunction order, which requires processing of eligible renewals under the 2024 NOFO, but not the obligation of funds under the NOFO, *see* PI Order ¶ 6, unless and until that order is no longer in effect. As Defendants have noted, the date by which HUD expects to complete the process of selecting renewal awards under the 2024 NOFO is March 31, 2026. *See State Litigation*, Defs.' Revised Implementation Plan at 1, ECF No. 79-1; *NAEH Litigation*, Defs.' Revised Implementation Plan at 1, ECF No. 62-1.

Following issuance of the December 2025 NOFO and initial development of the administrative record, the parties jointly moved for an expedited summary judgment briefing schedule intended to resolve all of the parties' claims in the litigation. *See State Litigation*, Joint Mot. to Amend Expedited Briefing Schedule, ECF No. 73; *NAEH Litigation*, Joint Mot. to Amend Expedited Briefing Schedule, ECF No. 57. As indicated in NAEH Plaintiffs' summary-judgment briefing, NAEH Plaintiffs' requested relief contemplated issuance of a merits order by no later than March 2, 2026. *See NAEH Litigation*, ECF No. 67 ¶ 2. Defendants, who jointly agreed to the expedited summary-judgment schedule, have not opposed that request.

On February 3, 2026, Congress passed and the President signed into law the 2026 THUD Appropriations Act. Plaintiffs notified the Court of that development on February 5, 2026. *See*

5

*State Litigation*, Pls.' Notice, ECF No. 86; *NAEH Litigation*, Pls.' Notice, ECF No. 71. Defendants' Reply—which, per the expedited briefing schedule and Defendants' request for a one-day extension, was due on February 6, *see, e.g.*, *State Litigation*, Text Order (Feb. 4, 2026)—provided further discussion of the Act. *See* Defs.' Reply (Ex. B) at 1–2, 20–21, 21 n.7, 50–51. On February 11, 2026, Plaintiffs notified the Court by email that they no longer seek expedited consideration of their motions for summary judgment. As Plaintiffs informed the Court, Defendants maintain that expedited consideration is still warranted. This motion follows.

Defendants' counsel sought Plaintiffs' positions on this motion before filing. NAEH Plaintiffs' position follows verbatim:

> NAEH Plaintiffs oppose the motion to dissolve the order granting preliminary relief. They also oppose Defendants' request for expedited briefing on and consideration of the motion to dissolve. To the extent that the motion to dissolve is premised on the appropriations law that Congress passed on February 3, Pub. L. No. 119-75, Plaintiffs maintain there is no good cause to truncate the 14 days Plaintiffs would have to respond to this motion under Local Rule 7(a)(3), particularly given that Defendants waited for 14 days after that development to file their motion and now seek a decision within 13 days. Plaintiffs maintain they should not be prejudiced by this time crunch of Defendants' own making.

Defendants note that the parties' joint request for expedited summary-judgment consideration was pending until the end of the business day on February 11, which is when Plaintiffs notified the Court by email that they no longer seek expedited consideration of their motions for summary judgment. Plaintiffs at that time informed the Court that they no longer sought their earlier-requested expedited relief by March 2, 2026. *See NAEH Litigation*, ECF No. 67 ¶ 2 (requesting that the Court enter an order requiring announcement of conditional awards by March 2 for no-application renewal awards and by March 31 for all other awards). As Plaintiffs noted in their email, Defendants maintained that expedited consideration was—and is—still warranted. This motion was filed as soon thereafter as possible, given the holiday weekend.

6

State Plaintiffs informed Defendants' counsel that they oppose Defendants' request to dissolve the preliminary injunction. State Plaintiffs take no position on Defendants' alternative request for expedited summary judgment.

## LEGAL STANDARD

Dissolution of a preliminary injunction "should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994). "The familiar quartet includes likelihood of success, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest." *Id.* The third and fourth factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"[A] significant change in facts or law warrants revision or dissolution of the injunction." *Ollivierra v. Wilmington Sav. Fund Soc'y, FSB as Tr. for Pretium Mortg. Acquisition Tr.*, No. 17-11271 (MLW), 2018 WL 11432714, at *5 (D. Mass. Jan. 2, 2018) (citation omitted); *see also Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 650 n.6 (1961) ("There are many cases where a mere change in decisional law has been held to justify modification of an outstanding injunction."); *Brown v. Bussone*, 754 F. Supp. 2d 163, 166 (D. Mass. 2010) ("The Court may modify or dissolve an injunction where there has been a significant change in the law or facts so as to make modification equitable." (internal quotation marks and citation omitted)). "Preliminary injunctions require courts to make [an] assessment [of the four factors] at an early stage of the litigation . . . . But as a case progresses, subsequent changes in the law or facts may threaten to convert a previously proper injunction into an instrument of wrong[.]" *FemHealth USA, Inc. v. Williams*, 83 F.4th 551, 556 (6th Cir. 2023) (final alteration in original) (internal quotation marks and citation omitted); *see also Sindi v. El-Moslimany*, 896 F.3d 1, 29 (1st Cir. 2018) (noting that

