# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF WASHINGTON, et al., | C.A. No. 1:25-cv-00626-MSM-AEM |
| Plaintiffs, | |
| v. | **PLAINTIFF STATES' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY OF THE PRELIMINARY INJUNCTIONS PENDING APPEAL** |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 1

III.    LEGAL STANDARD..................................................................................................... 4

IV.     ARGUMENT ................................................................................................................. 5

        A.      A Stay is Unwarranted Because Defendants are not
                Likely to Succeed on the Merits ...................................................................... 5

                1.      Defendants failed to timely appeal
                        the preliminary injunction order ............................................................ 5

                2.      Defendants are not likely to succeed
                        on the merits of their appeal of the Court's order
                        denying their motion to dissolve............................................................ 7

        B.      Defendants Will not be Irreparably Injured Absent a Stay.................................. 10

        C.      The Issuance of a Stay Would Irreparably Harm Plaintiff States........................ 12

        D.      The Public Interest Favors Denying Defendants' Motion to Stay........................ 17

V.      CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Am. Council of the Blind v. Mnuchin*,
  878 F.3d 360 (D.C. Cir. 2017) ................................................................. 4

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Boston*,
  996 F.3d 37 (1st Cir. 2021) ................................................................... 4

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004) ............................................................... 17

*City of Seattle v. Trump*,
  No. 2:25-cv-01435-BJR,
  2025 WL 3041905
  (W.D. Wash. Oct. 31, 2025) ................................................................. 16

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*,
  551 F.3d 10 (1st Cir. 2008) ............................................................... 4, 7

*Doe 2 v. Shanahan*,
  755 F. Appx. 19 (D.C. Cir. 2019) ........................................................ 6

*Doe v. Trump*,
  157 F.4th 36 (1st Cir. 2025) ............................................................... 10

*Franklin Twp. Sewerage Auth. v. Middlesex Cnty. Utilities Auth.*,
  787 F.2d 117 (3d Cir. 1986) .............................................................. 4, 5

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
  583 U.S. 17 (2017) ............................................................................. 6

*Martin Luther King, Jr. County v. Turner*,
  798 F. Supp. 3d 1224 (W.D. Wash. 2025) ....................................... 15, 16

*Matos ex rel. Matos v. Clinton Sch. Dist.*,
  367 F.3d 68 (1st Cir. 2004) ............................................................... 16

*New York v. U.S. Dep't of Just.*,
  804 F. Supp. 3d 294 (D.R.I. 2025) ...................................................... 14

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................ 4, 11

*TEC Eng'g Corp. v. Budget Molders Supply, Inc.*,
    82 F.3d 542 (1st Cir. 1996) ........................................................................... 9

*Teledyne Techs., Inc. v. Shekar*,
    831 F.3d 936 (7th Cir. 2016) ........................................................................ 6

*Trump v. CASA*,
    606 U.S. 831 (2025) .................................................................................... 11

*Woonasquatucket River Watershed Council v. United States Dep't of Agric.*,
    778 F. Supp. 3d 440 (D.R.I. 2025) ......................................................... 10, 18

## Statutes

Transportation, Housing and Urban Development
Consolidated Appropriations Act of 2026,
Pub. L. No. 119-75, 140 Stat. 173 .................................................................. 3

## Other Authorities

16 Charles A. Wright & Arthur R. Miller,
    Federal Practice and Procedure § 3924.2 (3d ed. 2025) ............................. 7

## Rules

Fed. R. App. P. 26(a)(1) ............................................................................. 2, 6

Fed. R. App. P. 4(a)(1)(B) .......................................................................... 2, 6

Federal Rule of Civil Procedure 52(a)(2) ....................................................... 9

## I.    INTRODUCTION

Defendants' motion should be denied because they seek a stay of an injunction that they never appealed and that they now cannot appeal because their deadline has passed. Defendants are exceedingly unlikely to succeed on the merits of their appeal from the Court's denial of their motion to dissolve the injunction. Defendants grasp for a third try to contravene the will of Congress and undermine the nation's homelessness response system. Rather than await this Court's decision on the parties' pending cross-motions for summary judgment, Defendants force the Plaintiff States and this Court to needlessly expend further resources relitigating an issue that this Court has decided twice already: that Plaintiffs are likely to succeed on the merits of their arguments regarding Defendants' untimely rescission of the Fiscal Year (FY) 2024-2025 Notice of Funding Opportunity (NOFO) and replacement with a NOFO that violates the McKinney-Vento Act and the APA. This Court has also already found that Plaintiffs would be irreparably harmed by Defendants' actions, which have stoked chaos and would result in the loss of services for our most vulnerable residents. The only difference between this motion and Defendants' failed motion to dissolve is that to prevail here, Defendants must surmount the additional hurdle of showing that the Court clearly erred in declining to dissolve the injunction. But they cannot seek to stay the injunction, given that any appeal on that injunction is time barred. And, in any event, Defendants cannot and do not show that the Court clearly erred in denying their motion to dissolve. This Court should deny the motion.

