**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>Defendants.<br><br>AND<br><br>NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,<br><br>Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>Defendants. | Case Nos. 25-cv-626-MSM-AEM<br>              25-cv-636-MSM-AEM<br><br>District Judge Mary S. McElroy<br>Magistrate Judge Amy E. Moses |

**DEFENDANTS' STATUS REPORT**

Defendants file this second status report pursuant to the Court's Order at its April 27, 2026 status conference. On May 4, 2026, Defendants provided the "granular" detail that the Court requested about the status of fiscal year 2025 Continuum of Care (CoC) renewals. *See State of Washington v. HUD*, No. 25-cv-626 (D.R.I.) ("*State Litigation*"), ECF No. 101; *Nat'l All. to End Homelessness*, No. 25-cv-636 (D.R.I.) ("*NAEH Litigation*"), ECF No. 88 (collectively "May 4 Status Report"). In this status report, Defendants provide the status of grant agreements for projects with awards expiring in the first quarter of this year ("Q1"), and the status of renewal awards for projects with awards expiring in quarters two ("Q2"), three ("Q3") and four ("Q4") of this year.

1

*Quarter 1 renewals*. As of the date of this filing, 269 out of 608 grant agreements have been issued to awardees for their signature. HUD estimates the remaining Q1 grant agreements will be issued by the close of May 15, 2026. To date, 25 grant agreements have been either signed by the award recipient or fully executed.

Defendants respectfully provide additional context on the review process and the application of special conditions in certain circumstances. The 2026 Transportation, Housing and Urban Development, and Related Agencies Appropriations Act ("THUD Appropriations Act") directed HUD to "non-competitively renew for one 12-month period all projects . . . expiring during the first quarter of calendar year 2026" and, if no new notice of funding opportunity (NOFO) is in place, for the remaining quarters of 2026, "notwithstanding any inconsistent provisions in" the 2025 and 2020 appropriations acts "or in subtitle C of title IV of the McKinney-Vento Homeless Assistance Act." 2026 THUD Appropriations Act, Pub. L. No. 119-75, § 244, 140 Stat. 173, 422. Pursuant to that requirement, HUD "renew[s]" project awards—under applicable law, a federal award is the "grant agreement" that will result in the flow of financial assistance from HUD to CoC recipients, *see* 2 C.F.R. § 200.1 (definition of "Federal award"); *see also* 31 U.S.C. § 1501—by following a well-established award process that is independent of the statutory requirements under the McKinney-Vento Act (and thus not affected by the "notwithstanding" clause of the 2026 THUD Appropriations Act). *See, e.g.*, 2 C.F.R. § 200.206(a) (requiring federal agencies to review eligibility and financial-integrity information for applicants "[p]rior to making a Federal award"); 31 U.S.C. § 7502(f)(1) (requiring federal agencies to review recipient audits to determine whether corrective action has been taken with respect to any audit findings); *id.* § 7504(a) (requiring federal agencies to "monitor non-Federal entity use of Federal

2

awards" consistent with Office of Management and Budget guidance).[1] And that award process sometimes requires the agency to adjust specific conditions on grants to ensure that awards are being managed consistent with program design. *See* 2 C.F.R. § 200.208.

As HUD explained in its earlier status report, "[b]ased on . . . capacity reviews, HUD determines whether any special conditions placed on the award would sufficiently resolve any performance concerns. For example, if a recipient failed to submit its annual financial audit report, HUD may condition their award renewal on the submission of the missing audit report." Ex. A to May 4 Status Report ¶ 4. HUD also stated that it will expeditiously process grant agreements, "but HUD cannot provide a specific date as to when *all* grant agreements will be issued because the timing of some necessarily depends on when awardees submit documentation to satisfy their special conditions." (emphasis added). *Id*. ¶ 7.