7

courts should dissolve an injunction when "no longer equitable or consistent with the public interest" because courts have a "continuing duty and responsibility to assess" an injunction's "efficacy and consequences" (quoting *Brown v. Plata*, 563 U.S. 493, 542 (2011))); *cf. United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (explaining that reconsideration is warranted for newly discovered evidence or an intervening change in the law).

## ARGUMENT

**I.     The Balance of Equities and Public Interest Strongly Favor Defendants.**

Since the Court's injunction, the balance of equities and public interest have shifted dramatically in Defendants' favor. As explained briefly above and in more detail below, *see infra* Section II, the irreparable harm the Court found Plaintiffs would suffer without an injunction—namely, the potential loss of or gap in funding that might result from delaying CoC renewals—has been addressed by intervening congressional action. As a result of the staggered deadlines in the 2026 THUD Appropriations Act, the most immediately time-sensitive CoC projects—namely, those expiring in the first and second quarters of 2026—will be noncompetitively renewed no matter what happens in this litigation. So, any future "gap in funding" for CoCs as a result of the 2025 NOFO would not occur until at least July 1, 2026. But the harm to the Government—*i.e.*, the harm associated with the continued injunction against its chosen policy—only increases as that date approaches, especially because Congress has imposed a specific deadline (July 1) before which HUD must make awards under "a fiscal year 2025 notice of funding opportunity" in order to avoid mandatory noncompetitive renewals for projects expiring in the third and fourth quarters of 2026. 2026 THUD Appropriations Act, § 244, H.R. 7148 at 250. HUD cannot even begin the process of implementing the December 2025 NOFO by opening the application while the current preliminary injunction is in place—which means that this injunction dictates the result of the conditional choice Congress imposed on HUD in that Act. In order to have a chance of meeting

8

that July 1 deadline, HUD must be able to accept applications under the December 2025 NOFO by April 1, 2026. *See* Ex. C ¶ 5.

Any time the government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); *see also Dist. 4 Lodge of the Int'l Assoc. of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (citing *King* for the same proposition). And that injury far outweighs the countervailing harm Plaintiffs face which, at this stage and until July 1 at the earliest, is none other than any routine compliance costs associated with applying for 2025 CoC renewals for the third and fourth quarters. *See Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness of Com. of Mass.*, 649 F.2d 71, 74 (1st Cir. 1981) (noting that "[o]nly a viable threat of *serious* harm" can justify injunctive relief (emphasis added)).

Moreover, the harm to Defendants is even more acute here because Congress has spoken directly to the actions HUD should take under the specific program challenged in this lawsuit. Congressional action has given Defendants a series of discrete deadlines to take action to disburse FY 2025 funding. And, as explained below and in Defendants' Reply, Congress has *endorsed* certain of HUD's views about the legality of its changes to the CoC program—namely, here, that HUD has discretion under the McKinney-Vento Act to reduce the number of projects that may be renewed without competition under the program. *See infra* Section III; *see also* Defs.' Reply (Ex. B) at 20–21; 42 U.S.C. § 11386c. Continued interference with HUD's ability to implement that congressional directive represents an "improper[]" intrusion on two separate "coordinate branch[es] of the Government." *CASA*, 606 U.S. at 859 (quoting *Immigr. & Naturalization Serv.*

9

*v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers)). Where, as here, the executive and legislative branches are working in tandem to "further broad policy objectives" pursuant to the broad spending power Congress enjoys, *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted), continued injunction of HUD's exercise of its congressionally endorsed authority represents an especially severe continuing injury to the agency, *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24–25 (2008) (noting the "great deference" given to a coordinate branch of government operating within the core of its constitutional authority (citation omitted)).

Furthermore, the public interest—part and parcel with an assessment of the balance of equities where the government is a party—strongly supports restoring HUD's flexibility to implement the policy program it has deemed most appropriate to address an ongoing homelessness crisis that has seen years of increasingly negative outcomes for people meant to be protected by the very programs that have failed them and that Plaintiffs seek to retain here. That interest is doubly strong considering Congress's endorsement of HUD's discretion to modify NOFOs and to increase competition in the CoC program.[4] Indeed, "it is obvious that compliance with the law is in the public interest." *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010).