## II.    BACKGROUND

In November, months after the applicable statutory deadline passed, the Department of Housing and Urban Development (HUD) rescinded the Continuum of Care (CoC) NOFO for FY 2025 that had been issued the prior year (the "FY 2024-2025 NOFO"). In a new NOFO for

FY 2025 (the "November NOFO"), HUD adopted policies that threatened to cancel thousands of existing projects, required funding recipients to fundamentally reshape their programs on an impossible timeline, and essentially guaranteed that tens of thousands of formerly homeless individuals and families would be evicted back into homelessness. The NOFO sparked widespread panic among the nation's homelessness service providers. These actions violated the law, contravening Congress's clear direction for how to administer the program.

Moments before the preliminary injunction hearing, Defendants notified the Court that HUD had withdrawn the challenged November NOFO. On December 19, this Court enjoined HUD's rescission of the FY 2024-2025 NOFO and the unlawful policies of the November NOFO from the bench. *See* Dec. 19, 2025 Minute Entry. Hours later, Defendants published yet another NOFO that contained largely the same unlawful conditions that the Court had just enjoined (the "December NOFO"). ECF No. 66 (Notice of Publ'n of 2025 NOFO). Four days later, on December 23, this Court entered a written order requiring Defendants to, *inter alia*, "preserve the status quo ante that existed under the FY 2024-2025 NOFO, including by taking all steps necessary to process eligible renewals for FY 2025 CoC funding pursuant to the FY 2024-2025 NOFO." ECF No. 68 (PI Order) at 2–3. Defendants' deadline to appeal this order was February 23, 2026, but they did not appeal. *See* Fed. R. App. P. 4(a)(1)(B); Fed. R. App. P. 26(a)(1).

Instead, the parties agreed to expeditiously move towards summary judgment to facilitate an authoritative, final ruling from this Court. The parties' cross motions for summary judgment are now fully briefed. Plaintiff States seek vacatur and a permanent injunction.

Separately, on February 3, 2026, the President signed into law the 2026 Transportation, Housing and Urban Development Appropriations Act (the "2026 THUD Appropriations Act"), which contains relevant provisions governing the award of FY 2025 funds under the CoC program.

*See* Transportation, Housing and Urban Development Consolidated Appropriations Act of 2026, Pub. L. No. 119-75, 140 Stat. 173. In particular, Section 244 of that Act requires Defendant HUD, "prior to awarding any amounts through a notice of funding opportunity[,]" to non-competitively renew for one year all CoC grants that are expiring or have expired in the first quarter of 2026 (i.e., between January 1, 2026 and March 31, 2026). Section 244 also requires HUD to non-competitively renew grants that expire in the second quarter of 2026 "if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to April 1, 2026[.]" And HUD must non-competitively renew grants that expire in the remainder of 2026 "if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to July 1, 2026[.]" *Id.* The goal of Section 244 couldn't be clearer: it aims to restore predictability and certainty where Defendants have sown chaos.

Following the 2026 THUD Appropriations Act, Defendants sought to turn that goal on its head by moving to dissolve this Court's preliminary injunction and reinstate the December NOFO. On February 27, 2026, this Court denied that motion, reasoning:

> Plaintiffs continue to face imminent, irreparable harm from: (1) the upheaval and service gaps that would result from the Defendants attempt to vastly overhaul the funding selection criteria on an accelerated basis; and (2) the Defendants' attempt to implement the December 2025 NOFO in light of the Court's prior determination that Plaintiffs have a strong likelihood of success in their action contesting its legality. *New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 330 (D.R.I. 2025) ("In life-or-death scenarios [or] times of crisis when someone faces domestic violence, homelessness, or a mental health crisis it practically goes without saying that there can be no do over and no redress if services are unlawfully denied and someone suffers for it. That of course constitutes irreparable harm.").

February 27, 2026 Text Order.

Defendants filed an appeal from the Court's order denying their motion to dissolve. They now move for an "emergency" motion to stay the Court's preliminary injunction order pending appeal, even though that order is *not* on appeal.

### III.    LEGAL STANDARD

A court considering a request for a stay pending appeal must consider "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Boston*, 996 F.3d 37, 44 (1st Cir. 2021) (citation modified) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

A party may not "use the appealability of an order denying modification [or dissolution] of an injunction to circumvent the time bar to appeal from the underlying injunction." *Franklin Twp. Sewerage Auth. v. Middlesex Cnty. Utilities Auth.*, 787 F.2d 117, 120 (3d Cir. 1986) (citation omitted). "The prevailing law is that appellate review of an order denying a motion to dissolve an injunction is confined to the propriety of the denial of the motion; it does not extend to the propriety of the entry of the underlying injunction." *Id.* A district court's decision to deny a motion to dissolve or modify an injunction is reviewed under an abuse of discretion standard, for which its factual findings are subject to clear error review. *See Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 15 (1st Cir. 2008); *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017).

## IV.    ARGUMENT

### A.    A Stay is Unwarranted Because Defendants are not Likely to Succeed on the Merits

After this Court carefully evaluated the parties' briefing and argument on Plaintiff States' Motion for Preliminary Injunction, the Court granted that motion and found that Plaintiffs are likely to succeed on the merits. ECF No. 68. Defendants never appealed that preliminary injunction, instead opting to file a motion to dissolve the preliminary injunction. The Court then denied that motion. February 27, 2026 Text Order. So Defendants now seek a third bite at the apple, this time in the form of a stay motion. But the underlying merits have not changed. In fact, by declining to appeal this Court's preliminary injunction order and instead pursuing only collateral relief, Defendants have only raised the bar that they failed to clear on their first two attempts.