Such conditions are routinely applied in the CoC program[2] and are reasonably related to the grant management and performance oversight of the program, as established in OMB and CoC

---

[1] Congress's requirement to "renew . . . all projects" notwithstanding any inconsistent provisions of the McKinney-Vento Act or certain appropriations acts, *see* § 244, 140 Stat. at 422, is thus not inconsistent with HUD's continued implementation of its ongoing and independent responsibilities to oversee the financial management of CoC awards. Indeed, Congress's use of the term "renew"—without excepting such renewals from statutory obligations under acts other than the McKinney-Vento Act—indicates that it intended to maintain the long-standing award-management practices agencies are required to follow under separate legal requirements. And, indeed, interpreting "all" awards to mean that every existing grant must be renewed, without exception, would lead to absurd results—*e.g.*, if an award recipient ceased operating, it cannot be the case that Congress intended to require HUD to renew that expiring award anyway.

[2]*E.g.*, Administrative R. at 86, *State Litigation*, ECF No. 72-2; Administrative R. at 86, *NAEH Litigation*, ECF No. 56-2 (FY24-25 CoC NOFO, Part III.C.4.a) (stating that applicants may be ineligible for awards based on, among other things, "monitoring findings, results from investigations by HUD's Office of Inspector General, the recipient routinely does not draw down funds from eLOCCS at least once per quarter, [and] consistently late Annual Performance Report . . . submissions"); *id.* at 134 (Part V.C.1) (stating that conditions on awards must be satisfied prior to grant agreement execution); *see generally* 2 C.F.R. § 200.206(b)(1) ("If the Federal agency

regulations. *See generally* 2 C.F.R. Part 200. Undersigned counsel understands that recent FY25 renewals have been conditioned on, for example, the recipient: submitting overdue Annual Performance Reports[3]; resolving findings from a monitoring review[4] relating to recordkeeping,[5] updating policies to comply with federal procurement standards,[6] and receiving technical assistance from HUD to strengthen its recordkeeping and internal controls[7]; and committing to making at least quarterly draws from its funds account (*i.e.*, expending awarded amounts at least quarterly)[8] because the recipient in prior years had not made timely draws from its funds account.

For Q1 renewals, 16 have special conditions. Of those, five have been resolved as of the date of this filing. HUD deems these conditions resolved when the awardee submits the requested documentation or, where the condition relates to future performance, agrees to carry out the condition (e.g., timely expend its funds or take a course on recordkeeping and internal controls).

*Quarter 2 renewals*. By May 7, 2026, HUD issued all Q2 award letters to awardees. There were 946 recipients and 1,826 awards in total, with some recipients receiving awards for multiple projects. HUD staff will be able to process Q2 grant agreements once sufficient progress has been made on Q1 grant agreements.

---

determines that the Federal award will be made, specific conditions that address the assessed risk may be implemented in the Federal award."); *id*. § 200.208.

[3] 2 C.F.R. §§ 300.328(b)-(d), 200.329(c).

[4] *Id*. § 200.329.

[5] *Id*. § 200.302.

[6] *Id*. § 200.318.

[7] *Id*. § 200.208(c)(5).

[8] *Id*. § 200.208(a); 24 C.F.R. § 578.85(c)(3).

*Quarters 3 and 4 renewals*. HUD's processing of grant agreements thus far is proceeding at a more rapid pace than anticipated, given that it has less than half the staff the agency has maintained for the program in recent years. Given this faster-than-expected pace, HUD has indicated it hopes to deliver Q3 and Q4 renewals earlier than forecasted in its May 4, 2026 Status Report. HUD will provide further updates on the pace of Q3 and Q4 renewals in its next status report.

Date: May 11, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

JOHN BAILEY
Counsel to the Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
PARDIS GHEIBI
PETER R. GOLDSTONE
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel.: (202) 353-7578
Fax: (202) 616-8640
Email: william.s.jankowski@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2026, the above document was filed with the CM/ECF filing system.

/s/ William S. Jankowski