In its preliminary injunction, the Court declined to require HUD to obligate funding for existing CoC projects. *See* PI Order ¶ 6. It also declined to require that HUD grant any specific

---

[4] Further discussion of congressional ratification of HUD's authority appears in Section III *infra* and in Defendants' Reply. *See* Defs.' Reply (Ex. B) at 5, 20–21. As noted in the Reply, Congress has also affirmatively mandated a lower minimum renewal rate for FY 2026 than the rate that HUD had, in its discretion, set in prior years (roughly 90 percent). The 2026 THUD Appropriations Act requires that HUD select projects totaling not less than 60 percent of each CoC's annual renewal demand for funding under the less-competitive Tier 1 designation, far less than the 90-percent rate. *See* Defs.' Reply (Ex. B) at 21 n.7; *see also* 2026 THUD Appropriations Act, H.R. 7148 at 227.

project renewals. *See id.* That restraint was proper because, at the preliminary stage, such an order would have irreparably harmed HUD by mandating that it make certain financial commitments—an authority that courts do not have under § 706(2) of the Administrative Procedure Act and an action that would not have preserved the status quo. *See Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (noting that district courts have "no jurisdiction to order specific relief" under 5 U.S.C. § 706(2)); *Mass. Coal. of Citizens with Disabilities*, 649 F.2d at 76 n.7 ("Mandatory preliminary injunctions do not preserve the status quo[.]"). But now that Congress has imposed specific deadlines by which HUD must act to avoid its disfavored outcome, the effect of the continuing preliminary injunction is to *permanently* prevent HUD from following its preferred policy. If the injunction remains in place through the deadlines in the 2026 THUD Appropriations Act, Plaintiffs will by default receive automatic renewals of their projects, even without further action by this Court. That would constitute irreparable harm to HUD and would far outweigh any immediate harm Plaintiffs face.

In sum, the balance of equities and the public interest have shifted squarely in Defendants' favor since the Court's issuance of its preliminary injunction.

## II. Plaintiffs Cannot Identify Sufficient Immediate Irreparable Harm to Sustain the Current Preliminary Relief.

"[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Moreover, "[a]bsent something that indicates a need for *immediate* relief, a plaintiff's request for a preliminary injunction ordinarily ought to be rejected." *See Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004). And importantly, Plaintiffs' purported irreparable harm must be "independent" of their claims on the merits. *Charlesbank Equity Fund II*, 370 F.3d at 162 (emphasis omitted). In other words, even if this Court concludes that Plaintiffs

11

are likely to succeed on the merits (which they are not), it must nevertheless dissolve the preliminary injunction if it determines that the dissolution would not inflict immediate irreparable harm on Plaintiffs. Such is the case here. Because the 2026 THUD Appropriations Act has significantly mitigated Plaintiffs' immediate purported irreparable harm, this Court should dissolve the preliminary injunction.

Plaintiffs sought preliminary relief by identifying two categories of purported irreparable harm. *First*, Plaintiffs argued that because the 2025 NOFO was issued in late 2025, any award under it would not be issued until at least May 2026, leaving major "gaps in funding." *NAEH Litigation*, ECF No. 5-1 at 63. *Second*, Plaintiffs took issue with the substance of the December 2025 NOFO by arguing that its implementation would cause loss of funding for certain projects, confusion, and diversion of resources. *See State Litigation*, Pls.' Mot. for Prelim. Inj. at 43–45, ECF No. 11; *NAEH Litigation*, Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 63–75, ECF No. 5-1. Neither of these purported harms justifies the current preliminary injunction.

Plaintiffs' first theory of irreparable harm—*i.e.*, the 2025 NOFO would lead to delayed awards, which will, in turn, lead to "gaps in funding"—has been mooted by the 2026 THUD Appropriations Act. In Plaintiffs' telling, because the December 2025 NOFO was not issued until late 2025, HUD did not have sufficient time to implement the NOFO without leaving funding gaps for CoCs with soon-to-be-expiring awards. *See NAEH Litigation*, ECF No. 5-1 at 63–65. Congress addressed this concern directly by providing a staggered timeline for renewals under the Act: HUD must noncompetitively renew the most urgent awards (those expiring in the first quarter), but it has until March 31 (for second-quarter awards) and until June 30 (for third- and fourth-quarter awards) to issue renewals pursuant to a *new* NOFO. This staggered timeframe reflects *Congress's* response to Plaintiffs' "funding gaps" concerns. Specifically, it puts forth a precise scheme that,

12

according to Congress's judgment, balances HUD's discretion to issue CoC awards pursuant to a new NOFO against the risk of funding gaps for CoCs with later-expiring awards. To the extent that Plaintiffs continue to maintain that the preliminary injunction is necessary to guard against the risk of funding gaps starting on July 1, 2026, their qualm is with the staggered scheme in the 2026 THUD Appropriations Act itself—not any action (or inaction) by HUD.