Even assuming Defendants could properly seek a stay of the preliminary injunction in this posture, they cannot show they are likely to succeed on the merits of their argument that this Court abused its discretion in denying their motion to dissolve the preliminary injunction. Defendants could not show a significant change in facts or law that warranted revision or dissolution of this Court's injunction, and now they certainly cannot show that they are likely to succeed in demonstrating that this Court abused its discretion in so ruling. For those reasons, among others, the Court should deny the stay motion.

### 1.    Defendants failed to timely appeal the preliminary injunction order

In seeking a stay of the order denying the motion to dissolve, Defendants improperly seek "to circumvent the time bar to appeal from the underlying injunction." *Franklin Twp.*, 787 F.2d at 120 (quoting *Merrell-National Lab'ys, Inc. v. Zenith Lab'ys, Inc.*, 579 F.2d 786, 791 (1978)). One of the load-bearing premises of Defendants' stay motion is that this Court erred in

enjoining the December NOFO. They contend they "are likely to succeed on appeal on the merits of their argument that rescission of the 2024 NOFO and implementation of the December 2025 NOFO were, and are, lawful," and further fault this Court for supposedly enjoining the December NOFO "without independently adjudicating the lawfulness of" that NOFO. ECF No. 93 (Defs. Mot. for Stay Pending Appeal) at 5, 7. But these arguments fail out of the gate because Defendants have waived them by declining to appeal the Court's preliminary injunction order.

This Court entered its written December 23, 2025, preliminary injunction order, enjoining Defendants' rescission of the FY 2024-2025 NOFO, enjoining the Challenged Conditions, and enjoining Defendants from "giving effect to any . . . forthcoming agency action to further rescind or replace the FY24-25 NOFO[.]" ECF No. 68 at 2. Federal Rule of Appellate Procedure 4 gave Defendants sixty days to appeal that ruling, i.e., until February 23, 2026. Fed. R. App. P. 4(a)(1)(B); Fed. R. App. P. 26(a)(1). They chose not to, even though the 2026 THUD Appropriations Act was signed twenty days before that window closed. As a result, Defendants can no longer appeal this Court's entry of a preliminary injunction prohibiting them from replacing the FY 2024-2025 NOFO with a new NOFO, particularly insofar as that new NOFO contains nearly all of the Challenged Conditions. *See Teledyne Techs., Inc. v. Shekar*, 831 F.3d 936, 940 (7th Cir. 2016) (holding that where a party failed to appeal preliminary injunction order and then subsequently appealed motion to vacate, the Court could not entertain argument "essentially that the preliminary injunction should not have been entered in the first place"); *Doe 2 v. Shanahan*, 755 F. Appx. 19, 23 (D.C. Cir. 2019) (noting that in ruling on a motion to dissolve an unappealed preliminary injunction, "[t]he merits of the preliminary injunction . . . are not properly before us"); *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017) (holding that the deadlines of Fed. R. App. P. 4 are "[m]andatory," and "[i]f properly invoked, . . . must be

enforced"); 16 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3924.2 (3d ed. 2025) ("The most important limit on appeal from refusal of an explicit motion to . . . dissolve an injunction is that the motion cannot be used simply to revisit the initial injunction decision or resurrect an expired time for appeal."). In short, Defendants cannot succeed on any argument that the preliminary injunction was wrongly decided, because those arguments are time-barred.

### 2.     Defendants are not likely to succeed on the merits of their appeal of the Court's order denying their motion to dissolve

Defendants cannot clear the high bar of establishing they are likely to succeed on the merits of their appeal because they cannot show this Court abused its discretion in denying their motion to dissolve the preliminary injunction. *See Concilio de Salud Integral de Loiza, Inc.*, 551 F.3d at 15. The only change in circumstance between the Court's issuance of the preliminary injunction and Defendants' motion to dissolve is the 2026 THUD Appropriations Act, which requires HUD to issue noncompetitive renewals if HUD does not meet quarterly deadlines for making FY 2025 awards. But the 2026 THUD Appropriations Act only further increases Plaintiffs' likelihood of success on the merits and, in any event, certainly does not aid Defendants' likelihood of success. This Court didn't err, let alone clearly err, in finding that Plaintiffs continue to have a strong likelihood of prevailing in this suit.

As explained in Plaintiffs' Opposition to Defendants' Motion to Dissolve, the intervening action by Congress affirmed, rather than refuted, Plaintiffs' positions with respect to the meaning and purpose of the McKinney-Vento Act. *See* ECF No. 90 (Plfs. Opp. to Defs. Mot. to Dissolve) at 6–7. The 2026 THUD Appropriations Act directed HUD to noncompetitively renew all expiring grants unless and until a lawful NOFO was in place, thereby rejecting HUD's core contention that its policy preferences could override statutorily mandated renewals. *See* ECF No. 90 at 6–7.

Indeed, by instructing HUD to actually renew the same grants that this Court instructed Defendants to place itself in a position to promptly renew, Congress in effect affirmed and extended Paragraph Six of this Court's Order to HUD to "tak[e] all necessary steps to process eligible renewals for FY 2025 CoC funding." *See* ECF No. 68 at 2–3. Thus, Congress' intervening action to ensure renewals for existing projects has only further confirmed Plaintiffs' merits arguments concerning the McKinney-Vento Act's purpose and requirements.