Simply put, at this juncture, this Court's preliminary injunction effectively usurps Congress' judgment by requiring that *all* 2025 CoC awards be processed pursuant to the 2024 NOFO because it precludes HUD from even attempting to process—let alone grant—*any* awards under a new NOFO. Where, as here, Congress has spoken, this Court is "not free to ignore that judgment and rewrite the statute to include a [different] timetable." *See In re Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 506 (D.C. Cir. 1988).

Plaintiffs' second theory of irreparable harm also fails for several reasons. As an initial matter, at its core, this theory is a challenge to the substance of the December 2025 NOFO. *See State Litigation*, ECF No. 11 at 43 (arguing that the 2025 NOFO "will harm Plaintiff States across the board by leading to statewide increases in homelessness, shifting enormous costs to other state public services"); *see also NAEH Litigation*, ECF No. 5-1 at 70–75. Plaintiffs' original request for relief merely repacks their challenge to the terms of the December 2025 NOFO as an argument for irreparable harm. In so doing, Plaintiffs improperly collapse the merits and irreparable-harm prongs. But as the First Circuit has made clear, a plaintiff seeking preliminary-injunctive relief "must identify some *independent* reason why it will be irreparably harmed without the imposition of interim relief" other than the arguments that are "more properly viewed in addressing the likelihood of success on the merits." *Charlesbank Equity Fund II*, 370 F.3d at 162. Because

13

Plaintiffs' objections to the substance of the December 2025 NOFO are more properly viewed as arguments on the merits, they cannot justify preliminary relief.

But in any event, even if these challenges were properly classified as irreparable-harm arguments, they are no longer "immediate," *Matos*, 367 F.3d at 74, following enactment of the 2026 THUD Appropriations Act. As the Government has already explained, it will award first- and second-quarter awards noncompetitively to comply with the Act. So, the December 2025 NOFO, if implemented, would mainly impact renewals for third- and fourth-quarter awards. But none of those awards will expire sooner than June 30, 2026. So, even under Plaintiffs' own theory, any alleged harm (including "loss of funding") stemming from the implementation of the 2025 NOFO is no longer "immediate." This is especially true given the expedited summary-judgment schedule, which allows this Court to issue final judgment well before June 30, 2026. Indeed, the parties agreed to that schedule in anticipation of a final judgment in March. *See State Litigation*, ECF No. 73; *NAEH Litigation*, ECF No. 57. As such, Plaintiffs have failed to meet their burden of showing that any loss of funding and its alleged consequences would occur "*before* a decision on the merits could be rendered." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 37 (1st Cir. 2011) (emphasis added).

Nor can Plaintiffs rely on their claim that they will face immediate irreparable harm in the form of "confusion" and diversion-of-resources as a result of compliance with a new NOFO. The 2026 THUD Appropriations Act has limited the application of the 2025 NOFO to the later-expiring awards, thereby pushing back the timeline for application for awards under the new NOFO. Besides, Congress, by permitting renewals of later-expiring awards pursuant to a new NOFO, has set forth *its* judgment on this score—namely, that preserving HUD's discretion to renew third- and fourth-quarter awards pursuant to a new NOFO (so long as it could do so before July 1) outweighs

14

the risk of any "confusion" or diversion-of-resources as a result of the application process for CoCs with third- and fourth-quarter awards. Specifically, the Act contemplated the issuance of a new NOFO that might supersede the previous one by giving HUD the discretion to make awards under "*a* fiscal year 2025 notice of funding opportunity prior to July 1, 2026." 2026 THUD Appropriations Act, § 244, H.R. 7148 at 250 (emphasis added). At this stage, any claim that compliance with a new NOFO (even for renewals of awards expiring in the third and fourth quarters) would cause irreparable harm is akin to a challenge to Congress's judgment.