As set forth above, Defendants are barred from raising any argument that the preliminary injunction was wrongly decided. *See supra* at Section IV.A.1. However, even if the Court were to entertain these arguments, Defendants offer no new reasons to support their twice-rejected contention that "HUD is likely to succeed in showing that it acted reasonably and within its authority in rescinding the 2024 NOFO and issuing the December 2025 NOFO." ECF No. 93 at 5-6. This Court should again reject that contention.

More specifically, Defendants have again failed to show that rescission of the FY 2024-2025 NOFO was lawful or that the December 2025 NOFO is lawful under the McKinney-Vento Act and the APA. HUD's untimely rescission of the FY 2024-2025 NOFO was unlawful because it was contrary to law and arbitrary and capricious. *See* ECF No. 81 (Pls.' Mot. for Summ. J.) at 44–50; ECF No. 84 (Pls.' Reply) at 11–15. Further, Plaintiffs' challenges to the disability and gender ideology conditions in the December 2025 NOFO are not moot and judgment is necessary to prevent Defendants from reimplementing these conditions. *See* ECF No. 84 at 17-20. Indeed, the Challenged Conditions in the December 2025 NOFO are unlawful because they are contrary to law, arbitrary and capricious, non-compliant with the APA's notice-and-comment requirements, and contrary to the Constitutional separation of powers. *See* ECF No. 81 at 50–77; ECF No. 84 at 20–39.

Defendants' motion to stay provides no new reason for this Court to disrupt the status quo. Defendants claim that the Court erred by not "independently adjudicating the lawfulness of the December 2025 NOFO." ECF No. 93 at 7. As an initial matter, Defendants point to no requirement for the Court to have adjudicated the lawfulness of the December 2025 NOFO once it determined that the rescission and attempted replacement of the FY 2024-2025 NOFO was unlawful, which it explained when it orally ruled from the bench during the December 19, 2025 Preliminary Injunction hearing. *See* December 19, 2025 Hr'g Tr. at 67:23–69:9. The Court then clearly identified the legal arguments and evidence it relied on in assessing each of the required elements to issue an injunction in its written Order. *See* ECF No. 68. In claiming that "[t]he Court has declined to provide any reasoned assessment of the merits of" their arguments concerning the substance of the December 2025 NOFO or the meaning of the 2026 THUD Appropriations Act, ECF No. 93 at 7, Defendants suggest (without directly stating) that the Court's denial of Defendants' motion to dissolve does not meet the requirements of Federal Rule of Civil Procedure 52(a)(2) ("In granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions that support its action."). But that Order, as Defendants note, "incorporates" the reasons explained in the Court's original ruling granting the injunction and further identifies which of Defendants' arguments in favor of dissolution came up short. *See* Feb. 27, 2026, Text Order ("In support of dissolving the injunction, Defendants assert, among other things, that Congress has eliminated the threatened harms faced by the Plaintiffs that prompted the Court to enjoin the December 2025 NOFO in the first instance. The Court disagrees . . . ."). "[I]n the context of a preliminary injunction motion, the district court's findings need not be overly detailed[.]" *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir. 1996) (citing *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 895 (1st Cir.1988)). And in any event, Defendants' argument

ignores that the Court already specifically found that the November 2025 NOFO—which largely contains the Challenged Conditions that Plaintiffs challenge in the December NOFO—"conflicts with the statutory mandates of the McKinney Vento Act, including Congress's prioritization of permanent housing and renewal stability and the formula-based allocations scheme," among many other defects. *See* December 19, 2025 Hr'g. Tr. at 69:1–8. Defendants' argument that the Court erred by insufficiently explaining the substantive unlawfulness of the December 2025 NOFO should be rejected.

**B.    Defendants Will not be Irreparably Injured Absent a Stay**

For the same reasons Defendants failed to show irreparable harm in their motion to dissolve the preliminary injunction, Defendants will not be irreparably injured absent a stay. Defendants only provide a single purported irreparable harm that would occur absent a stay, i.e., their circular contention that "HUD cannot even begin the process of implementing the December 2025 NOFO." *Compare* ECF No. 90 at 15 *with* ECF No. 89 (Defs.' Mot. to Dissolve) at 9. For all of the reasons already found by the Court and explained in Plaintiffs' motion for summary judgment, Plaintiffs have demonstrated that the December 2025 NOFO was unlawful. Defendants, of course, are "not irreparably harmed by an injunction issued to parties with Article III standing that bars enforcement of" unlawful agency action. *Doe v. Trump*, 157 F.4th 36, 79 (1st Cir. 2025); *see also Woonasquatucket River Watershed Council v. United States Dep't of Agric.*, 778 F. Supp. 3d 440, 476–77 (D.R.I. 2025) (McElroy, J) (explaining that "an agency is not harmed by an order prohibiting it from violating the law"). Furthermore, this litigation is the latest in an ever-lengthening chain of cases in which grantees have been "left adrift as they scramble[] to make sense of the [Federal] Government's actions[.]" *Woonasquatucket River*, 778 F. Supp. 3d at 476.