In short, as a result of the 2026 THUD Appropriations Act, Plaintiffs do not face any immediate irreparable harm pending this Court's ruling on the merits. If this Court dissolves the injunction, the only "harm" Plaintiffs could claim (from now until July 1, 2026) is limited to the process of applying for third- and fourth-quarter renewals pursuant to the 2025 NOFO. But the mere act of applying for awards—which CoCs have done virtually every year—cannot justify a preliminary injunction. *See Doe ex rel. Doe v. Portland Pub. Schs.*, 701 F. Supp. 3d 18, 32 (D. Me. 2023) (explaining that preliminary-injunctive relief "should not be lightly indulged in, but used sparingly and only in a clear and plain case" (quoting *Saco Defense Sys. Div. Maremont Corp. v. Weinberger*, 606 F. Supp. 446, 450 (D. Me. 1985)). This is especially true given the fact that the 2026 THUD Appropriations Act itself envisions the application process that Plaintiffs challenge. Simply put, Congress has already determined that any logistical burden associated with applying for third- and fourth-quarter renewals under a new NOFO is outweighed by HUD's discretion to issue awards under a new NOFO by July 1. This Court should dissolve the preliminary injunction to allow HUD the ability to meet Congress's July 1 deadline.

**III. Defendants Have Succeeded on the Merits in Showing that Rescission of the 2024 NOFO and Implementation of the December 2025 NOFO Were Lawful.**

At the time this Court entered its preliminary injunction, the parties had not fully briefed the merits of HUD's decision to rescind the 2024 NOFO and implement the December 2025 NOFO. At this juncture, however, the merits briefing is complete. For the reasons stated in the Defendants' summary-judgment filings, Defendants succeed on the merits. *See* Defs.' Br. (Ex. A); Defs.' Reply (Ex. B). Specifically, Defendants have shown that rescission of the 2024 NOFO was not arbitrary and capricious, contrary to law, or unreasonably delayed. *See* Defs.' Br. (Ex. A) at 17–30; Defs.' Reply (Ex. B) at 2–9. They have shown that Plaintiffs' continued challenges to provisions appearing only in the November 2025 NOFO are moot. *See* Defs.' Br. (Ex. A) at 30–32; Defs.' Reply (Ex. B) at 9–12. Defendants have also shown that the issuance of the December 2025 NOFO was not arbitrary and capricious, contrary to law, nor improperly issued without notice-and-comment rulemaking. *See* Defs.' Br. (Ex. A) at 32–67; Defs.' Reply (Ex. B) at 15–40. And finally, as Defendants showed, Plaintiffs' constitutional claims also fail. The December 2025 NOFO falls well within the permissible scope of Congress's spending power (assuming Plaintiffs' Spending-Clause claims are even cognizable at all), and HUD's actions under the NOFO do not offend the separation of powers. *See* Defs.' Br. (Ex. A) at 68–74; Defs.' Reply (Ex. B) at 40–43. Nor does the NOFO impermissibly coerce States or unconstitutionally restrict CoCs' speech. *See* Defs.' Br. (Ex. A) at 74–78; Defs.' Reply (Ex. B) at 43–45.

Moreover, as outlined in Defendants' Reply, the 2026 THUD Appropriations Act provides intervening congressional support for two of Defendants' merits arguments: (1) HUD has discretion to award 2025 CoC funds pursuant to a NOFO modified or issued later than June 15, 2025, *see* Defs.' Reply (Ex. B) at 5; and (2) HUD has discretion under the McKinney-Vento Act to reduce the number of CoC projects that will be noncompetitively renewed on a yearly basis, *see*

16

Defs.' Reply (Ex. B) at 20–21. The Act clearly envisions HUD making awards for the 2025 CoC program under "a fiscal year 2025 notice of funding opportunity," not the 2024 NOFO. *See* 2026 THUD Appropriations Act, § 244, H.R. 7148 at 250. And the Act further requires that projects expiring in the first quarter of 2026 be noncompetitively renewed. *Id.* But it does not extend that requirement to projects expiring later *unless* HUD fails to meet a series of deadlines to issue awards under a 2025 NOFO. *See id.* § 244, H.R. 7148 at 250–51. Congress has thus confirmed that HUD has flexibility to modify or rescind NOFOs for 2025 CoC funds after the McKinney-Vento Act's statutory deadline, and that HUD has the authority to reduce the number of projects that will be noncompetitively renewed under the CoC program.

## CONCLUSION

For the reasons identified above, Defendants respectfully request that this Court dissolve the preliminary injunction entered orally on December 19, 2025, and memorialized by written order on December 23, 2025 (*State Litigation*, ECF No. 68; *NAEH Litigation*, ECF No. 52) by March 2, 2026, or, in the alternative, render expedited judgment on the pending cross-motions for summary judgment by that date.

DATE: February 17, 2026      Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

JOHN BAILEY
Counsel to the Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

/s/ *William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
PARDIS GHEIBI
PETER R. GOLDSTONE
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel.: (202) 353-7578
Fax: (202) 616-8640
Email: william.s.jankowski@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I certify that on February 17, 2026, the above document was filed with the CM/ECF filing system.

                                                                           /s/ *William S. Jankowski*