Nor does this Court's denial of Defendants' motion to dissolve irreparably harm Defendants by "prevent[ing] HUD from meeting the deadlines set by Congress to award funds under a 2025 NOFO" as Defendants claim. ECF No. 93 at 5. As described above, Congress provided Defendants with two options under the 2026 THUD Appropriations Act, both of which currently remain available to Defendants: (1) issue FY 2025 awards under a *lawful* FY 2025 NOFO (i.e., the FY 2024-2025 NOFO) by the deadlines provided by Congress; or (2) noncompetitively renew projects expiring in 2026 as detailed in the Act. Defendants' argument that the 2026 THUD Appropriations Act somehow granted HUD discretion to proceed with *any* FY 2025 NOFO—regardless of the NOFO's content, when it is issued, or whether it is lawful—strains credulity.

Finally, Defendants' motion includes a brief discussion of *Trump v. CASA*, 606 U.S. 831 (2025), which Defendants fundamentally misunderstand and which is inapplicable here. *See* ECF No. 93 at 8. Defendants misrepresent the applicable legal standard by arguing that *no* "assessment" of the merits is necessary when granting a stay and that Defendants' purported irreparable harm is by itself sufficient to grant a stay. *Id*. But this is flatly contrary to *Nken*—as Defendants' own motion makes clear. *Id.*, at 4 (explaining that courts "assess" the movant's "likelihood of prevailing on the merits of the appeal" and three other factors) (citing *Nken*, 556 U.S. at 435); *see also Nken*, 556 U.S. at 433 (explaining a "stay is not a matter of right, even if irreparable injury might otherwise result") (quoting *Virginian Ry. Co.*, 272 U.S. at 672). In *Trump v. CASA*, the Court addressed the "merits of the issue before us," which was an unrelated "threshold error" of whether a universal injunction had afforded more than the relief needed by the plaintiffs. *CASA*, 606 U.S. at 859–61. *CASA* provides no basis for finding that Defendants' purported irreparable harm—which does not even exist—is by itself sufficient to grant a motion to stay the preliminary injunction.

**C.      The Issuance of a Stay Would Irreparably Harm Plaintiff States**

Defendants' motion should also be denied because Plaintiffs would suffer immediate and irreparable harm from a stay. These are the same harms that this Court just considered when recently denying Defendants' motion to dissolve the preliminary injunction. *See* Feb. 27, 2026, Text Order. Defendants have provided no new arguments or evidence to support another result.

A stay would immediately grant HUD license to effectuate the December 2025 NOFO and restart the chaos that this Court rightly halted, which Defendants are time-barred from challenging on appeal, and which the parties' summary judgment motions will definitively resolve.[1] Likewise, the 2026 THUD Appropriations Act would not prevent the devastating harm that would occur if Defendants implemented the December NOFO as to grants expiring during Quarter Three (Q3) and Quarter Four (Q4), which they seek to do absent any injunction. As set forth below, this is not a close question: Plaintiffs would face irreparable harm for many independent reasons, including the evisceration and closure of housing programs and services, organizations' decisions not to renew leases in preparation for a lack of funding, programs refusing to accept new referrals, hiring freezes on new program staff, programs devoting significant time and expenses towards completely overhauling processes to prepare for new NOFO requirements, the traumatization of formerly homeless individuals who fear they may soon lose housing, the eviction of formerly homeless individuals from their housing, the injury and preventable death to individuals who are evicted, the enormous costs to state public services, and many other harms. *See infra* Section IV.C.

Defendants claim that "any imminent harm" to Plaintiffs "has been eliminated" by the 2026 THUD Appropriations Act because it addresses gaps in funding for grantees whose grants

---

[1] Plaintiffs do not oppose an expedited ruling on summary judgment, which would moot Defendants' request to stay the preliminary injunction. Defendants' motion to stay needlessly wastes the parties' and Court's limited resources by relitigating these same issues, especially in light of the parties' fully briefed motions for summary judgment.

are set to expire in Quarter One (Q1) and Quarter Two (Q2). ECF No. 93 at 5. But all this means is that this Court no longer needs to award relief on a highly expedited timeline. Because even if Q1 and Q2 grantees are now safe, there is still significant irreparable harm coming down the pike for grantees whose grants expire in Q3 and Q4.

If the preliminary injunction were stayed, Defendants' promised implementation of the December NOFO would cause immediate and irreparable injury. First, the December NOFO precludes renewals of many CoC funds expiring in the second half of 2026. The December NOFO drastically slashes permanent housing, cuts Tier 1 funding by two thirds, and scores applicants based on their jurisdiction's policies. ECF No. 81 at 31–38. Many programs know they will lose a significant portion of their funding under the December NOFO and will immediately be forced to act accordingly. *See, e.g.*, ECF No. 13-19 (MI-MCAH Rennie Decl.) ¶ 14 ("even for the CoCs that are the most agile and capable of such an overhaul . . . the best score that any Michigan CoC could achieve is 75/130—historically too low a score to be funded."); *see also* ECF No. 13-20 (MN-Leimaile Ho Decl.) ¶ 16 ("Minnesota CoCs are unlikely to score competitively based on criteria under this NOFO.").

Therefore, many CoCs will immediately reduce services, fail to renew leases, decline new referrals of homeless individuals and families, and freeze hiring if they know funds are not coming in Q3 and Q4. *See, e.g.*, ECF No. 13-10 (DE-Stucker Decl.) ¶ 14(c) (in order to "prepare for a loss" of funding "many organizations will have to stop providing services" and organizations "that enter into 12-month leases with landlords on behalf of clients are considering having to not renew leases"); ECF No. 13-17 (MA-Byron Decl.) ¶ 56 ("Already as a result of the FY 2025 NOFO, some BoS CoC subrecipients are not accepting new referrals as they are concerned they will not be able to comply with leasing requirements"); ECF No. 40 (AZ-Dhillon-Williams Decl.) ¶ 23

("The sudden change to competing in 2025 will prevent programs from hiring staff and placing households in permanent housing, serving as a chilling effect for operational programs in the coming months"). This Court's February 27, 2026 Text Order denying Defendants' motion to dissolve explicitly acknowledged this upheaval and these service gaps.

Likewise, even the applicants who are able to reshape existing programs pursuant to the December NOFO will need to immediately begin doing so, which will take months to complete. *E.g.*, ECF No. 13-16 (MD-Meister Decl.) ¶ 15 ("compliance with dramatically different conditions will require a complete overhaul of our processes and those of our applicants. This will require more time, money, and effort to comply" and will require many weeks to complete); *see also New York*, 804 F. Supp. 3d at 330 (finding irreparable harm and citing months of preparation, extensive planning, and staffing hours).

The December NOFO will also immediately instill fear in and traumatize vulnerable populations at risk of eviction. *See* ECF No. 49-2 (NY-Supplemental Leone Decl.) ¶ 25 ("CoC program participants have all experienced homelessness or been at-risk of homelessness before. Communicating that their housing is at-risk could cause additional trauma"); *see also* ECF No. 13-15 (ME-Squirrell Decl.) ¶ 23 (explaining that a permanent supportive housing participant stated: "I feel alone abandoned by the government. I don't even have a car that I can live in . . . there's no way I will survive or stay sober").

Most importantly, thousands of individuals and families will soon be evicted and become homeless if HUD proceeds under the December 2025 NOFO, as recognized by this Court's February 27, 2026 Text Order denying Defendants' motion to dissolve. *See New York*, 804 F. Supp. 3d at 330 (in the case of "homelessness," it "practically goes without saying that 'there can be no do over and no redress' if services are unlawfully denied and someone suffers for

it . . . *That of course constitutes irreparable harm*") (emphasis added) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (2016)); *see also* ECF No. 11 (Pls.' Mot. Prelim. Inj.), at 48–49 (collecting examples). Here, the "human toll will be immediate and severe" and it will "place lives in jeopardy." ECF No. 13-13 (KY-Kaye Smith Decl.) ¶ 36. Thousands of individuals and families will be "forcibly displaced, facing conditions that dramatically increase the risk of injury, illness, and preventable death." *Id.* "There has never been a threat as devastating and extreme to persons in poverty. Not only will this application fracture the homeless service delivery infrastructure, which has taken decades to build, but lives will be lost." ECF No. 13-19 ¶ 15; *see also Martin Luther King, Jr. County v. Turner*, 798 F. Supp. 3d 1224, 1254 (W.D. Wash. 2025) (finding irreparable harm from loss of CoC funding such as "destabilization of immediate and future budgets, reductions in workforce, [and] hundreds of shelter-unstable families losing access to housing").

Statewide increases in homelessness will also shift enormous costs to other state public services. *See* ECF No. 11 at 46–47 (collecting examples). Plaintiffs' preliminary injunction motion further describes many other irreparable harms that remain applicable here. *Id.* at 43–49 (describing how the Challenged Conditions would, *inter alia*, harm states' investments, jeopardize the repayment of loans to states, undermine years-long efforts to build programs in alignment with past requirements, result in the contraction or closure of housing programs, and require significant new resources responding to a new NOFO).

Defendants themselves highlighted the imminence of these consequences, recently stating that HUD must "open the December 2025 NOFO by April 1, 2026 to have any chance of issuing third- and fourth-quarter awards pursuant to that NOFO." ECF No. 89 at 2. In other words, Defendants want it both ways: on the one hand, they filed this "EMERGENCY" motion to stay so

they can immediately open the December 2025 NOFO—with all its unlawful terms intact—no later than April 1, 2026. ECF No. 93. Yet at the same time, Defendants claim that Plaintiffs will not be imminently harmed by the implementation of the December 2025 NOFO, which would tee up action that will slash the vast majority of funding when it is about to expire. Both cannot be true. Although Defendants now argue that this Court improperly decided this issue when denying Defendants' motion to dissolve, Defendants' cited authority in their motion to dissolve is inapplicable here, as it involves harm that would only take effect many years later. *See Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004) (no preliminary injunction needed when plaintiff is "more than three years away" from needing relief). Here, Plaintiffs would face significant and irreparable harm as soon as the December NOFO is released and this harm would rapidly compound in the following weeks.

Defendants further ignore that other cases evaluating conditions on CoC funding have found that the "looming risk" of "budgetary uncertainty due to Defendants' unlawful actions is an injury in of itself" that qualifies as "irreparable harm." *See Martin Luther King, Jr. County*, 798 F. Supp. 3d at 1253–54; *see also City of Seattle v. Trump*, No. 2:25-cv-01435-BJR, 2025 WL 3041905, at *10 (W.D. Wash. Oct. 31, 2025). This has been repeatedly supported by Plaintiff States' evidence. *E.g.*, ECF No. 13-14 (ME-Payne Decl.) ¶ 20 ("[t]he organizations that had expected to receive funding for the coming year now have their staffing plans and budgets thrown into doubt").

Finally, Defendants assert without citation that Plaintiffs' irreparable harm must be "independent of the *merits*" and generally assert that many of Plaintiffs' harms are dependent on whether the December NOFO is lawful. ECF No. 93 at 9. As an initial matter, Defendants' discussion of this purported requirement does not cite a single case demonstrating that this

requirement even exists.[2] Additionally, as Plaintiffs have already explained, the above harms exist regardless of whether the December NOFO is itself lawful. For example, in anticipation of the December NOFO's funding cuts—whether lawful or not—many CoCs will immediately reduce services, fail to renew leases, decline new referrals of homeless individuals and families, freeze hiring, and much more. It is confounding that Defendants' motion treats certain harms, such as funding gaps and the application process under the December NOFO, as somehow "independent of the merits," but treats other harms associated with the implementation of the December NOFO as somehow dependent on them (without further explanation or evidence). And of course, the December NOFO is unlawful, because the rescission of the FY 2024-2025 was unlawful (as this Court found was likely), because it contains nearly all the Challenged Conditions that this Court found were likely unlawful, and because it drastically changed HUD's longstanding policies without notice-and-comment. Ultimately, the many imminent, real, and devastating harms to Plaintiffs are irreparable, and Defendants cannot show this Court abused its discretion in concluding as much.

**D.    The Public Interest Favors Denying Defendants' Motion to Stay**

As this Court has already found on multiple occasions, the public interest favors the Plaintiff States. In fact, the issuance of a stay would be absolutely devastating to the public interest, forcing thousands of individuals back into homelessness, placing individuals' safety and lives in jeopardy, and significantly burdening state public services, among other harms. *See supra* at Section IV.C.

---

[2] To the extent that Defendants intend to rely on their separate citation to *Charlesbank* elsewhere in the motion for this proposition, Plaintiffs have already explained why that case is inapplicable. *See* ECF No. 90 at 14 (providing multiple reasons why *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) is distinguishable).

The public interest at stake in this matter could not be more significant: the health, safety, security, and lives of the individuals and families who stand to lose their homes if the December 2025 NOFO is permitted to proceed. *E.g.*, ECF No. 13-13 ¶ 36. Defendants' bureaucratic complaints cannot equitably be weighed against the real human suffering that this litigation seeks to avert.

Ultimately, this Court has already ruled that "[e]nsuring lawful agency action, continuity of housing, and stability for vulnerable populations is clearly in the public interest." December 19, 2025 Hr'g Tr. at 70:11–13; *see also Woonasquatucket River*, 778 F. Supp. 3d at 476–77 (explaining that "an agency is not harmed by an order prohibiting it from violating the law" and concluding that "the public interest weigh[s] heavily in favor of injunctive relief").

For all of these reasons, and as articulated in Plaintiffs' motion for summary judgment, the public interest weighs unmistakably in Plaintiffs' favor.

## V.    CONCLUSION

The Court should deny Defendants' motion to stay the preliminary injunction.

DATED this 5th day of March 2026.

Respectfully submitted,

**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ Zane Muller*
ANDREW R.W. HUGHES*
ZANE MULLER*
ALIANA KNOEPFLER*
ANDREA ALEGRETT*
Assistant Attorneys General
CRISTINA SEPÉ*
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
Andrew.Hughes@atg.wa.gov
Zane.Muller@atg.wa.gov
Aliana.Knoepfler@atg.wa.gov
Andrea.Alegrett@atg.wa.gov
Cristina.Sepe@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Jordan G. Mickman*
KATHRYN M. SABATINI (RI Bar No. 8486)
Chief, Civil Division
Special Assistant Attorney General
JORDAN G. MICKMAN (RI Bar No. 9761)
Unit Chief, Civil and Community Rights
Assistant Attorney General
LEONARD GIARRANO IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400, Ext. 2079
Ksabatini@riag.ri.gov
Jmickman@riag.ri.gov
Lgiarrano@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**LETITIA JAMES**
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
COLLEEN K. FAHERTY*
Special Trial Counsel
STEPHEN C. THOMPSON*
Special Counsel
VICTORIA OCHOA*
Assistant Attorney General
28 Liberty Street
New York, NY 10005
212-416-6183
Rabia.Muqaddam@ag.ny.gov
Colleen.Faherty@ag.ny.gov
Stephen.Thompson@ag.ny.gov
Victoria.Ochoa@ag.ny.gov

*Counsel for Plaintiff State of New York*

**KRISTIN K. MAYES**
Attorney General of Arizona

*/s/ William Y. Durbin*
HAYLEIGH S. CRAWFORD*
Deputy Solicitor General
WILLIAM Y. DURBIN*
Senior Litigation Counsel
Office of the Attorney General
2005 North Central Ave.
Phoenix, AZ 85004
602-542-3333
Hayleigh.Crawford@azag.gov
William.Durbin@azag.gov
ACL@azag.gov

*Attorneys for Plaintiff State of Arizona*

**ROB BONTA**
Attorney General of California

*/s/ Jarrell Mitchell*
JARRELL MITCHELL*
Deputy Attorney General
MICHAEL L. NEWMAN*
Senior Assistant Attorney General
JOEL MARRERO
Supervising Deputy Attorney General
BRIAN BILFORD*
LAUREN GREENAWALT*
Deputy Attorneys General
Jarrell.Mitchell@doj.ca.gov
Brian.Bilford@doj.ca.gov
Lauren.Greenawalt@doj.ca.gov
Joel.Marrero@doj.ca.gov
Michael.Newman@doj.ca.gov

*Counsel for Plaintiff State of California*

**WILLIAM TONG**
Attorney General of State of Connecticut

*/s/ Andrew M. Ammirati*
ANDREW M. AMMIRATI*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**PHILIP J. WEISER**
Attorney General of State of Colorado

*/s/ David Moskowitz*
DAVID MOSKOWITZ*
Deputy Solicitor General
NORA PASSAMANECK*
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
720-508-6000
David.Moskowitz@coag.gov

*Attorneys for Plaintiff State of Colorado*

**BRIAN L. SCHWALB**
Attorney General of District of Columbia

*/s/ Samantha Hall*
SAMANTHA HALL*
Assistant Attorney General
Office of the Attorney General
of the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
202-788-2081
Samantha.Hall@dc.gov

*Attorneys for Plaintiff District of Columbia*

**KATHLEEN JENNINGS**
Attorney General of State of Delaware

*/s/ Ian R. Liston*
IAN R. LISTON*
Director of Impact Litigation
VANESSA L. KASSAB*
Deputy Attorney General
ROSE GIBSON*
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov

*Attorneys for Plaintiff State of Delaware*


**ANDY BESHEAR**
Governor of Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. TRAVIS MAYO*
General Counsel
TAYLOR PAYNE*
Chief Deputy General Counsel
LAURA C. TIPTON*
Deputy General Counsel
Office of the Governor
501 High Street
Frankfort, KY 40601
502-564-2611
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
Laurac.Tipton@ky.gov

*Attorneys for Plaintiff Office of the Governor
ex rel. Andy Beshear, in His Official Capacity
as Governor of the Commonwealth of Kentucky*


**KWAME RAOUL**
Attorney General of Illinois

*/s/ Aleeza Strubel*
ALEEZA STRUBEL*
Complex Litigation Counsel
ELENA S. METH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., 35th Floor
Chicago, IL 60603
773-914-3046
Aleeza.Strubel@ilag.gov
Elena.Meth@ilag.gov

*Counsel for Plaintiff State of Illinois*


**AARON M. FREY**
Attorney General of Maine

*/s/ Katherine W. Thompson*
KATHERINE W. THOMPSON*
Special Counsel
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel: 207-626-8455
Fax: 207-287-3145
Kate.Thompson@maine.gov

*Attorneys for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

/s/ James C. Luh
JAMES C. LUH*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6411
Jluh@oag.maryland.gov

*Attorney for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

/s/ Michelle Pascucci
KATHERINE DIRKS*
Chief State Trial Counsel
MICHELLE PASCUCCI*
NITA KLUNDER*
State Trial Counsel
ESME CARAMELLO
Director, Housing Affordability Unit
AARON DULLES*
LAUREN YAMAGUCHI*
Assistant Attorneys General
Office of the Massachusetts
Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2255
Michelle.Pascucci@mass.gov

*Counsel for Plaintiff Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

/s/ Neil Giovanatti
NEIL GIOVANATTI*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorneys for Plaintiff State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

/s/ Brian S. Carter
BRIAN S. CARTER
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
651-300-7403
Brian.carter@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

**JENNIFER DAVENPORT**
Acting Attorney General of New Jersey

/s/ Daniel Resler
DANIEL RESLER*
Deputy Attorney General
33 Washington St., 9th Floor
Newark, NJ 07102
973-648-4726
Daniel.Resler@law.njoag.gov

*Attorney for Plaintiff State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

/s/ Anjana Samant
ANJANA SAMANT*
Deputy Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
505-270-4332
Asamant@nmdoj.gov

*Attorneys for the State of New Mexico*

**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Scott P. Kennedy*
SCOTT P. KENNEDY*
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: 971-673-1880
Fax: 971-673-5000
Scott.Kennedy@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*


**CHARITY R. CLARK**
Attorney General of Vermont

*/s/ Jonathan T. Rose*
JONATHAN T. ROSE*
Solicitor General
109 State Street
Montpelier, VT 05609
802-828-3171
Jonathan.Rose@vermont.gov

*Attorney for Plaintiff State of Vermont*


**JENNIFER C. SELBER**
General Counsel

*/s/ Jacob B. Boyer*
JACOB B. BOYER*
STEPHEN R. KOVATIS*
Deputy General Counsel
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
Jacobboyer@pa.gov
717-460-6786

*Attorney for Plaintiff Governor Josh Shapiro, in His Official Capacity as Governor of the Commonwealth of Pennsylvania*


**JOSHUA L. KAUL**
Attorney General of Wisconsin

*/s/ Faye B. Hipsman*
FAYE B. HIPSMAN*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
608-264-9487
Faye.Hipsman@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*